No. 24-50135

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

———————

TEXAS TRIBUNE; MANO AMIGA; CALDWELL/HAYS EXAMINER,

*Plaintiffs–Appellees,*

v.

CALDWELL COUNTY, TEXAS; TREY HICKS, in his official capacity as Caldwell
County Court at Law Judge and Caldwell County Magistrate; MATT KIELY, in
his official capacity as Caldwell County Justice of the Peace and Caldwell County
Magistrate; SHANNA CONLEY, in her official capacity as Caldwell County
Justice of the Peace and Caldwell County Magistrate; ANITA DELEON, in her
official capacity as Caldwell County Justice of the Peace and Caldwell County
Magistrate; YVETTE MIRELES, in her official capacity as Caldwell County
Justice of the Peace and Caldwell County Magistrate; MIKE LANE, in his official
capacity as the Sheriff of Caldwell County,

*Defendants–Appellants.*

———————

On appeal from the United States District Court for the
Western District of Texas — No. 1:23-cv-00910-RP (Pitman, R.)

## BRIEF OF APPELLEES

Camilla Hsu
Texas Fair Defense Project
314 E. Highland Mall Blvd., Suite 204
Austin, TX 78752
(512) 637-5220 x111
chsu@fairdefense.org

*Counsel for Plaintiffs–Appellees Mano
Amiga and Caldwell/Hays Examiner*

Scott Wilkens
Nicole Mo
Knight First Amendment Institute
  at Columbia University
475 Riverside Drive, Suite 302
New York, NY 10115
(646) 745-8500
scott.wilkens@knightcolumbia.org

*Counsel for Plaintiffs–Appellees*

## Certificate of Interested Persons

No. 24-50135
Texas Tribune, Mano Amiga, Caldwell/Hays Examiner,
*Plaintiffs–Appellees*,

v.

Caldwell County, Texas, Trey Hicks in his official capacity as Caldwell County
Court at Law Judge and Caldwell County Magistrate; Matt Kiely, Shanna
Conley, Anita DeLeon, and Yvette Mireles as Caldwell County Justices of the
Peace and Caldwell County Magistrates; and Mike Lane in his official capacity
as the Sheriff of Caldwell County
*Defendants–Appellants*.

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1, in addition to those listed in the Appellants' Certificate of Interested Persons, have an interest in the outcome of this case. Plaintiffs–Appellees Texas Tribune, Mano Amiga, and Caldwell/Hays Examiner have no parent corporations and no publicly held corporation owns 10% or more of their respective stock. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

***Counsel for Plaintiffs–Appellees***:

*Counsel for Plaintiffs–Appellees*:
Scott Wilkens
Nicole Mo
Knight First Amendment Institute at Columbia University

i

*Counsel for Plaintiffs-Appellees Mano Amiga and Caldwell/Hays Examiner*
Camilla Hsu
Texas Fair Defense Project

                                    /s/ Scott Wilkens
                                    Scott Wilkens

                                    *Counsel of Record for Plaintiffs–*
                                    *   Appellees*

**Statement Regarding Oral Argument**

This case asks whether a Texas county's blanket closure of all bail hearings violates the press and public's presumptive First Amendment right of access. Plaintiffs–Appellees believe that oral argument will aid the Court in its consideration of this case.

# Table of Contents

Table of Authorities ................................................................ vi

Jurisdictional Statement ........................................................ 1

Introduction ........................................................................... 1

Statement of Issues ................................................................ 4

Statement of the Case ............................................................ 4

I.     Defendants Adopted and Maintained a Policy of Closing All
       Magistration Proceedings to the Press and Public. ................................... 4

II.    Defendants Refused Plaintiffs Access to Magistration Pursuant to
       the Blanket Closure Policy. ........................................................ 7

III.   Defendants' Blanket Closure Policy Inhibited Plaintiffs from
       Pursuing Their Organizational Goals. ........................................... 9

IV.    Procedural History ................................................................ 10

Standard of Review ................................................................ 14

Summary of Argument ............................................................ 15

Argument ............................................................................. 18

I.     Plaintiffs Have Standing to Challenge Defendants' Blanket
       Closure of Magistration ........................................................... 18

II.    The District Court Correctly Held That Plaintiffs Have a
       Likelihood of Success on the Merits. ............................................. 20

       B.     Defendants' blanket closure of magistration is a per se
              violation of Plaintiffs' presumptive First Amendment right
              of access. ....................................................................... 30

III.   The District Court Correctly Found That Defendants' Blanket
       Closure of Magistration Causes Irreparable Harm. ........................... 32

IV.     The District Court Correctly Found That the Balance of the
        Equities and the Public Interest Strongly Favor Preliminary
        Injunctive Relief. ....................................................................................... 33

Conclusion ............................................................................................................ 34

Certificate of Service ........................................................................................... 35

Certificate of Compliance .................................................................................... 36

# Table of Authorities

## Cases

*ASARCO Inc. v. Kadish*, 490 U.S. 605 (1989) ........................................ 20

*Ass'n of Club Execs. of Dallas, Inc. v. City of Dallas, Tex.*, 83 F.4th
    958 (5th Cir. 2023) ............................................................................ 14

*Barker v. Wingo*, 407 U.S. 514 (1972) ................................................... 25

*Bearden v. Georgia*, 461 U.S. 660 (1983) ............................................... 24

*Career Colls. & Schs. of Tex. v. U.S. Dep't of Educ.*, 98 F.4th 220 (5th
    Cir. 2024) ......................................................................................... 14

*Clarke v. CFTC*, 74 F.4th 627 (5th Cir. 2023) ................................. 14, 33

*Daily Press, LLC v. Commonwealth*, 878 S.E.2d 390 (Va. 2022) ........ 22, 26

*El Vocero de P.R. v. Puerto Rico*, 508 U.S. 147 (1993) .................... 20, 21

*Ex parte Gomez*, 624 S.W.3d 573 (Tex. Crim. App. 2021) ....................... 5

*Franciscan All., Inc. v. Becerra*, 47 F.4th 368 (5th Cir. 2022) ............. 33

*Globe Newspaper Co. v. Superior Ct. for Norfolk Cnty.*, 457 U.S. 596
    (1982) .......................................................................................... passim

*Hanson v. Veterans Admin.*, 800 F.2d 1381 (5th Cir. 1986) ................. 20

*Hartford Courant Co., LLC v. Carroll*, 986 F.3d 211 (2d Cir. 2021) ........... 33, 34

*In re Globe Newspaper*, 729 F.2d 47 (1st Cir. 1984) ....................... 22, 24, 26

*In re Hearst Newspapers, L.L.C.*, 641 F.3d 168 (5th Cir. 2011) .......... 21, 30, 31, 32

*In re Washington Post Co.*, 807 F.2d 383 (4th Cir. 1986) ...................... 22

*Jackson Mun. Airport Auth. v. Harkins*, 98 F.4th 144 (5th Cir. 2024) ........... 20

*Jefferson Cmty. Health Care Centers, Inc. v. Jefferson Par. Gov't*, 849 F.3d 615 (5th Cir. 2017) ................................................................. 15

*Lafler v. Cooper*, 566 U.S. 156 (2012) ................................................ 25

*MDK Sociedad De Responsabilidad Limitada v. Proplant Inc.*, 25 F.4th 360 (5th Cir. 2022) ................................................................ 17

*Mock v. Garland*, 75 F.4th 563 (5th Cir. 2023) ................................... 15

*NAACP v. Button*, 371 U.S. 415 (1963) ............................................. 28

*Opulent Life Church v. City of Holly Springs, Miss.*, 697 F.3d 279 (5th Cir. 2012) ..................................................................................... 34

*Pecina v. State*, 361 S.W.3d 68 (Tex. Crim. App. 2012) ...................... 29

*Phila. Bail Fund v. Arraignment Ct. Magistrate Judges*, 440 F. Supp. 3d 415 (E.D. Pa. 2020) ........................................................ 22, 25, 28

*Press-Enterprise Co. v. Superior Ct. of Cal.*, 464 U.S. 501 (1984) ........... 20, 21, 27

*Press-Enterprise Co. v. Superior Ct. of Cal.*, 478 U.S. 1 (1986) .............. 20, 21, 27

*Pursuing Am.'s Greatness v. Fed. Election Comm'n,* 831 F.3d 500 (D.C. Cir. 2016) ................................................................................ 33

*Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555 (1980) ................. 12, 20, 27

*Roman Cath. Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63 (2020) ......... 32

*Rosales-Mireles v. United States*, 138 S. Ct. 1897 (2018) ...................... 25

*Rothgery v. Gillespie Cnty.*, 554 U.S. 191 (2008) ........................... passim

*Russell v. Harris Cnty., Tex.*, 454 F. Supp. 3d 624 (S.D. Tex. 2020) ............... 4, 29

*Seattle Times Co. v. United States Dist. Ct. for W. Dist. of Wash.*, 845 F.2d 1513 (9th Cir. 1988) ................................................... 22, 24, 26

*Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016) ...................................... 18

*State v. Williams*, 459 A.2d 641 (N.J. 1983) ............................................... 22, 26, 34

*Texas v. EPA*, 91 F.4th 280 (5th Cir. 2024).......................................................... 17

*United States v. Abuhamra,* 389 F.3d 309 (2d Cir. 2004) ..................................... 22

*United States v. Ahsani*, 76 F.4th 441 (5th Cir. 2023)................................ 21, 31, 32

*United States v. Chagra*, 701 F.2d 354 (5th Cir. 1983)................................... passim

*United States v. Edwards*, 430 A.2d 1321 (D.C. 1981)................................... 22, 26

*United States v. Leonardo*, 129 F. Supp. 2d 240 (W.D.N.Y. 2001) ...................... 22

*United States v. Salerno*, 481 U.S. 739 (1987)..................................................... 24

*United States v. Texas*, 599 U.S. 670 (2023) ........................................................ 18

*Veasey v. Abbott*, 870 F.3d 387 (5th Cir. 2017) ................................................... 33

**Statutes**

18 U.S.C. § 3142(c)(1) ........................................................................................ 24

28 U.S.C. § 1292...................................................................................................... 1

28 U.S.C. § 1331...................................................................................................... 1

Del. R. Crim. P. J.P. Cts. R. 10(b)(1) (1998)........................................................ 26

Mich. Comp. Laws § 767.37a(3) (1994) ............................................................... 26

Minn. R. Crim. P. 1.05 (4)(1)(a) & (10)(1) (2007)............................................... 26

N.H. R. Crim. P. R. 10 (2015) ............................................................................... 26

N.M. R. Crim. P. Magis. Ct. R. 6-109 (2015) ...................................................... 26

Nev. Rev. Stat. § 178.4849 (2021) ........................................................................ 26

Tenn. R. Crim. P. R. 43(e)(2) (2006)..................................................................... 26

Tex. Code Crim. P., Art. 15.17(a) ................................................... 4, 5, 6

Tex. Code Crim. P., Art. 17.028(a) ......................................................... 5

Tex. Code Crim. P., Art. 17.15 ............................................................... 5

Tex. Loc. Gov't. Code § 351.041(a)....................................................... 7

Wis. Stat. § 967.08(1) (1988) ................................................................ 26

**Other Authorities**

5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1372 (3d ed. 2024)........................................................ 10

Brief for Respondent, *Rothgery v. Gillespie Cnty.*, 554 U.S. 191 (2008), 2008 WL 467891, at *5 (Feb. 15, 2008)............................... 30

*Caldwell County Court at Law Judge*, Caldwell County Texas, https://perma.cc/SU5V-AXWP (last visited Sept. 12, 2023) ............. 6

Caldwell County, Tex., Caldwell District Court and County Court Indigent Defense Plan art. I (2021), https://perma.cc/MRN4-HUEW ................................................................................................ 6

Clark Neily, *Jury Empowerment as an Antidote to Coercive Plea Bargaining*, 31 Fed. Sent. R. 284, 286 (2019)................................... 26

Jocelyn Simonson, *The Criminal Court Audience in a Post–Trial World*, 127 Harv. L. Rev. 2173, 2206–09 (2014)............................... 24

*Justice of Peace Courts of Caldwell County*, Caldwell County Texas, https://perma.cc/HJS5-DU3L (last visited Sept. 12, 2023) ................ 6

Paul Heaton et al., *The Downstream Consequences of Misdemeanor Pretrial Detention*, 69 Stan. L. Rev. 711, 771 (2017) ....................... 26

Tex. Att'y Gen. Op. MW-78 (1979), https://perma.cc/2NBM-2S59 ...................... 6

Tex. Just. Ct. Training Ctr., *Magistrate Deskbook* 4 (3d ed. 2022), https://perma.cc/8D8Q-ADUC ........................................................... 6

Timothy R. Schnacke et al., *Pretrial Justice Inst.*, *The History of Bail and Pretrial Release* 3 (2010), https://perma.cc/22VF-R6FY .......................... 23

## Jurisdictional Statement

The district court had jurisdiction under 28 U.S.C. § 1331. The district court entered the preliminary injunction on February 5, 2024. ROA.6. Defendants timely filed their notice of appeal on February 26, 2024. ROA.7. This Court has appellate jurisdiction under 28 U.S.C. § 1292(a)(1).

## Introduction

The district court properly enjoined Caldwell County, its Magistrates, and its Sheriff ("Defendants") from enforcing their policy barring the press and public from attending bail hearings. Plaintiffs—state and local publications and a criminal justice organization—sought a preliminary injunction to prevent further violations of their First Amendment right of access to bail hearings held in the county. This type of hearing is conducted by county magistrates across Texas and is commonly referred to as "magistration." As the Supreme Court observed in *Rothgery v. Gillespie County*, magistration in Texas "combines the Fourth Amendment's required probable-cause determination with the setting of bail, and is the point at which the arrestee is formally apprised of the accusation against him." 554 U.S. 191, 195 (2008) (footnote omitted). The Court held that as the "first formal proceeding against an accused," "where he learns the charge against him and his liberty is subject to restriction," magistration "marks the start of adversary judicial proceedings that trigger attachment of the Sixth Amendment right to counsel." *Id.* at 203, 213.

1

Despite the critical importance of these bail hearings, Defendants adopted and enforced a policy barring the press and public from attending them. Each time Plaintiffs sought access, Defendants turned them away, citing their blanket closure policy. The district court correctly held that the policy violates the First Amendment right of access to judicial proceedings, which can be overcome only in exceptional circumstances. This right is fundamental to "our republican system of self-government," because it ensures that the "discussion of governmental affairs" is an "informed one," and "permits the public to participate in and serve as a check upon the judicial process." *Globe Newspaper Co. v. Superior Ct. for Norfolk Cnty.*, 457 U.S. 596, 604–06 (1982).

The Supreme Court and this Court have held that the First Amendment right of access extends to criminal pretrial proceedings, and every federal and state appellate court to address the question has held that it extends to bail hearings. This Court held almost 40 years ago that the First Amendment right of access extends to bail reduction hearings. *United States v. Chagra*, 701 F.2d 354, 363–64 (5th Cir. 1983). As these courts have recognized, bail hearings are integral to our judicial system. They implicate numerous constitutional protections, determine whether the presumptively innocent will be deprived of their liberty pending trial, involve the consideration of weighty questions such as community safety and the risk of flight, and in most cases are the accused's only hearing prior to entering a plea. As a result,

public access to bail hearings serves the same societal interests as public access to criminal trials. In addition to promoting the informed discussion of governmental affairs and allowing the public to serve as a check on the judicial process, public access fosters the appearance of fairness, which in turn heightens public respect for the judicial process.

Defendants' challenges to Plaintiffs' standing and likelihood of success on the merits are baseless. Although their standing argument is difficult to parse, Defendants appear to assert that Plaintiffs lack standing because they have no right of access to magistration under state law. But that is irrelevant to Plaintiffs' First Amendment claim. Plaintiffs clearly have standing, because they have suffered an injury in fact—their exclusion from magistration—caused by Defendants' closure policy and redressable by court order.

Defendants' argument that Plaintiffs have not shown a likelihood of success on the merits is equally flawed. The argument seems to be that magistration is not the *kind* of judicial proceeding to which a First Amendment right of access attaches, because state law does not give magistration the right title or format. But the First Amendment right of access is not contingent on how state law defines a judicial proceeding. And, as the district court correctly concluded, this Court's decision in *Chagra* provides no support for Defendants' argument. To the contrary, *Chagra*'s

rationale for recognizing a First Amendment right of access to bail reduction hearings applies exactly to this case.

## Statement of Issues

Whether the district court abused its discretion in determining that:

1.   Plaintiffs established a likelihood of success on the merits of their First Amendment challenge to Defendants' blanket closure of magistration;

2.   Irreparable injury, the balance of hardships, and the public interest weighed in favor of issuing a preliminary injunction.

## Statement of the Case[1]

### I.   Defendants Adopted and Maintained a Policy of Closing All Magistration Proceedings to the Press and Public.

Before issuance of the preliminary injunction, Caldwell County maintained a policy of prohibiting the press and public from observing bail hearings, commonly referred to as "magistration."[2] Tex. Code Crim. P., Art. 15.17(a). Arrestees in Caldwell County and across Texas must be brought before a county magistrate within 48 hours of arrest. *Id.* This hearing "combines the Fourth Amendment's required probable-cause determination with the setting of bail, and is the point at

---

[1] Defendants did not dispute any of the facts in the district court, nor do they on appeal.

[2] In Texas, this "first postarrest hearing" is interchangeably "called a magistration, Article 15.17 hearing, bail hearing or probable cause hearing." *Russell v. Harris Cnty., Tex.*, 454 F. Supp. 3d 624, 630 (S.D. Tex. 2020).

which the arrestee is formally apprised of the accusation against him." *Rothgery v. Gillespie Cnty.*, 554 U.S. 191, 195 (2008). As the "first formal proceeding against an accused," "where he learns the charge against him and his liberty is subject to restriction," magistration "marks the start of adversary judicial proceedings that trigger attachment of the Sixth Amendment right to counsel." *Id.* at 203, 213.[3] The statute defining magistration is silent on the issue of public access. Tex. Code Crim. P., Art. 15.17(a).

Setting bail is the most significant part of magistration, because it effectively determines whether arrestees will be deprived of their liberty pending trial. In setting bail, the magistrate must make individualized determinations of the bail amount and bail conditions based on "all circumstances," including the nature of the alleged offense, the accused's ability to make bail, the risk of flight, and community safety. Tex. Code Crim. P., Arts. 17.15, 17.028(a). "Other relevant factors include the defendant's employment history, family ties, length of residency, criminal history, previous bond compliance, other outstanding bonds, and aggravating facts of the charged offense." *Ex parte Gomez*, 624 S.W.3d 573, 576 (Tex. Crim. App. 2021).

---

[3] At magistration, the magistrate also advises arrestees of their rights (including the right to counsel), informs them how to request the appointment of counsel, and ensures they have reasonable assistance in making the request. Tex. Code Crim. P., Art. 15.17(a).

In Caldwell County, the Sheriff, Defendant Mike Lane, is responsible for ensuring that arrestees are taken before a magistrate within 48 hours of arrest.[4] Caldwell County has five magistrates ("Magistrates")—Defendant Trey Hicks, the County Court at Law Judge, and Defendants Matt Kiely, Shanna Conley, Anita DeLeon, and Yvette Mireles, the County's Justices of the Peace.[5] They conduct magistration on a rotating basis at the Caldwell County Jail, appearing either in person or via videoconference. ROA.116–18; ROA.89. State law does not specify where magistration must take place and instead leaves that decision to magistrates. *See* Tex. Code Crim. P., Art. 15.17(a) ("The arrested person may be taken before the magistrate in person or . . . by means of a videoconference.").[6] Sheriff Lane is responsible for ensuring that jail personnel take arrestees to the room inside the jail

---

[4] Caldwell County, Tex., Caldwell District Court and County Court Indigent Defense Plan art. I (2021), https://perma.cc/MRN4-HUEW; *see also* Tex. Code Crim. P., Art. 15.17(a).

[5] *Caldwell County Court at Law Judge*, Caldwell County Texas, https://perma.cc/SU5V-AXWP (last visited Sept. 12, 2023); *Justice of Peace Courts of Caldwell County*, Caldwell County Texas, https://perma.cc/HJS5-DU3L (last visited Sept. 12, 2023).

[6] Tex. Att'y Gen. Op. MW-78 (1979), https://perma.cc/2NBM-2S59 (stating that "[t]here is no provision in article 15.17 as to where the warnings [given during magistration] must be issued," and that "[p]resumably [they] may be [issued] anywhere in the county where the magistrate may be found," given that the magistrate's "jurisdiction is county wide"); Tex. Just. Ct. Training Ctr., *Magistrate Deskbook* 4 (3d ed. 2022), https://perma.cc/8D8Q-ADUC ("[N]o statute dictates where an Article 15.17 hearing must occur. In fact, the Code of Criminal Procedure states that a peace officer shall bring the accused before a magistrate, not vice versa. Code of Criminal Procedure Art. 15.17(a).").

that is designated for magistration. *See* Tex. Loc. Gov't. Code § 351.041(a) (providing that "[t]he sheriff of each county is the keeper of the county jail").

As noted above, before the preliminary injunction, the Caldwell County Magistrates maintained a policy banning the press and public from attending magistration. Accordingly, Sheriff Lane maintained a policy prohibiting the press and public from entering the Jail for that purpose. ROA.89; *see also* Tex. Loc. Gov't. Code § 351.041(a). As a result, only the Magistrate and accused were present for the proceeding. ROA.117. Defendants did not provide the press or public with notice of when magistration proceedings would occur or the names of the arrestees to be magistrated. Defendants also failed to provide the press or public with the opportunity to be heard prior to closure of any magistration. ROA.114.

## II. Defendants Refused Plaintiffs Access to Magistration Pursuant to the Blanket Closure Policy.

Defendants have refused numerous requests by Plaintiffs and others to observe magistration in Caldwell County. In November 2021, the Texas Fair Defense Project ("TFDP")—Plaintiffs' Counsel in this matter but acting on its own behalf at the time—requested access from Defendant Mireles' predecessor, then–Justice of the Peace Raymond DeLeon. He refused and stated he had a policy of closing magistration to the public. TFDP again requested access in April 2022, this time from Defendants Kiely, Conley, and Anita DeLeon. Defendant Conley refused outright, and Defendants Kiely and Anita DeLeon failed to respond. ROA.110–11.

7

In early June 2022, the Executive Director of Plaintiff Caldwell/Hays Examiner, Jordan Buckley, spoke with County Jail Captain James Short regarding public access to magistration. Captain Short confirmed that all magistration proceedings are closed to the public. ROA.89. Later that month, TFDP and Plaintiff Mano Amiga wrote to the Caldwell County Magistrates then in office and other county officials explaining the constitutional significance of public access to criminal court proceedings, requesting that the County rescind its blanket closure of magistration and open all such proceedings to the public, give advance notice of the date and time of magistration proceedings on a public website, provide remote access to those who cannot attend in person, and comply with all constitutional requirements before closing any magistration proceeding. ROA.112–15. Then–County Court at Law Judge and Chief Magistrate Barbara Molina responded, "[t]he Magistrates of Caldwell County are maintaining the policy banning the public from observing magistration."[7] ROA.117–18.

Most recently, on March 23, 2023, after a new County Court at Law Judge—Defendant Hicks—and a new Justice of the Peace—Defendant Mireles—took office, Plaintiffs requested that the County rescind its blanket closure policy and open magistration to the public, and asked for a response by April 6. ROA.92–95.

---

[7] Jordan Buckley of the Caldwell/Hays Examiner again sought access to magistration on August 17, 2022, and was informed by a Jail sergeant that the public is not permitted to observe magistration at the jail. ROA.89.

Defendants did not respond, even after an April 17, 2023 follow-up email stating that Plaintiffs would treat a failure to respond as a refusal. ROA.104–06.

## III. Defendants' Blanket Closure Policy Inhibited Plaintiffs from Pursuing Their Organizational Goals.

Defendants' policy of closing all magistration hearings inhibited Plaintiffs from pursuing their organizational goals. Access to criminal proceedings, including magistration, is fundamental to The Texas Tribune's mission of ensuring that every Texan is empowered with the civic information they need to become full participants in our democracy. The Tribune regularly reports on a broad range of criminal justice issues, including the role that bail and pretrial detention play in the criminal legal system. ROA.83.

The Caldwell/Hays Examiner requires access to magistration so that it can report on newsworthy cases or issues concerning the Caldwell County criminal legal system, including racial disparities in the bail amounts set by the Magistrates, whether the Magistrates are inquiring into arrestees' ability to pay bail, the County's compliance with the Sandra Bland Act and other issues related to detainees' mental health, and the jail population size and demographics. ROA.89.

Mano Amiga needs access to magistration for many aspects of its work, including to bail people out of jail expeditiously, gather information to advocate for arrestees and victims of crime, support community members from populations that

are overrepresented in the criminal legal system, and educate the public on the importance of local courts. ROA.86.

## IV.    Procedural History

Plaintiffs filed suit on August 3, 2023 against Caldwell County, its Magistrates, and its Sheriff seeking declaratory and injunctive relief under the First and Fourteenth Amendments. ROA.4. Shortly thereafter, Plaintiffs moved for a preliminary injunction, requesting that the district court enjoin Defendants from enforcing their policy of closing magistration to the press and public and from closing any specific magistration without first complying with all constitutional requirements. ROA.5. In their opposition to the preliminary injunction motion, Defendants also moved to dismiss under Rule 12(b)(1) for lack of standing and for judgment on the pleadings under Rule 12(c). ROA.5. On February 4, 2024, the district court granted Plaintiffs' preliminary injunction motion and denied Defendants' 12(b)(1) and 12(c) motions. Only the court's preliminary injunction ruling is the subject of this appeal.[8]

The district court concluded that Defendants' policy likely violated the First Amendment, that Plaintiffs would suffer irreparable harm absent a preliminary

---

[8] At one point, Defendants appear to suggest that the denial of their Rule 12(c) motion is part of this appeal, Defs. Br. at 6, but the denial of a Rule 12(c) motion is not immediately appealable. 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1372 (3d ed. 2024).

injunction, and that the balance of hardships and the public interest favored relief. The court focused its analysis on the First Amendment inquiry and applied the two-part "experience and logic" test. The court noted that the Supreme Court, in applying this test, "has long recognized a First Amendment right of access to criminal trials and criminal pretrial proceedings," and that "[c]ritically, in the context of bail hearings, every court that considered the issue has held that the press and public have a First Amendment right of access . . . ." ROA.175–77. The court also pointed to *United States v. Chagra*, 701 F.2d 354 (5th Cir. 1983), in which this Court held that the press and public have a presumptive First Amendment right of access to bail reduction hearings. ROA.177–78.

Drawing from "this well-developed body of law, including the reasoning of *Chagra*," the court found that "Plaintiffs are likely to show that the press and public have a presumptive First Amendment right to access magistrations in Caldwell County." ROA.178. Addressing the experience prong, the court followed *Chagra*'s reasoning and held that "access to bail hearings should not be foreclosed" simply because they do not have an uninterrupted history of openness, given "their growing importance and great significance to the accused, the victim, and the community." ROA.178 (citing *Chagra*, 701 F.2d at 363) (internal quotations omitted).

The court found that the logic prong was "easily satisfied" because public access to bail hearings would "foster an informed discussion of criminal justice,"

serve as "'an effective restraint on possible abuse of judicial power,'" which is "particularly important in bail hearings, where no jury is present," strengthen public trust in the judicial process, and "provide 'community therapeutic value' by serving as an outlet for concern, hostility, and emotion that can be provoked by crimes." ROA.179 (quoting *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 570, 596 (1980)). The court emphasized that bail determinations are "'of major importance to the administration of justice,'" and noted that "deciding whether a person under arrest shall be detained in jail, even for a short period, is as significant, and arguably much more significant, than the determination made at a bail reduction hearing," which was at issue in *Chagra*. ROA.178–79 (quoting *In re Globe Newspaper Co.*, 729 F.2d 47, 52 (1st Cir. 1984)).

The court rejected Defendants' efforts to distinguish *Chagra*, pointing out that Defendants had "mistakenly interpret[ed]" *dicta* from *Chagra* stating that "nothing in this opinion should be construed as forbidding . . . informal bail procedures." The district court explained that "[t]he Fifth Circuit merely clarified the parameters of its *Chagra* opinion relating to bail reduction hearings and did not hold, or state in dicta, that a county may restrict all access to bail hearings." ROA.180–81. Additionally, the court stressed that "the format of a bail hearing does not dictate whether constitutional rights attach," noting that "in Texas state courts, the right to counsel

attaches at magistration—whether the magistration is conducted in a formal or informal proceeding." ROA.181.

The court then turned to the three remaining preliminary injunction factors, finding that Plaintiffs satisfied all of them. Plaintiffs suffered irreparable harm as a result of Defendants' policy of closing magistration, because the policy is likely unconstitutional, and also because Plaintiffs showed that "Defendants' policy inhibits their ability to pursue their organizational goals." ROA.182. The court then ruled that the balance of the equities and public interest "strongly favor a preliminary injunction," because "[i]njunctions protecting First Amendment freedoms are always in the public interest." ROA.183 (internal quotations marks omitted). On the balance of the equities, the court could not "find in [Defendants'] favor," because their "briefing [was] silent on the issue of hardship." ROA.184. In addition, the court agreed with Plaintiffs that "open magistrations will foster an appearance of fairness, thereby heightening public respect for the judicial process*." Id.* (internal quotation marks omitted).

The district court preliminarily enjoined Defendants "from (a) enforcing their policy of closing all magistration proceedings under Article 15.17 to the press and public and (b) from closing any magistration proceeding, except in extraordinary circumstances and as constitutionally permitted, under Article 15.17 without first providing reasonable notice and an opportunity to be heard, as practicable."

ROA.186. The court gave Defendants until March 4, 2024 to comply with the preliminary injunction. *Id.* Defendants did not seek a stay and since March 4 have been providing the press and public with remote access to magistration.[9]

## Standard of Review

This Court reviews the grant of a preliminary injunction for abuse of discretion, "reviewing findings of fact for clear error and conclusions of law *de novo*." *Ass'n of Club Execs. of Dallas, Inc. v. City of Dallas, Tex.*, 83 F.4th 958, 963 (5th Cir. 2023) (internal quotation marks omitted). "To obtain a preliminary injunction, the [movant] must show: (1) they are substantially likely to succeed on the merits; (2) a substantial threat of irreparable harm absent the injunction; (3) the threatened injury outweighs any harm caused by granting the injunction; and (4) the injunction is in the public interest." *Id.* The "'first two factors . . . are the most critical,'" *Career Colls. & Schs. of Tex. v. U.S. Dep't of Educ.*, 98 F.4th 220, 233 (5th Cir. 2024) (quoting *Nken v. Holder*, 556 U.S. 418, 434 (2009)), and the third and fourth "factors 'merge when the Government is the opposing party.'" *Clarke v. CFTC*, 74 F.4th 627, 643 (5th Cir. 2023) (quoting *Nken*, 556 U.S. at 435).

---

[9] Even with the preliminary injunction in place, Defendants do not provide notice of when some magistrations will occur—typically those held on an ad hoc basis rather than at a scheduled time. For all magistrations, Defendants still do not provide the names of the arrestees being magistrated.

As this Court has observed, "[t]hough there is no particular degree of likelihood of success that is required in every case, the party seeking a preliminary injunction must establish at least some likelihood of success on the merits before the court may proceed to assess the remaining requirements." *Jefferson Cmty. Health Care Centers, Inc. v. Jefferson Par. Gov't*, 849 F.3d 615, 626 (5th Cir. 2017) (citing *Texas v. Seatrain Int'l, S.A.*, 518 F.2d 175, 180 (5th Cir. 1975)). And "none of the . . . prerequisites has a fixed quantitative value. Rather, a sliding scale is utilized, which takes into account the intensity of each in a given calculus." *Mock v. Garland*, 75 F.4th 563, 587 (5th Cir. 2023) (quoting *Seatrain*, 518 F.2d at 180). In this case, because all four preliminary injunction factors weigh strongly in Plaintiffs' favor, there is no need to balance the factors or apply a sliding scale.

## Summary of Argument

Defendants make just two arguments on appeal, both of which are deeply flawed. First, they assert that Plaintiffs lack Article III standing to bring a First Amendment challenge to the closure of magistration, because Article 15.17 of the Texas Code of Criminal Procedure does not require public access. Defendants also assert that Plaintiffs are "attempt[ing] to challenge . . . Article 15.17," rather than Defendants' blanket closure policy. Defs. Br. at 9. Those assertions fundamentally misunderstand this lawsuit and standing doctrine. Plaintiffs are not challenging Article 15.17 because, as Defendants themselves emphasize, it is silent on the

question of public access to magistration. *Id.* at 12. Instead, Plaintiffs are challenging Defendants' blanket closure policy, which, by excluding Plaintiffs from magistration, causes them an injury in fact that is redressable by the injunctive relief sought. In other words, Plaintiffs' standing to bring a constitutional challenge does not turn on Article 15.17 or Defendants' asserted compliance with it.

Second, Defendants argue that Plaintiffs have not shown a likelihood of success on the merits. According to Defendants, Article 15.17 forecloses a First Amendment right of access to magistration, because this Court suggested in *dicta* in *Chagra* that there is no such right for "informal bail procedures," and Article 15.17 defines magistration as just such a procedure. Defs. Br. at 12–13. This argument fails for many reasons. Most importantly, the First Amendment right of access is not a mere privilege subject to the government's whims, to be afforded or not depending on the label or format that state law gives to a judicial proceeding. Defendants also misconstrue *Chagra*, which did not address whether there is a First Amendment right of access to "informal bail procedures." In any event, magistration cannot be characterized as such. As the Supreme Court has specifically observed, magistration in Texas is the "first formal proceeding against an accused," "where he learns the

charge against him and his liberty is subject to restriction." *Rothgery*, 554 U.S. at 203, 213.[10]

Plaintiffs have demonstrated a substantial likelihood of success on the merits in light of the wealth of authority holding that the press and public have a First Amendment right of access to pretrial criminal proceedings, including bail hearings. Nearly 40 years ago, this Court held in *Chagra* that "the same societal interests . . . that mandated a first amendment right of access to criminal trials in *Richmond Newspapers* apply to pretrial criminal proceedings," including "bail reduction hearings." *Chagra*, 701 F.2d at 363–64 (internal quotation marks omitted). The district court correctly concluded that "*Chagra's* reasoning exactly applies in this case." ROA.180. The preliminary injunction should be affirmed.[11]

---

[10] Defendants have waived any arguments other than the two made in their opening brief. *See Texas v. EPA*, 91 F.4th 280, 298 (5th Cir. 2024) ("Arguments not raised by a party in its opening brief are deemed waived."). That includes Defendants' bare assertions that "the district court erred" in the concluding paragraphs of their opening brief. *See MDK Sociedad De Responsabilidad Limitada v. Proplant Inc.*, 25 F.4th 360, 367 (5th Cir. 2022) ("A party that asserts an argument on appeal, but fails to adequately brief it, is deemed to have waived it."). Defendants cannot remedy these waivers in their reply brief. *See id.* (noting that "we do not consider issues raise[d] for the first time in an appellant's reply brief").

[11] Defendants do not dispute that Plaintiffs have met their burden of persuasion on two of the four preliminary injunction factors—balance of hardships and the public interest. And although Defendants assert that Plaintiffs have not shown irreparable harm, Defs. Br. at 14, they provide no reasoning and thus have waived that argument. *See supra* n.10.

**Argument**

## I.    Plaintiffs Have Standing to Challenge Defendants' Blanket Closure of Magistration.

Plaintiffs plainly have standing to challenge Defendants' blanket closure of magistration. They have suffered "an injury in fact caused by . . . [D]efendant[s] and redressable by a court order." *United States v. Texas*, 599 U.S. 670, 676 (2023). Before the preliminary injunction entered into force, Plaintiffs suffered injuries in fact daily—each time Defendants conducted an arrestee's magistration behind closed doors. ROA.15–17; ROA.20. These injuries are unquestionably "'concrete and particularized' and 'actual or imminent.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). They are "particularized" because they affected Plaintiffs by preventing them from pursuing their organizational missions and objectives, *see supra* at 9–10, and they are "concrete" because, as shown by *Richmond Newspapers* and its progeny, which are discussed *infra* at 20–21, denying the press and public access to criminal proceedings is "a harm that has traditionally been regarded as providing a basis for a lawsuit in . . . American courts." *Id.* at 339–41 (internal quotation marks and citations omitted).

Furthermore, Plaintiffs have shown that Defendants caused these injuries by promulgating and maintaining a policy of closing all magistration proceedings to the press and public. *See supra* at 6–10. And finally, as shown by the preliminary

injunction currently in force, the injuries Plaintiffs have suffered would be redressed by the declaratory and injunctive relief Plaintiffs seek.

Defendants argue that Plaintiffs have not suffered an injury in fact because Article 15.17 does not require that the press or public be given access to magistration. Defs Br. at 12–14. That argument, however, is based on a misunderstanding about the nature of this lawsuit and Article III standing. Plaintiffs have brought a federal constitutional challenge to Defendants' policy of closing all magistration proceedings to the press and public. This suit is not, as Defendants assert, "clearly an attempt to challenge a state statute, . . . Article 15.17, disguised as a claim against the Caldwell County Defendants." Defs Br. at 9. As Defendants themselves emphasize, Article 15.17 is silent on the issue of public access to magistration. *Id.* at 12 ("[T]he procedures for the magistrate pursuant to Article 15.17 do not require or provide for access to the press and/or public at the presentation of an arrestee[.]"). For this reason, Plaintiffs' injuries stem from Defendants' blanket closure policy, not Article 15.17.

A more fundamental problem with Defendants' standing argument is that it appears to conflate the merits of Plaintiffs' claim with the threshold question of standing. Defendants assert, in essence, that Plaintiffs have not suffered an injury in fact because they do not have a right of access to magistration. Defs. Br. at 13. But the Supreme Court has made clear that "federal standing . . . in no way depends on

the merits of the claim." *ASARCO Inc. v. Kadish*, 490 U.S. 605, 624 (1989) (quoting *Warth v. Seldin*, 422 U.S. 490, 500 (1975)); *see also Jackson Mun. Airport Auth. v. Harkins*, 98 F.4th 144, 148 (5th Cir. 2024) (en banc) (Ho, J., concurring) ("[W]e apply the same standing rules no matter what we think of the merits of the underlying claim. Standing is orthogonal to merits. So we must always be careful not to conflate our views on one with our views on the other."); *Hanson v. Veterans Admin.*, 800 F.2d 1381, 1385 (5th Cir. 1986) ("It is inappropriate for the court to focus on the merits of the case when considering the issue of standing.").

## II.    The District Court Correctly Held That Plaintiffs Have a Likelihood of Success on the Merits.

### A.    The press and public have a presumptive First Amendment right of access to bail hearings, including magistration.

Beginning with *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555 (1980), the Supreme Court has repeatedly recognized a broad First Amendment right of access to criminal trials and pretrial proceedings. *Id.* (criminal trials); *Globe Newspaper Co.*, 457 U.S. 596 (criminal trials); *Press-Enterprise Co. v. Superior Ct. of Cal.* (*Press-Enterprise I*), 464 U.S. 501 (1984) (jury *voir dire* hearings); *Press-Enterprise Co. v. Superior Ct. of Cal.* (*Press-Enterprise II*), 478 U.S. 1 (1986) (preliminary hearings of the type conducted in California); *El Vocero de P.R. v. Puerto Rico*, 508 U.S. 147 (1993) (per curiam) (preliminary hearings of the type conducted in Puerto Rico). In these cases, the Court has developed a two-part

"experience and logic" test to determine whether the press and public have a presumptive First Amendment right of access to the type of proceeding at issue. *See, e.g., Press-Enterprise II*, 478 U.S. at 9.

The experience prong asks "whether the place and process have historically been open to the press and general public," because a "tradition of accessibility implies the favorable judgment of experiences." *Id.* at 8 (internal quotation marks omitted). Courts must look to the history of openness "throughout the United States" rather than in "any one jurisdiction." *El Vocero de P.R.*, 508 U.S. at 150. The logic prong, in turn, asks "whether public access plays a significant positive role in the functioning of the particular process in question," *Press-Enterprise II*, 478 U.S. at 8, and looks to the societal interests that would be served by the openness of the proceeding. *Press-Enterprise I*, 464 U.S. at 508–09. Applying the experience and logic test, "[t]he courts of appeals have . . . recognized a First Amendment right of access to various proceedings within a criminal prosecution," including bail, suppression, due process, entrapment, plea, and sentencing hearings. *In re Hearst Newspapers, L.L.C.*, 641 F.3d 168, 176 (5th Cir. 2011) (collecting cases); *see also United States v. Ahsani*, 76 F.4th 441, 447 (5th Cir. 2023) ("The press and public enjoy a First Amendment right of access to many criminal proceedings.").

Of critical importance to this case, every federal circuit court and state supreme court to have addressed the issue—including this Court—has held that the

press and public have a First Amendment right of access to bail hearings. *See Chagra*, 701 F.2d at 363–64; *Seattle Times Co. v. United States Dist. Ct. for W. Dist. of Wash.*, 845 F.2d 1513, 1517 (9th Cir. 1988); *In re Globe Newspaper*, 729 F.2d 47, 52 (1st Cir. 1984); *Daily Press, LLC v. Commonwealth*, 878 S.E.2d 390, 398 (Va. 2022); *State v. Williams*, 459 A.2d 641, 650 (N.J. 1983); *United States v. Edwards*, 430 A.2d 1321, 1344 (D.C. 1981) (en banc); *see also In re Washington Post Co.*, 807 F.2d 383, 389 (4th Cir. 1986) (holding that the public has a right of access to plea and sentencing hearings because they are "surely as much an integral part of a criminal prosecution as are . . . bail hearings, . . . which have been held to be subject to the public's First Amendment right of access"); *United States v. Abuhamra,* 389 F.3d 309, 323–24 (2d Cir. 2004) (discussing the importance of bail hearings in the context of the First Amendment right of access).[12]

In *Chagra*, a federal magistrate closed a bail-reduction hearing over the objection of two newspapers, concluding that evidence the government planned to introduce would, if publicized, prejudice the defendant's right to a fair trial. 701 F.2d at 356. On appeal, this Court applied the experience and logic test and held that the press and public have a presumptive First Amendment right of access to bail-

---

[12] Federal district courts in other circuits have also recognized a First Amendment right of access to bail hearings. *See, e.g.*, *Phila. Bail Fund v. Arraignment Ct. Magistrate Judges*, 440 F. Supp. 3d 415, 421 (E.D. Pa. 2020); *United States v. Leonardo*, 129 F. Supp. 2d 240, 243 (W.D.N.Y. 2001).

reduction hearings. *Id.* at 362–64.[13] Addressing the experience prong, the Court found that bail reduction hearings lack the "unbroken, uncontradicted history" of openness of criminal trials that the Supreme Court emphasized in *Richmond Newspapers*, but that this "lack of an historic tradition of open bail reduction hearings does not bar our recognizing a right of access to such hearings." *Id.* at 362–63 (internal quotation marks omitted). Turning to the logic prong, the Court held that "'the same societal interests . . . that mandated a first amendment right of access to criminal trials in *Richmond Newspapers* apply' to pretrial criminal proceedings," including "bail reduction hearings." *Id.* at 363–64 (quoting *United States v. Criden*, 675 F.2d 550, 557 (3d Cir. 1982)).

*Chagra*, the other federal and state appellate court decisions referenced above, and the Supreme Court authorities on which they rely provide overwhelming support for recognition of a First Amendment right of access to bail hearings, including magistration. Looking first to the experience prong, there is evidence of the openness of bail hearings dating back to sixteenth century England.[14] In addition, as *Chagra*

---

[13] Although the *Chagra* court did not use the term "experience and logic"—the Supreme Court had not yet given the test that name—it applied that test in substance. *Id.*

[14] Timothy R. Schnacke et al., *Pretrial Justice Inst.*, *The History of Bail and Pretrial Release* 3 (2010), https://perma.cc/22VF-R6FY ("Parliament focused on adding safeguards to the bail process to protect persons from political abuse and local corruption . . . In 1554, Parliament required that the bail bond decision be made in open session.").

noted, the "relative importance of pretrial procedure to that of trial has grown immensely in the last two hundred years," and "[b]ail procedures have likewise become more significant." 701 F.2d at 363 (internal quotation marks omitted); *see also Seattle Times*, 845 F.2d at 1516 (adopting *Chagra's* reasoning); *In re Globe Newspaper*, 729 F.2d at 51 (same).

The logic prong strongly supports recognition of a First Amendment right of access to bail-setting hearings, including magistration. Determining bail is, without question, "one of major importance to the administration of justice." [15] *In re Globe Newspaper*, 729 F.2d at 52. Bail determinations require careful consideration of a number of factors, including likelihood of flight to avoid prosecution and risk to community safety. *See, e.g.,* 18 U.S.C. § 3142(c)(1). These decisions have a constitutional dimension, as reflected by the Eighth Amendment's Excessive Bail Clause and the Supreme Court's equal protection and due process jurisprudence. *See, e.g.*, *Bearden v. Georgia*, 461 U.S. 660, 665, 672–73 (1983); *United States v. Salerno*, 481 U.S. 739, 750, 752 (1987). Denying bail or setting bail at an amount the accused cannot afford deprives the presumptively innocent of their liberty

---

[15] *See also* Jocelyn Simonson, *The Criminal Court Audience in a Post–Trial World*, 127 Harv. L. Rev. 2173, 2206–09 (2014) (noting that shortly after the Supreme Court's decisions in *Richmond Newspapers* and the *Press-Enterprise* cases, "courts began to acknowledge that the decision regarding whether to set bail can be one of the most critical in a criminal case and has important implications for both defendants and communities").

pending trial, which can have devastating consequences for them and their families. Pretrial detention, even for a short period, often means loss of a job, the disruption of family life, and other harms to wellbeing. *E.g.*, *Barker v. Wingo*, 407 U.S. 514, 532–33 (1972); *Phila. Bail Fund v. Arraignment Ct. Magistrate Judges*, 440 F. Supp. 3d 415, 424 (E.D. Pa. 2020). Those detained pretrial are also "hindered in [their] ability to gather evidence, contact witnesses, or otherwise prepare [their] defense." *Barker*, 407 U.S. at 533. The Supreme Court's observation about prison sentences applies with even greater force to pretrial detention: "[A]ny amount of actual jail time is significant, and ha[s] exceptionally severe consequences for the incarcerated individual [and] for society which bears the direct and indirect costs of incarceration." *Rosales-Mireles v. United States*, 138 S. Ct. 1897, 1907 (2018) (alterations in original; internal quotation marks and citations omitted).[16]

The importance of bail hearings has continued to grow over the past several decades, in large part because "criminal justice today is for the most part a system of pleas, not a system of trials." *Lafler v. Cooper*, 566 U.S. 156, 170 (2012) (noting that "[n]inety-seven percent of federal convictions and ninety-four percent of state convictions are the result of guilty pleas"). Bail hearings play a critically important

---

[16] As the district court noted, "[d]uring the hearing on Plaintiffs' motion for preliminary injunction, Defendants admitted that '[i]t is a public concern' when a magistrate determines whether to release an arrestee on bond, and, if so, the amount of the bond and the conditions of the bond." ROA.179.

25

role in this "system of pleas," because pretrial detention—and all its attendant negative consequences—provides "a powerful lever of coercive plea bargaining."[17] The increasing significance of bail hearings helps explain the very strong nationwide trend toward requiring that bail hearings be open to the public. The federal and state court rulings referenced above require open bail hearings across 19 states and the District of Columbia, at least eight more states have added open bail hearing requirements by statute or court rule,[18] and no state has moved to close bail hearings that were once open.

For these reasons, it is beyond dispute that "the same societal interests . . . that mandated a first amendment right of access to criminal trials in *Richmond Newspapers* apply to pretrial criminal proceedings," including bail hearings. *Chagra*, 701 F.2d at 363–64 (internal quotation marks omitted); *see also Seattle Times*, 845 F.2d at 1516; *In re Globe Newspaper*, 729 F.2d at 52; *Daily Press*, 878 S.E.2d at 398; *Williams*, 459 A.2d at 648–50; *Edwards*, 430 A.2d at 1344–45. The

---

[17] Clark Neily, *Jury Empowerment as an Antidote to Coercive Plea Bargaining*, 31 Fed. Sent. R. 284, 286 (2019); *see also* Paul Heaton et al., *The Downstream Consequences of Misdemeanor Pretrial Detention*, 69 Stan. L. Rev. 711, 771 (2017) (study of bail practices in Harris County, Texas finding that defendants who are detained pretrial are significantly more likely to plead guilty "for no reason relevant to guilt.").

[18] *E.g.*, Del. R. Crim. P. J.P. Cts. R. 10(b)(1) (1998); Mich. Comp. Laws § 767.37a(3) (1994); Minn. R. Crim. P. 1.05 (4)(1)(a) & (10)(1) (2007); Nev. Rev. Stat. § 178.4849 (2021); N.H. R. Crim. P. R. 10 (2015); N.M. R. Crim. P. Magis. Ct. R. 6-109 (2015); Tenn. R. Crim. P. R. 43(e)(2) (2006); Wis. Stat. § 967.08(1) (1988).

openness of bail hearings fosters an informed discussion of governmental affairs by providing the public with a more complete understanding of the judicial system. *See Globe Newspaper*, 457 U.S. at 604–05. Openness also acts as "an effective restraint on possible abuse of judicial power" by subjecting the hearings "to contemporaneous review in the forum of public opinion." *Richmond Newspapers*, 448 U.S. at 596 (Brennan, J., concurring in the judgment) (internal quotation marks omitted). This is particularly important in criminal proceedings—including bail hearings—where no jury is present. *See Press-Enterprise II*, 478 U.S. at 12–13.

Public access to bail hearings also "fosters an appearance of fairness, thereby heightening public respect for the judicial process," *Globe Newspaper*, 457 U.S. at 606, because "people not actually attending [the hearings] can have confidence that standards of fairness are being observed; the sure knowledge that *anyone* is free to attend gives assurance that established procedures are being followed and that deviations will become known." *Press-Enterprise I*, 464 U.S. at 508 (emphasis in original). Finally, open bail hearings provide "community therapeutic value" by serving as an outlet for concern, hostility, and emotion that can be provoked by crimes, especially violent ones. *Richmond Newspapers*, 448 U.S. at 569–72 (plurality opinion). Thus, "[r]egardless of what the historical practice of openness may have been, the societal interests outlined by the Supreme Court . . . lead to the

inexorable conclusion that the First Amendment protects the right to attend and report on bail proceedings." *Phila. Bail Fund*, 440 F. Supp. 3d at 421.

Seeking to counter this wealth of authority, Defendants argue that Article 15.17 forecloses a First Amendment public right of access to magistration, because this Court held in *Chagra* that there is no First Amendment right of access to "informal bail procedures," and Article 15.17 defines magistration as such a procedure, rather than "a 'criminal proceeding', 'criminal hearing' or 'judicial proceeding' . . . where an arrestee is represented by counsel, has the opportunity to present evidence and arguments to the criminal trial court, or cross-examine witnesses." Defs. Br. at 12–13.

This argument has many flaws. Most important among them is that it would place the First Amendment right of access to judicial proceedings entirely in the government's hands. If Defendants' argument were accepted, the government could exempt a judicial proceeding from the First Amendment right of access by assigning it an informal label and format. That is directly contrary to *Richmond Newspapers* and its progeny, which require courts to engage in a functional analysis to determine whether the First Amendment right of access attaches to a judicial proceeding, regardless of the name or format of the proceeding.[19]

---

[19] "[A] State cannot foreclose the exercise of constitutional rights by mere labels." *NAACP v. Button*, 371 U.S. 415, 429 (1963). Notably, although Article 15.17 does

Defendants also misconstrue *Chagra*. The Court's statement that "nothing in this opinion should be construed as forbidding . . . informal bail procedures" cannot plausibly be read to exempt such procedures from the reach of the First Amendment right of access. 701 F.2d at 364. Given that "informal bail procedures" were not at issue in *Chagra*, the Court's statement is *dicta*. But even if it were not, the Court was "merely clarif[ying] the parameters of its *Chagra* opinion relating to bail reduction hearings and did not hold, or state in dicta, that a county may restrict all access to bail hearings." ROA.180–81.

In any event, magistration is not an "informal bail procedure." It is not akin to the *ad hoc* procedures *Chagra* refers to as informal, such as "sometimes fix[ing] [bail] amounts at the police station, or during telephonic communications with the jail." 701 F.2d at 363. As Defendants emphasize, magistration is defined by statute, which requires magistrates to perform certain specified duties, including the setting of bail, either in person or via videoconference. And as the Supreme Court recognized in *Rothgery*, magistration is the "first formal proceeding against an accused," and is therefore the point at which the right to counsel attaches. *Rothgery*, 554 U.S. at 203 (internal quotation marks omitted). The proceeding is formal not

---

not give magistration a name, courts refer to it as a "magistration hearing", "Article 15.17 hearing", "bail hearing", or "probable cause hearing." *See, e.g., Russell*, 454 F. Supp. 3d at 630; *Pecina v. State*, 361 S.W.3d 68, 78 (Tex. Crim. App. 2012); *see also Rothgery*, 554 U.S. at 195–96, 213 (referring to magistration as an "Article 15.17 hearing").

because of its format, but because it is "a criminal defendant's initial appearance before a judicial officer, where he learns the charge against him and his liberty is subject to restriction." *Id.* at 213. Indeed, the magistration at issue in *Rothgery* took place in the Gillespie County jail, with the arrestee and magistrate communicating through a "little glass window." Brief for Respondent, *Rothgery v. Gillespie Cnty.*, 554 U.S. 191 (2008), 2008 WL 467891, at *5 (Feb. 15, 2008).

### B. Defendants' blanket closure of magistration is a per se violation of Plaintiffs' presumptive First Amendment right of access.

Like all other judicial proceedings to which the press and public have a presumptive First Amendment right of access, magistration must be open to the press and public as a general matter, with closure permitted only on a case-by-case basis, and only when closure is narrowly tailored to serve a compelling interest. *See Globe Newspaper,* 457 U.S. at 607–09; *Hearst*, 641 F.3d at 181. Defendants' closure policy is a complete denial of the presumptive First Amendment right of access to magistration, without regard to the circumstances of individual cases.

The Supreme Court first mandated a case-by-case approach to closure in *Globe Newspaper*, which struck down a state law requiring that all trials for sex offenses against minors be closed to the public during the testimony of minor victims. 457 U.S. at 598–602. Although the state had a compelling interest in "safeguarding the physical and psychological well-being of a minor," the Court held that the state's "*mandatory* closure rule" was not narrowly tailored because the

state's "interest could be served just as well by requiring the trial court to determine [the necessity of closure] on a case-by-case basis." *Id.* at 607–09 (emphasis in original); *id.* at 611 n.27 ("[A] mandatory rule, requiring no particularized determinations in individual cases, is unconstitutional.").

Defendants have never articulated any interest in closing magistration, but as *Globe Newspaper* makes clear, even a compelling interest would not justify across-the-board closure. The case-by-case approach "ensures that the constitutional right of . . . access . . . will not be restricted except where necessary to protect the State's interest." *Globe Newspaper*, 457 U.S. at 609. Furthermore, the requirement that the court make specific, on-the-record findings justifying closure in individual cases "is a procedural safeguard of the First Amendment rights of the press and the public." *Ahsani*, 76 F.4th at 448.

### C.    Defendants failed to provide the due process required to protect the First Amendment public right of access.

In light of the blanket closure policy, Defendants did not provide the press or public with notice and an opportunity to be heard prior to the closure of any specific magistration proceeding. This failure to "generally provide all interested parties—including the public and the press—notice and an opportunity to be heard" violated the First Amendment right of access. *Ahsani*, 76 F.4th at 448; *see also Hearst*, 641 F.3d at 181–83 (explaining that "it seems entirely inadequate to leave the vindication of a First Amendment right to the fortuitous presence in the courtroom of a public

spirited citizen willing to complain about closure" (internal quotation marks omitted)). Otherwise, a court "cannot properly weigh the First Amendment right of access against the interests served by closure, nor can it fully consider alternatives to closure." *Hearst*, 641 F.3d at 183. Thus, the role of the press and public in ensuring the proper functioning of the judicial system includes not just attending criminal proceedings but also raising objections when courts consider closure.

The Caldwell County Magistrates have some discretion as to what form of notice and opportunity to be heard to provide to the press and public. *Ahsani*, 76 F.4th at 448 & n.13; *Hearst,* 641 F.3d at 183–84. They must, however, provide notice and an opportunity to be heard to the press and public *generally*, not just those present at magistration, and must justify the chosen form of notice and opportunity to be heard "under the balancing test of *Mathews v. Eldridge*, 424 U.S. 319, 335 [] (1976)." *Ahsani*, 76 F.4th at 448 & n.13 (quoting *Hearst*, 641 F.3d at 183 n.15).

## III.    The District Court Correctly Found That Defendants' Blanket Closure of Magistration Causes Irreparable Harm.

In the absence of the preliminary injunction, Plaintiffs will suffer irreparable harm daily—each time the Magistrates conduct an arrestee's magistration behind closed doors. This clearly satisfies the second preliminary injunction factor, because "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Roman Cath. Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 67 (2020) (per curiam) (quoting *Elrod v. Burns*, 427 U.S. 347,

373 (1976) (plurality opinion)); *see Franciscan All., Inc. v. Becerra*, 47 F.4th 368, 380 (5th Cir. 2022) ("We have recognized that the loss of freedoms guaranteed by the First Amendment . . . constitute[s] per se irreparable harm."); *Hartford Courant Co., LLC v. Carroll*, 986 F.3d 211, 224 (2d Cir. 2021) (same, applied in First Amendment public right of access case).

Even if a further showing of irreparable injury were necessary, Plaintiffs have established that their exclusion from magistration inhibits their ability to pursue their organizational goals. *See supra* at 9–10; *see also* ROA.183 ("Taking Plaintiffs' declarations into account, the Court also finds that Defendants' blanket policy of restricting all access to magistrations is causing irreparable harm to Plaintiffs and their ability to carry out their organizations' goals.").

## IV.    The District Court Correctly Found That the Balance of the Equities and the Public Interest Strongly Favor Preliminary Injunctive Relief.

The balance of the equities and public interest strongly favor a preliminary injunction. ROA.183–84. Defendants do not dispute that Plaintiffs have met their burden of persuasion. As noted above, these factors "merge when the Government is the opposing party," *Clarke*, 74 F.4th at 643 (quoting *Nken*, 556 U.S. at 435), because "the government's interest *is* the public interest." *Pursuing Am.'s Greatness v. Fed. Election Comm'n,* 831 F.3d 500, 511 (D.C. Cir. 2016) (emphasis in original); *see also Veasey v. Abbott*, 870 F.3d 387, 391 (5th Cir. 2017). Furthermore, because "[i]njunctions protecting First Amendment freedoms are always in the public

interest," *Opulent Life Church v. City of Holly Springs, Miss.*, 697 F.3d 279, 298 (5th Cir. 2012) (internal quotation marks omitted), the preliminary injunction is also in Defendants' interest. In short, there are no hardships to balance. *See Hartford Courant*, 986 F.3d at 224.

Defendants benefit from the injunction not simply because Plaintiffs' First Amendment rights are being protected while the case proceeds, but also because, as the district court agreed, "open magistrations will 'foster[] an appearance of fairness, thereby heightening public respect for the judicial process.'" ROA.184 (quoting *Globe Newspaper*, 457 U.S. at 606). "[R]eal benefits redound to the judiciary as a governmental institution—the judicial function itself is enhanced—by providing public access to criminal pretrial proceedings." *Williams*, 459 A.2d at 649.

## Conclusion

Plaintiffs ask this Court to affirm the district court's grant of a preliminary injunction. Defendants should be prohibited from enforcing their policy of closing magistration proceedings to the press and public, and from closing any arrestee's magistration without first complying with all constitutional requirements.

June 6, 2024                                   Respectfully submitted,

                                                /s/ Scott Wilkens
                                                Scott Wilkens
                                                Nicole Mo
                                                Knight First Amendment Institute at
                                                    Columbia University
                                                475 Riverside Drive, Suite 302

New York, NY 10115
(646) 745-8500
scott.wilkens@knightcolumbia.org

*Counsel for Plaintiffs–Appellees*

Camilla Hsu
Texas Fair Defense Project
314 E. Highland Mall Blvd, Suite 204
Austin, TX 78722
(737) 356-2501
chsu@fairdefense.org

*Counsel for Plaintiffs–Appellees Mano
Amiga and the Caldwell/Hays Examiner*

## Certificate of Service

I hereby certify that on June 6, 2024, I caused the foregoing brief to be electronically filed with the Clerk of the Court using CM/ECF, which will automatically send email notification of such filing to all counsel of record.

June 6, 2024                              /s/ Scott Wilkens
                                         Scott Wilkens

                                         *Counsel for Plaintiffs–Appellees*

## Certificate of Compliance

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(i), and 32(g)(1), because it contains 8,416 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word (14-point Times New Roman) and is double-spaced.

June 6, 2024                                    /s/ Scott Wilkens
                                                Scott Wilkens

                                                *Counsel for Plaintiffs–Appellees*