No. 24-50135

# IN THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

———————————

TEXAS TRIBUNE, MANO AMIGA, and CALDWELL/HAYS EXAMINER,

*Plaintiffs–Appellees,*

v.

CALDWELL COUNTY, TEXAS; TREY HICKS, in his official capacity as Caldwell County Court at Law Judge and Caldwell County Magistrate; MATT KIELY, in his official capacity as Caldwell County Justice of the Peace and Caldwell County Magistrate; SHANNA CONLEY, in her official capacity as Caldwell County Justice of the Peace and Caldwell County Magistrate; ANITA DELEON, in her official capacity as Caldwell County Justice of the Peace and Caldwell County Magistrate; YVETTE MIRELES, in her official capacity as Caldwell County Justice of the Peace and Caldwell County Magistrate; MIKE LANE, in his official capacity as the Sheriff of Caldwell County,

*Defendants–Appellants.*

———————————

On appeal from the United States District Court for the
Western District of Texas — No. 1:23-cv-00910-RP (Pitman, R.)

## RECORD EXCERPTS FOR APPELLEES

Camilla Hsu
Texas Fair Defense Project
314 E. Highland Mall Blvd., Suite 204
Austin, TX 78752
(512) 637-5220 x111
chsu@fairdefense.org

*Counsel for Plaintiffs–Appellees Mano Amiga and Caldwell/Hays Examiner*

Scott Wilkens
Nicole Mo
Knight First Amendment Institute
  at Columbia University
475 Riverside Drive, Suite 302
New York, NY 10115
(646) 745-8500
scott.wilkens@knightcolumbia.org

*Counsel for Plaintiffs–Appellees*

**Table of Contents**

| Tab # | Document Description | Record Citation |
|---|---|---|
| 1 | Docket Sheet | 24-50135.1–7 |
| 2 | Notice of Appeal (ECF No. 32), filed February 26, 2024 | 24-50135.187–208 |
| 3 | Order (ECF No. 30), filed February 5, 2024 | 24-50135.169–186 |
| 4 | Texas Tribune Declaration (ECF No. 16-1), filed September 27, 2023 | 24-50135.82–84 |
| 5 | Mano Amiga Declaration (ECF No. 16-2), filed September 27, 2023 | 24-50135.85–86 |
| 6 | Caldwell/Hays Examiner Declaration (ECF No. 16-3), filed September 27, 2023 | 24-50135.87–89 |
| 7 | Wilkens Declaration (ECF No. 16-4), filed September 27, 2023 | 24-50135.90–106 |
| 8 | Texas Fair Defense Project Declaration (ECF No. 16-5), filed September 27, 2023 | 24-50135.107–118 |

TAB 1

APPEAL,DH

# U.S. District Court [LIVE]
# Western District of Texas (Austin)
# CIVIL DOCKET FOR CASE #: 1:23-cv-00910-RP

Texas Tribune et al v. Caldwell County, Texas et al
Assigned to: Judge Robert Pitman
 Case in other court:  USCA Fifth Circuit, 24-50135
Cause: 42:1983 Civil Rights Act

Date Filed: 08/03/2023
Jury Demand: Defendant
Nature of Suit: 440 Civil Rights: Other
Jurisdiction: Federal Question

**Plaintiff**

**Texas Tribune**                    represented by   **Julie Anne Ford**
George Brothers Kincaid & Horton, LLP
114 West 7th Street
Suite 1100
Austin, TX 78701
(512)495-1400
Fax: (512)499-0094
Email: jford@gbkh.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Scott B. Wilkens**
Knight First Amendment Institute at
Columbia University
475 Riverside Drive, Suite 302
New York, NY 10115
646-745-8500
Email: scott.wilkens@knightcolumbia.org
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Camilla Jane Hsu**
Texas Fair Defense Project
314 E. Highland Mall Boulevard
Suite 204
Austin, TX 78752
737-356-2501
Email: chsu@fairdefense.org
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Mano Amiga**                    represented by   **Scott B. Wilkens**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Camilla Jane Hsu**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Caldwell/Hays Examiner**                    represented by     **Scott B. Wilkens**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Camilla Jane Hsu**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Caldwell County, Texas**                    represented by     **Jason Eric Magee**
Allison, Bass & Magee, L.L.P.
1301 Nueces Street
Suite 201
Austin, TX 78701
(512) 482-0701
Fax: 512-480-0902
Email: e.magee@allison-bass.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Susana Naranjo-Padron**
Allison, Bass & Magee, L.L.P.
1301 Nueces Street
Suite 201
Austin, TX 78701
512-482-0701
Email: s.naranjo-padron@allison-bass.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Trey Hicks**                    represented by     **Jason Eric Magee**
*in his official capacity as Caldwell County*                    (See above for address)
*Court at Law Judge and Caldwell County*                    *LEAD ATTORNEY*
*Magistrate*                    *ATTORNEY TO BE NOTICED*

**Susana Naranjo-Padron**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Matt Kiely**
*in his official capacity as Caldwell County*
*Justice of the Peace and Caldwell County*
*Magistrate*

represented by **Jason Eric Magee**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Susana Naranjo-Padron**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Shanna Conley**
*in her official capacity as Caldwell County*
*Justice of the Peace and Caldwell County*
*Magistrate*

represented by **Jason Eric Magee**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Susana Naranjo-Padron**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Anita DeLeon**
*in her official capacity as Caldwell County*
*Justice of the Peace and Caldwell County*
*Magistrate*

represented by **Jason Eric Magee**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Susana Naranjo-Padron**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Yvette Mireles**
*in her official capacity as Caldwell County*
*Justice of the Peace and Caldwell County*
*Magistrate*

represented by **Jason Eric Magee**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Susana Naranjo-Padron**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Mike Lane**
*in his official capacity as the Sheriff of*
*Caldwell County*

represented by **Jason Eric Magee**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Susana Naranjo-Padron**
(See above for address)

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 08/03/2023 | 1 (p.8) | COMPLAINT ( Filing fee $ 402 receipt number ATXWDC-17732637), filed by Caldwell/Hays Examiner, Mano Amiga, Texas Tribune. (Attachments: # 1 (p.8) Civil Cover Sheet)(Hsu, Camilla) (Entered: 08/03/2023) |
| 08/03/2023 | 2 (p.24) | REQUEST FOR ISSUANCE OF SUMMONS by Caldwell/Hays Examiner, Mano Amiga, Texas Tribune. (Hsu, Camilla) (Entered: 08/03/2023) |
| 08/07/2023 | 3 (p.31) | MOTION to Appear Pro Hac Vice by Camilla Jane Hsu *for Scott Wilkens* ( Filing fee $ 100 receipt number ATXWDC-17741580) by on behalf of Caldwell/Hays Examiner, Mano Amiga, Texas Tribune. (Hsu, Camilla) (Entered: 08/07/2023) |
| 08/08/2023 | | Case assigned to Judge Robert Pitman. CM WILL NOW REFLECT THE JUDGE INITIALS AS PART OF THE CASE NUMBER. PLEASE APPEND THESE JUDGE INITIALS TO THE CASE NUMBER ON EACH DOCUMENT THAT YOU FILE IN THIS CASE. (dm) (Entered: 08/08/2023) |
| 08/08/2023 | | If ordered by the court, all referrals and consents in this case will be assigned to Magistrate Judge Hightower. (dm) (Entered: 08/08/2023) |
| 08/08/2023 | 4 (p.37) | Summons Issued as to Caldwell County, Texas, Shanna Conley, Anita DeLeon, Trey Hicks, Matt Kiely, Mike Lane, Yvette Mireles. (dm) (Entered: 08/08/2023) |
| 08/08/2023 | 5 (p.44) | ORDER GRANTING 3 (p.31) Motion to Appear Pro Hac Vice as to SCOTT WILKENS. Pursuant to our Administrative Policies and Procedures for Electronic Filing, the attorney hereby granted to practice pro hac vice in this case must register for electronic filing with our court within 10 days of this order. Registration is managed by the PACER Service Center Signed by Judge Robert Pitman. (cc3) (Entered: 08/08/2023) |
| 08/08/2023 | | Pursuant to a conflict Magistrate Judge Susan Hightower is no longer assigned as referral judge. If ordered by the court, all referrals and consents in this case will be assigned to Magistrate Judge Howell. (cr5) (Entered: 08/14/2023) |
| 08/18/2023 | 6 (p.45) | RULE 7 DISCLOSURE STATEMENT filed by Caldwell/Hays Examiner. (Wilkens, Scott) (Entered: 08/18/2023) |
| 08/18/2023 | 7 (p.47) | RULE 7 DISCLOSURE STATEMENT filed by Mano Amiga. (Wilkens, Scott) (Entered: 08/18/2023) |
| 08/18/2023 | 8 (p.49) | RULE 7 DISCLOSURE STATEMENT filed by Texas Tribune. (Wilkens, Scott) (Entered: 08/18/2023) |
| 08/31/2023 | 9 (p.51) | WAIVER OF SERVICE Returned Executed by Caldwell/Hays Examiner, Mano Amiga, Texas Tribune as to Yvette Mireles. Waiver sent on 8/14/2023, answer due 10/13/2023. (Hsu, Camilla) (Entered: 08/31/2023) |
| 08/31/2023 | 10 (p.52) | WAIVER OF SERVICE Returned Executed by Caldwell/Hays Examiner, Mano Amiga, Texas Tribune as to Trey Hicks. Waiver sent on 8/14/2023, answer due 10/13/2023. (Hsu, Camilla) (Entered: 08/31/2023) |
| 08/31/2023 | 11 | WAIVER OF SERVICE Returned Executed by Caldwell/Hays Examiner, Mano |

| | | |
|---|---|---|
| | __(p.53)__ | Amiga, Texas Tribune as to Shanna Conley. Waiver sent on 8/14/2023, answer due 10/13/2023. (Hsu, Camilla) (Entered: 08/31/2023) |
| 08/31/2023 | __12__ (p.54) | WAIVER OF SERVICE Returned Executed by Caldwell/Hays Examiner, Mano Amiga, Texas Tribune as to Mike Lane. Waiver sent on 8/14/2023, answer due 10/13/2023. (Hsu, Camilla) (Entered: 08/31/2023) |
| 08/31/2023 | __13__ (p.55) | WAIVER OF SERVICE Returned Executed by Caldwell/Hays Examiner, Mano Amiga, Texas Tribune as to Matt Kiely. Waiver sent on 8/14/2023, answer due 10/13/2023. (Hsu, Camilla) (Entered: 08/31/2023) |
| 08/31/2023 | __14__ (p.56) | WAIVER OF SERVICE Returned Executed by Caldwell/Hays Examiner, Mano Amiga, Texas Tribune as to Caldwell County, Texas. Waiver sent on 8/14/2023, answer due 10/13/2023. (Hsu, Camilla) (Entered: 08/31/2023) |
| 08/31/2023 | __15__ (p.57) | WAIVER OF SERVICE Returned Executed by Caldwell/Hays Examiner, Mano Amiga, Texas Tribune as to Anita DeLeon. Waiver sent on 8/14/2023, answer due 10/13/2023. (Hsu, Camilla) (Entered: 08/31/2023) |
| 09/27/2023 | __16__ (p.58) | Opposed MOTION for Preliminary Injunction by Caldwell/Hays Examiner, Mano Amiga, Texas Tribune. (Attachments: # 1 (p.8) Exhibit Tex. Tribune Decl., # 2 (p.24) Exhibit Mano Amiga Decl., # 3 (p.31) Exhibit Caldwell/Hays Exam'r Decl., # 4 (p.37) Exhibit Wilkens Decl., # 5 (p.44) Exhibit TFDP Decl.)(Hsu, Camilla) (Entered: 09/27/2023) |
| 10/13/2023 | __17__ (p.119) | ANSWER to 1 (p.8) Complaint with Jury Demand by Caldwell County, Texas, Shanna Conley, Anita DeLeon, Trey Hicks, Matt Kiely, Mike Lane, Yvette Mireles.(Magee, Jason) (Entered: 10/13/2023) |
| 10/24/2023 | __18__ (p.124) | NOTICE *Regarding Defendants' Failure to Respond* by Caldwell/Hays Examiner, Mano Amiga, Texas Tribune re 16 (p.58) Opposed MOTION for Preliminary Injunction (Wilkens, Scott) (Entered: 10/24/2023) |
| 10/26/2023 | __19__ (p.126) | ORDER for DEFENDANTS to Respond on or before October 30, 2023 to 16 (p.58) Opposed MOTION for Preliminary Injunction filed by Mano Amiga, Caldwell/Hays Examiner, Texas Tribune. Signed by Judge Robert Pitman. (cc3) (Entered: 10/26/2023) |
| 10/30/2023 | __20__ (p.127) | MOTION to Dismiss *Plaintiffs' Complaint and Response to Plaintiffs' Motion for a Preliminary Injunction* by Caldwell County, Texas, Shanna Conley, Anita DeLeon, Trey Hicks, Matt Kiely, Mike Lane, Yvette Mireles. (Attachments: # 1 (p.8) Proposed Order)(Magee, Jason) (Entered: 10/30/2023) |
| 11/01/2023 | __21__ (p.141) | ORDER SETTING PRELIMINARY INJUNCTION HEARING for 11/29/2023 at 9:00 AM before Judge Robert Pitman. Signed by Judge Robert Pitman. (cc3) (Entered: 11/01/2023) |
| 11/06/2023 | __22__ (p.142) | REPLY to Response to Motion, filed by Caldwell/Hays Examiner, Mano Amiga, Texas Tribune, re 20 (p.127) MOTION to Dismiss *Plaintiffs' Complaint and Response to Plaintiffs' Motion for a Preliminary Injunction* filed by Defendant Shanna Conley, Defendant Mike Lane, Defendant Trey Hicks, Defendant Yvette Mireles, Defendant Anita DeLeon, Defendant Caldwell County, Texas, Defendant Matt Kiely, 16 (p.58) Opposed MOTION for Preliminary Injunction filed by Plaintiff Mano Amiga, Plaintiff Caldwell/Hays Examiner, Plaintiff Texas Tribune (Wilkens, Scott) (Entered: 11/06/2023) |

| | | |
|---|---|---|
| 11/07/2023 | 23 (p.151) | ORDER RESETTING PRELIMINARY INJUNCTION HEARING for 11/29/2023 at 1:30 PM before Judge Robert Pitman. Signed by Judge Robert Pitman. (cc3) (Entered: 11/07/2023) |
| 11/13/2023 | 24 (p.153) | REPLY to Response to Motion, filed by Caldwell County, Texas, Shanna Conley, Anita DeLeon, Trey Hicks, Matt Kiely, Mike Lane, Yvette Mireles, re 20 (p.127) MOTION to Dismiss *Plaintiffs' Complaint and Response to Plaintiffs' Motion for a Preliminary Injunction* filed by Defendant Shanna Conley, Defendant Mike Lane, Defendant Trey Hicks, Defendant Yvette Mireles, Defendant Anita DeLeon, Defendant Caldwell County, Texas, Defendant Matt Kiely (Magee, Jason) (Entered: 11/13/2023) |
| 11/27/2023 | 25 (p.160) | ORDER, ( Preliminary Injunction Hearing reset for 12/12/2023 at 9:00 AM before Judge Robert Pitman,). Signed by Judge Robert Pitman. (dm) (Entered: 11/27/2023) |
| 12/12/2023 | 26 | Minute Entry for proceedings held before Judge Robert Pitman: Motion Hearing held on 12/12/2023 re 16 (p.58) Opposed MOTION for Preliminary Injunction filed by Mano Amiga, Caldwell/Hays Examiner, Texas Tribune. Written order forthcoming. (Minute entry documents are not available electronically.) (Court Reporter Lily Reznik.)(cc3) (Entered: 12/12/2023) |
| 12/14/2023 | 27 (p.161) | NOTICE *Joint Letter regarding Local Rule 16* by Caldwell/Hays Examiner, Mano Amiga, Texas Tribune (Hsu, Camilla) (Entered: 12/14/2023) |
| 12/15/2023 | 28 (p.162) | DEFICIENCY NOTICE: re 27 (p.161) Notice (Other) (cc3) (Entered: 12/15/2023) |
| 12/18/2023 | 29 (p.163) | Joint MOTION to Extend Scheduling Order Deadlines by Caldwell/Hays Examiner, Mano Amiga, Texas Tribune. (Attachments: # 1 (p.8) Proposed Order)(Hsu, Camilla) (Entered: 12/18/2023) |
| 12/19/2023 | | Text Order GRANTING 29 (p.163) Joint Motion to Extend Scheduling Order Deadlines entered by Judge Robert Pitman. IT IS ORDERED that the deadline to file a report pursuant to Local Rule CV-16(c) is extended to 21 days after the Court issues an order resolving Defendants Motion to Dismiss and Plaintiffs Motion for Preliminary Injunction. (This is a text-only entry generated by the court. There is no document associated with this entry.) (sh) (Entered: 12/19/2023) |
| 02/05/2024 | 30 (p.169) | ORDER GRANTING 16 (p.58) Motion for Preliminary Injunction and DENYING 20 (p.127) Motion to Dismiss. Signed by Judge Robert Pitman. (cc3) (Entered: 02/05/2024) |
| 02/17/2024 | 31 (p.219) | Transcript filed of Proceedings held on December 12, 2023, Proceedings Transcribed: Motion Hearing. Court Reporter/Transcriber: Lily I. Reznik, Telephone number: 512-391-8792 or Lily_Reznik@txwd.uscourts.gov. Parties are notified of their duty to review the transcript to ensure compliance with the FRCP 5.2(a)/FRCrP 49.1(a). A copy may be purchased from the court reporter or viewed at the clerk's office public terminal. If redaction is necessary, a Notice of Redaction Request must be filed within 21 days. If no such Notice is filed, the transcript will be made available via PACER without redaction after 90 calendar days. The clerk will mail a copy of this notice to parties not electronically noticed Redaction Request due 3/11/2024, Redacted Transcript Deadline set for 3/19/2024, Release of Transcript Restriction set for 5/17/2024, (lr) (Entered: 02/17/2024) |
| 02/26/2024 | 32 (p.187) | Appeal of Order entered by District Judge 30 (p.169) by Caldwell County, Texas, Shanna Conley, Anita DeLeon, Trey Hicks, Matt Kiely, Mike Lane, Yvette Mireles. ( |

| | | Filing fee $ 605 receipt number ATXWDC-18459570) (Magee, Jason) (Entered: 02/26/2024) |
|---|---|---|
| 02/26/2024 | | NOTICE OF APPEAL following 32 (p.187) Notice of Appeal (E-Filed) by Caldwell County, Texas, Shanna Conley, Anita DeLeon, Trey Hicks, Matt Kiely, Mike Lane, Yvette Mireles. Filing fee $ 605, receipt number ATXWDC-18459570. Per 5th Circuit rules, the appellant has 14 days, from the filing of the Notice of Appeal, to order the transcript. To order a transcript, the appellant should fill out a (Transcript Order) and follow the instructions set out on the form. This form is available in the Clerk's Office or by clicking the hyperlink above. (klw) (Entered: 02/27/2024) |
| 02/27/2024 | 33 (p.209) | Rule 26(f) Discovery Report/Case Management Plan by Caldwell/Hays Examiner, Mano Amiga, Texas Tribune. (Hsu, Camilla) (Entered: 02/27/2024) |
| 02/27/2024 | 34 (p.213) | Proposed Scheduling Order by Caldwell/Hays Examiner, Mano Amiga, Texas Tribune. (Hsu, Camilla) (Entered: 02/27/2024) |
| 03/08/2024 | 35 (p.217) | TRANSCRIPT REQUEST by Caldwell County, Texas, Shanna Conley, Anita DeLeon, Trey Hicks, Matt Kiely, Mike Lane, Yvette Mireles for dates of December 12, 2023. Proceedings Transcribed: Preliminary Injunction Hearing. Court Reporter: Lily I. Reznik.. (Magee, Jason) (Entered: 03/08/2024) |

TAB 2

IN THE UNITED STATES COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| TEXAS TRIBUNE, MANO AMIGA, and CALDWELL/HAYS EXAMINER, Plaintiffs, | § § § § | |
| v. | § § | |
| CALDWELL COUNTY, TEXAS, TREY HICKS, in his official capacity as Caldwell County Court at Law Judge and Caldwell County Magistrate, | § § § § § | Civil Action No. 1:23-cv-910 |
| MATT KIELY, SHANNA CONLEY, ANITA DELEON, and YVETTE MIRELES, in their official capacities as Caldwell County Justices of the Peace and Caldwell County Magistrates, and | § § § § § § | |
| MIKE LANE, in his official capacity as the Sheriff of Caldwell County, Defendants. | § § § § | |

## DEFENDANTS' NOTICE OF APPEAL

Caldwell County, Texas, the Honorable Trey Hicks, in his official capacity as Caldwell County Court at Law Judge and Caldwell County Magistrate, the Honorable Matty Kiely, the Honorable Shanna Conley, the Honorable Anita DeLeon, and the Honorable Yvette Mireles, in their official capacities as Caldwell County Justices of the Peace and Caldwell County Magistrates, and the Honorable Mike Lane, in his official capacity as the Sheriff of Caldwell County, (hereinafter "Defendants") appeal this Court's Order entered on February 5, 2024, to the United States Court of Appeals for the Fifth Circuit. *See* Order Granting Plaintiffs' Motion for Preliminary Injunction, Dkt. No. 30. The Court's Order granted Plaintiffs' Texas Tribune, Mano Amiga and Caldwell/Hays Examiner's Motion for Preliminary Injunction enjoining Defendants "from (a) enforcing their policy of closing all magistration proceedings under Article 15.17 to the press and

public and (b) from closing any magistration proceeding, except in extraordinary circumstances and as constitutionally permitted, under 15.17 without first providing reasonable notice and an opportunity to be heard, as practicable." *Id.*   The order grating a preliminary injunction is immediately appealable.  *See* 28 U.S.C. § 1292(a)(1).

Respectfully submitted,

/s/ J. Eric Magee_____
J. Eric Magee
SBN: 24007585
e.magee@allison-bass.com
Susana Naranjo-Padron
SBN: 24105688
s.naranjo-padron@allison-bass.com
**ALLISON, BASS & MAGEE, L.L.P.**
1301 Nueces Street, Suite 201
Austin, Texas 78701
(512) 482-0701 telephone
(512) 480-0902 facsimile

24-50135.188

## CERTIFICATE OF SERVICE

     I hereby certify that on this the 26th day of February 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to each counsel of record listed below.

Camilla Hsu
Texas Fair Defense Project
314 E. Highland Mall Blvd., Suite 204
Austin, TX 78752
(512) 637-5220 x111
chsu@fairdefense.org
Counsel for Plaintiffs Mano Amiga
and Caldwell/Hays Examiner

Scott Wilkens
Evan Welber Falcón
Knight First Amendment Institute at Columbia University
475 Riverside Drive, Suite 302
New York, NY 10115
(646) 745-8500
scott.wilkens@knightcolumbia.org
Counsel for Plaintiffs

Julie A. Ford (07240500)
George Brothers Kincaid & Horton, LLP
114 W. 7th Street, Suite 1100
Austin, Texas 78701
(512) 495-1448
Jford@gbkh.com
Counsel for Plaintiff Texas Tribune

                               /s/ J. Eric Magee_____
                               J. Eric Magee

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

TEXAS TRIBUNE, et al.,                §
                                      §
            Plaintiffs,               §
                                      §
v.                                    §          1:23-CV-910-RP
                                      §
CALDWELL COUNTY, TEXAS, et al.,       §
                                      §
            Defendants.               §

## ORDER

Before the Court is Plaintiffs Texas Tribune, Mano Amiga, and Caldwell/Hays Examiner's

("Plaintiffs") motion for a preliminary injunction, (Dkt. 16), and Defendants'[1] motion to dismiss,

(Dkt. 20). On December 12, 2023, the Court held a hearing on both motions. (Dkt. 26). Having

considered the parties' arguments, the evidence presented, and the relevant law, the Court will grant

Plaintiffs' motion for preliminary injunction and deny Defendants' motion to dismiss.

## I. BACKGROUND

Plaintiffs allege they cannot access bail hearings, commonly called magistrations in Texas

state court,[2] in Caldwell County because Defendants Caldwell County, the county judge who is the

senior magistrate, four justices of the peace who serve as magistrates, and the county sheriff "have

adopted a policy of categorically closing all magistration proceedings to the press and public, and the

---

[1] Defendants are Caldwell County, Texas, Trey Hicks, in his official capacity as Caldwell County Court at Law Judge and Caldwell County Magistrate; Matt Kiely, in his official capacity as Caldwell County Justice of the Peace and Caldwell County Magistrate; Shanna Conley, in her official capacity as Caldwell County Justice of the Peace and Caldwell County Magistrate; Anita DeLeon, in her official capacity as Caldwell County Justice of the Peace and Caldwell County Magistrate; Yvette Mireles, in her official capacity as Caldwell County Justice of the Peace and Caldwell County Magistrate; and Mike Lane, in his official capacity as the Sheriff of Caldwell County.

[2] Magistrations are the same or substantially the same as a bail hearing, which generally occurs soon after someone is arrested to determine whether the arrestee will be detained pending trial and, if not, whether the arrestee will need to post bail. For the purposes of this opinion, the Court uses the terms "magistration" and "bail hearing" interchangeably. To the extent Defendants make arguments based on nomenclature, those arguments are not persuasive.

24-50135.191

County Sheriff has enforced this blanket closure policy by denying access to all would-be observers" in violation of the First and Fourteenth Amendments. (Compl., Dkt. 1, at 3). Generally, a magistration "combines the Fourth Amendment's required probable-cause determination with the setting of bail, and is the point at which the arrestee is formally apprised of the accusation against him." *Rothgery v. Gillespie County*, 554 U.S. 191, 195 (2008). As the "first formal proceeding against an accused," "where he learns the charge against him and his liberty is subject to restriction," magistration "marks the start of adversary judicial proceedings that trigger attachment of the Sixth Amendment right to counsel." *Id.* at 203, 213.

Plaintiffs are organizations that seek to access magistrations as part of the press and public's "broad First Amendment right of access to judicial proceedings." (Compl., Dkt. 16, at 7). The Texas Tribune and the Caldwell/Hays Examiner are both nonprofit news organizations that cover topics including criminal justice, prisons, and jails, access to counsel, bail, policing, and mental health services. (*Id.* at 4–5). Mano Amiga, an advocacy organization "that works with communities impacted by the intersection of the criminal legal system and immigration policy," focuses on criminal justice reforms in Caldwell and Hays Counties and has operated a bail fund in Caldwell County since 2020. (*Id.* at 5). Because magistrations "implicate numerous constitutional protections, determine whether the presumptively innocent will be deprived of their liberty pending trial, involve the consideration of weighty questions such as community safety and the risk of flight, and in most cases are the accused's only hearing prior to entering a plea," Plaintiffs allege that access to magistrations serves the same societal interests as access to trials: promoting an informed discussion of governmental affairs, allowing the public to serve as check on the judicial process, fostering the appearance of fairness, and heightening the public's respect for the judicial process. (*Id.* at 15).

2

### A. Article 15.17: the State Statute Governing Magistration

In Texas, Article 15.17 of the Texas Code of Criminal Procedure governs magistrations and sets out requirements for what must occur during magistration. Article 15.17 requires a person to be taken before a magistrate within 48 hours of being arrested. Tex. Code Crim. Proc., Art. 15.17(a). During magistration, the magistrate must:

1. Inform arrestees of the accusations against them;

2. Make probable cause determinations;

3. Advise arrestees of their rights, including the right to counsel;

4. Provide arrestees who request appointment of counsel with the indigency affidavit application and ensure they have reasonable assistance completing the application;

5. Make individualized bail determinations based on a number of factors, including the arrestee's ability to pay money bail; and

6. Set cash bonds, personal bonds, and other bond conditions as necessary.

*Id.* "A record of the communication between the arrested person and the magistrate shall be made" and "preserved" for a certain period of time. *Id.*

### B. Magistration in Caldwell County

In Caldwell County, a person under arrest is magistrated via videoconference by the on-duty magistrate without any other person present—no counsel, family, friends, or press—with the arrestee appearing from the county jail and the magistrate located somewhere else. (Compl., Dkt. 1, at 8). The Sheriff "enforces this blanket closure by maintaining a policy prohibiting access to the jail for the purpose of observing Magistration." (*Id.* at 9). Defendants do not provide the press or public with notice of when magistration will occur or the names of arrestees who will be magistrated. (*Id.* at 9–10). Defendants do not make findings on the record that provide an explanation as to why magistration proceedings are closed to anyone but the arrestee and the magistrate. (*Id.* at 9).

3

### C. Plaintiffs' Requests to Access Magistrations

Over the last few years, Plaintiffs have sought to access magistrations, and those requests have been denied by Defendants. On June 7, 2022, Jordan Buckley, the executive director of the Caldwell/Hays Examiner, visited the Caldwell County Jail and talked with Captain James Short about access to magistrations. (Compl., Dkt. 1, at 11). Captain Short confirmed that all magistrations are closed to the public. (*Id.*). He showed Buckley the room where magistrations take place on videoconference and said that the room and the adjoining space could be remodeled to allow for open magistrations. (*Id.*). Captain Short also said the County could provide remote access if it used a different type of videoconferencing account. (*Id.*).

A few days later, Mano Amiga wrote to Caldwell County officials, including some Defendants, requesting that the County rescind its blanket closure of magistration, open magistrations to the public, provide online notice of the date and time of magistrations, provide remote access to magistrations, and "comply with all constitutional requirements before closing any magistration proceeding." (*Id.* at 11–12). The county judge at the time responded, "[t]he Magistrates of Caldwell County are maintaining the policy banning the public from observing magistration." (*Id.* at 12). A few months later, Buckley sought access to magistration at the Caldwell County jail. He was informed by a sergeant at the facility that the public is not allowed to access magistrations. (*Id.*).

After Defendant Trey Hicks took office as the new county court at law judge and Defendant Yvette Mireles took office as a new justice of the peace in January 2023, counsel for Plaintiffs wrote to Defendants and county judge Hoppy Haden on March 23, 2023 requesting that they rescind the administrative policy banning the public from observing magistration and open magistrations to the public. Knight First Amendment Institute and Texas Fair Defense Project Letter, Dkt. 16-4, at 5–6). Plaintiffs requested a response by April 6, 2023. (*Id.* at 6). Defendants did not respond. ((Compl., Dkt. 1, at 12). Plaintiffs wrote again on April 17, 2023 and again received no response. (*Id.*).

4

### D. Procedural Background of This Lawsuit

Plaintiffs filed suit on August 3, 2023, seeking declaratory and injunctive relief under the First and Fourteenth Amendments plus costs and attorney's fees. (*Id.* at 13–15). Plaintiffs request that the Court declare that "Defendants' blanket closure of magistration proceedings in Caldwell County violates Plaintiffs' First Amendment right of access to judicial proceedings and Plaintiffs' Fourteenth Amendment right to procedural due process." (*Id.* at 15). Plaintiffs also request that the Court require that Defendants "rescind their blanket closure policy and provide the press and public with access to all magistration proceedings, with closure of specific proceedings permitted only if Defendants meet the substantive and procedural requirements of the First and Fourteenth Amendments." (*Id.*).

In late September, Plaintiffs filed their motion for preliminary injunction. (Dkt. 16). Plaintiffs request that the Court enjoin Defendants from enforcing their policy of closing magistrations to the press and public and from closing any specific magistration without first complying with all constitutional requirements. (*Id.* at 23). Defendants did not file a response. The Court ordered Defendants to respond by October 30. (Dkt. 19). On October 30, Defendants filed a combined motion to dismiss and response. (Dkt. 20). Plaintiffs replied in support of their motion for preliminary injunction, (Dkt. 22), and responded to the motion to dismiss, (Dkt. 24). The Court held a hearing on both pending motions on December 12. (Minute Entry, Dkt. 25).

## II. LEGAL STANDARD

### A. Preliminary Injunction

A preliminary injunction is an extraordinary remedy, and the decision to grant such relief is to be treated as the exception rather than the rule. *Valley v. Rapides Parish Sch. Bd.*, 118 F.3d 1047, 1050 (5th Cir. 1997). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief,

that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The party seeking injunctive relief carries the burden of persuasion on all four requirements. *PCI Transp. Inc. v. W. R.R. Co.*, 418 F.3d 535, 545 (5th Cir. 2005).

### B. Motion to Dismiss

Defendants filed a motion to dismiss Plaintiffs' claims under Federal Rules of Civil Procedure 12(b)(1) and 12(c). Rule 12(b)(1) allows a party to assert lack of subject-matter jurisdiction as a defense to suit. Fed. R. Civ. P. 12(b)(1). Federal district courts are courts of limited jurisdiction and may only exercise such jurisdiction as is expressly conferred by the Constitution and federal statutes. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A federal court properly dismisses a case for lack of subject matter jurisdiction when it lacks the statutory or constitutional power to adjudicate the case. *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001), *cert. denied*, 536 U.S. 960 (2002). "Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Id.* In ruling on a Rule 12(b)(1) motion, the court may consider any one of the following: (1) the complaint alone; (2) the complaint plus undisputed facts evidenced in the record; or (3) the complaint, undisputed facts, and the court's resolution of disputed facts. *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008).

"The standard for a Rule 12(c) motion is the same as the standard used for Rule 12(b)(6) motions." *Terry Black's Barbecue, L.L.C. v. State Auto. Mut. Ins. Co.*, 22 F.4th 450, 454 (5th Cir. 2022). Pursuant to Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a 12(b)(6) motion, a "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina*

24-50135.196

*Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Dorsey v. Portfolio Equities, Inc.,* 540 F.3d 333, 338 (5th Cir. 2008) (citations and internal quotation marks omitted).

### III. DISCUSSION

**A. Preliminary Injunction**

**1. Plaintiffs Have Shown a Likelihood of Success on the Merits**

While the specific question in this case—whether a First Amendment right to access magistrates in Texas exists—may be an issue of first impression, the Supreme Court has long recognized a First Amendment right of access to criminal trials and criminal pretrial proceedings. *See Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555 (1980); *Globe Newspaper Co. v. Superior Ct. for Norfolk Cnty.*, 457 U.S. 596 (1982); *Press-Enterprise Co. v. Superior Ct. of Cal. (Press-Enterprise I)*, 464 U.S. 501

24-50135.197

(1984); *Press-Enterprise Co. v. Superior Ct. of Cal. (Press-Enterprise II)*, 478 U.S. 1 (1986); *El Vocero de P.R. v. Puerto Rico*, 508 U.S. 147 (1993) (per curiam). The right of access to criminal trials "rests in part on the fact that 'the criminal trial historically has been open to the press and general public' and in part on the fact that 'public access to criminal trials permits the public to participate in and serve as a check upon the judicial process—an essential component in our structure of self-government.'" *In re Globe Newspaper Co.*, 729 F.2d 47, 51 (1st Cir. 1984) (quoting *Globe Newspaper Co.*, 457 U.S. at 605–06)).

Courts apply a two-part "experience and logic" test[3] to determine whether the press and public have a presumptive First Amendment right of access to the type of proceeding at issue: "(1) whether the proceeding has historically been open to the public and press; and (2) whether public access plays a significant positive role in the functioning of the particular process in question." *Press–Enterprise II*, 478 U.S. at 8–9. The experience prong asks, "whether the place and process have historically been open to the press and general public," because a "tradition of accessibility implies the favorable judgment of experience." *Id.* at 8. Courts look to the history of openness "throughout the United States" rather than in "any one jurisdiction." *El Vocero de P.R.*, 508 U.S. at 150. The logic prong, in turn, asks "whether public access plays a significant positive role in the functioning of the particular process in question," *Press-Enterprise II*, 478 U.S. at 8, and looks to the societal interests that would be served by the openness of the proceeding, *Press Enterprise I*, 464 U.S. at 508–09.

Applying the experience and logic test, the courts of appeal have "recognized a First Amendment right of access to various proceedings within a criminal prosecution," including bail, suppression, due process, entrapment, plea, and sentencing hearings. *In re Hearst Newspapers, L.L.C.*, 641 F.3d 168, 176 (5th Cir. 2011) (collecting cases). Critically, in the context of bail hearings, every

---

[3] This Court applies the experience and logic test as it appears to be appropriate given the question before this Court but takes no position on the vitality or usefulness of the test, leaving that analysis to the discretion of higher courts.

24-50135.198

court that considered the issue has held that the press and public have a First Amendment right of access to bail hearings. *See, e.g.*, *In re Globe Newspaper Co.*, 729 F.2d 47, 52 (1st Cir. 1984) (holding that Globe Newspaper's interest in access to bail hearings "enlists the First Amendment in its favor" because the "same policy concerns that the Supreme Court identified when it found that the public has a First Amendment right of access to criminal trials—the need for a public educated in the workings of the justice system and for a justice system subjected to the scrutiny of the public— operate in pretrial proceedings"); *Seattle Times Co. v. U.S. Dist. Ct. for W. Dist. of Washington*, 845 F.2d 1513, 1517 (9th Cir. 1988) ("We hold, therefore, that the press and public have a right of access to pretrial release proceedings."); *United States v. Leonardo*, 129 F. Supp. 2d 240, 243 (W.D.N.Y. 2001) (holding that "the public and the press have a First Amendment right of access to bail and detention hearings"); *Philadelphia Bail Fund v. Arraignment Ct. Magistrate Judges*, 440 F. Supp. 3d 415, 421 (E.D. Pa. 2020) ("[W]e have no hesitancy in determining that the right of public access encompasses this significant aspect of the judicial process.").

In *United States v. Chagra*, the Fifth Circuit considered the First Amendment right to access bail reduction hearings and held that the press and public have a presumptive First Amendment right of access to bail reduction hearings. 701 F.2d 354, 363–64 (5th Cir. 1983). The case stemmed from the assassination of United States District Judge John Wood in San Antonio. *Id.* at 355–56. "The press coverage of the murder and its investigation was described by reporters for San Antonio's major newspapers as 'very extensive' and 'intensive.'" *Id.* at 356. Several people were indicted, including El Paso attorney Joseph Chagra whose bail was set at $1,500,000 for the murder with an additional amount for another charge. *Id.* Chagra moved to have bail reduced, and the hearing was held before a magistrate judge. *Id.* During the open hearing, Chagra moved to close it because certain evidence that would be disclosed would prejudice his right to a fair trial. *Id.* The judge closed that portion of the hearing over the objections of local newspapers. *Id.*

In its analysis, the Fifth Circuit confirmed that the "first amendment guarantees the public and the press the right to attend criminal trials unless it is demonstrated that some curtailment of that right is required 'to protect defendant's superior right to a fair trial or that some other overriding consideration requires closure.'" *Id.* at 361 (quoting *Richmond Newspapers*, 448 U.S. at 564). Because the First Amendment right to access is rooted in the "societal interests in public awareness of, and its understanding and confidence in, the judicial system," *id.* at 363, and "the same societal interests that mandated a first amendment right of access to criminal trials in *Richmond Newspapers* apply to pretrial criminal proceedings," the Fifth Circuit extended the right to access to bail reduction hearings, *id.* at 363–64.

Applying this well-developed body of law, including the reasoning of *Chagra*, this Court finds that Plaintiffs are likely to show that the press and public have a presumptive First Amendment right to access magistrations in Caldwell County. As to the experience prong, this Court adopts *Chagra*'s reasoning regarding access to bail hearings and bail reduction hearings. Even if bail hearings, nationwide, are not uniformly and historically held in open court and may be informal, they "serve an important purpose." *Id.* at 363. The "relative importance of pretrial procedure to that of trial has grown immensely in the last two hundred years," and "[b]ail procedures have likewise become more significant." *Id.* Following *Chagra*, this Court finds that access to bail hearings "should not be foreclosed because these proceedings lack the history of openness relied on by the *Richmond Newspapers* court" due to their growing importance and great significance to the accused, the victim, and the community. *Id.*

Turning to the logic prong, the determination of bail is "one of major importance to the administration of justice." *In re Globe Newspaper*, 729 F.2d at 52. Bail determinations require important considerations, such as likelihood of flight and risk to community safety, and have a constitutional dimension. In fact, deciding whether a person under arrest shall be detained in jail,

even for a short period, is as significant, and arguably much more significant, than the determination made at a bail reduction hearing, which the Fifth Circuit already determined falls within the press and public's First Amendment right to access. During the hearing on Plaintiffs' motion for preliminary injunction, Defendants admitted that "[i]t is a public concern" when a magistrate determines whether to release an arrestee on bond, and, if so, the amount of the bond and the conditions of the bond. (*See* Minute Entry, Dkt. 26; Transcript at 18). As addressed by Plaintiffs, the increasing significance of bail hearings underlies the nationwide trend toward opening bail hearings—and notably there is no trend in the opposite direction to close bail hearing that were once open. (*See* PI Motion, Dkt. 16, at 17).

Open bail hearings foster an informed discussion of criminal justice by providing the public with a more complete understanding of the judiciary system. *See Globe Newspaper*, 457 U.S. at 604–05. Openness also acts as "an effective restraint on possible abuse of judicial power" by subjecting the hearings "to contemporaneous review in the forum of public opinion." *Richmond Newspapers*, 448 U.S. at 596 (Brennan, J., concurring in the judgment). Restraining the possibility of judicial abuse is particularly important in bail hearings, where no jury is present. *See Press-Enterprise II*, 478 U.S. at 12–13. Public access to bail hearings also "fosters an appearance of fairness, thereby heightening public respect for the judicial process," *Globe Newspaper*, 457 U.S. at 606, because "people not actually attending [the hearings] can have confidence that standards of fairness are being observed; the sure knowledge that anyone is free to attend gives assurance that established procedures are being followed and that deviations will become known." *Press-Enterprise I*, 464 U.S. at 508. Open bail hearings also can provide "community therapeutic value" by serving as an outlet for concern, hostility, and emotion that can be provoked by crimes, especially violent ones. *See Richmond Newspapers*, 448 U.S. at 569–72 (plurality opinion). Recognizing the significance of bail hearings and

11

the positive community effects of open pretrial proceedings, including bail hearings, in criminal cases, the logic prong is easily satisfied.

In Defendants' response to the motion for preliminary injunction, Defendants attempt to distinguish *Chagra* on two bases: (1) the proceeding under scrutiny there was a federal bail reduction hearing, not a state bail hearing or magistration, and (2) *Chagra* did not foreclose informal bail determinations made by state magistrates. (Mot. Dismiss, Dkt. 20, at 10). Defendants' arguments are not persuasive. Both of Defendants' arguments are based on an assumption that *Chagra* already decided the issue before this Court, which is incorrect. *Chagra* held that the press and public can access bail reduction hearings, not initial bail hearings. While *Chagra* did not decide the exact constitutional question here, *Chagra*'s reasoning exactly applies in this case. The fact that the proceeding took place in federal court in *Chagra* and here it takes place in state court does not impact the press and public's First Amendment right of access nor does it alter the reasoning set out by the Supreme Court in *Richmond Newspapers* and the long lines of cases following it. Moreover, Defendants provide no basis for their nonsensical theory that the First Amendment right of access should apply differently to federal courts than state courts.

To the extent Defendants claim that *Chagra* exempted bail hearings from the reach of the First Amendment, Defendants have misinterpreted *Chagra*'s dicta. When the Fifth Circuit noted that "nothing in this opinion should be construed as forbidding . . . informal bail procedures," 701 F.2d at 343, informal bail procedures were not at issue in that case, and this Court is not bound by *Chagra*'s dicta. Even if the statement were not dictum, Defendants seem to mistakenly interpret *Chagra*'s clarification that it was not addressing or *forbidding* informal bail procedures as meaning that the Fifth Circuit *sanctioned* a policy like Caldwell County's to close all bail hearings to the press and public. The Fifth Circuit merely clarified the parameters of its *Chagra* opinion relating to bail reduction hearings and did not hold, or state in dicta, that a county may restrict all access to bail

12

hearings. Additionally, the format of a bail hearing does not dictate whether constitutional rights attach. For example, in Texas state courts, the right to counsel attaches at magistration—whether the magistration is conducted in a formal or informal proceeding. *See Rothgery v. Gillespie County, Tex.*, 554 U.S. 191, 212–13 (2008); *El Bey v. Dominguez*, 540 F. Supp. 3d 653, 669 (N.D. Tex. 2020) ("In Texas, the right [to counsel] specifically attaches when an accused is brought before a magistrate, as required by state law, for a hearing under Texas Code of Criminal Procedure art. 15.17(a), at which a probable cause determination is made, bail is set, and the defendant is formally apprised of the accusation against him."). The Supreme Court and the Fifth Circuit have attached constitutional rights to bail hearings and bail reduction hearings, and nothing in *Chagra* carved out bail hearings from the reach of the First Amendment.

Nonetheless, the First Amendment right to access bail hearings is not absolute. The right to access is presumptive, and a bail hearing can be closed if a magistrate makes the required findings. The Supreme Court requires a "case-by-case approach" so that "the constitutional right of . . . access . . . will not be restricted except where necessary to protect the State's interest." *Globe Newspaper*, 457 U.S. at 609. "These procedural requirements are essential to safeguarding the First Amendment right of access to sentencing proceedings." *In re Hearst Newspapers, L.L.C.*, 641 F.3d 168, 182–83 (5th Cir. 2011), as revised (June 9, 2011). Likewise, for bail hearings, magistrates must make a determination to close a bail hearing on a case-by-case basis. For sentencings, for example, the Fifth Circuit has held that courts must provide the press and public with "notice and an opportunity to be heard" before closing the sentencing but acknowledged that the "importance of these requirements, however, does not preclude a trial court from choosing among various options, given the circumstances and interests involved in a particular case, to determine how it will provide notice and an opportunity to be heard." *Id.* As Plaintiffs conceded, Defendants "Caldwell County Magistrates will have some discretion to decide what form of notice and opportunity to be heard to provide to

13

the press and public." (PI Motion, Dkt. 16, at 20). Abiding by those procedural requirements within the 48-hour window between arrest and magistration may present a practical challenge to Defendants. The Court need not decide now the particulars of how the procedural safeguards of notice and an opportunity to be heard should operate in the context of a bail hearing.[4] Rather, the Court trusts that Defendants will soon make reasonable efforts to provide notice and an opportunity to be heard if, on a case-by-case basis, a magistrate intends to close or is asked to close a bail hearing.

### 2. Irreparable Harm

Given that the Court has found that Plaintiffs are likely to succeed on the merits of their First Amendment claim, Plaintiffs suffer irreparable harm due to Caldwell County's blanket policy of closing bail hearings. "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976); *Franciscan All., Inc. v. Becerra*, 47 F.4th 368, 380 (5th Cir. 2022) ("We have recognized that the loss of freedoms guaranteed by the First Amendment . . . constitute[s] per se irreparable harm."). Plaintiffs' likely constitutional deprivation is causing irreparable harm.

Moreover, Plaintiffs have shown that Defendants' policy inhibits their ability to pursue their organizational goals. Sewell Chan, the editor of the Texas Tribune, explains that "[a]ccess to criminal proceedings, including magistration, is fundamental to The Texas Tribune's mission of ensuring that every Texas is empowered with the civic information they need to become full participants in our democracy." (Chan Decl., Dkt. 16-1, at 2). "The Caldwell County magistrates' refusal to allow The Texas Tribune access to magistration proceedings prevents the Tribune from investigating

---

[4] Likewise, the Court does not address Plaintiffs' second claim in their complaint—that Defendants violate the Fourteenth Amendment by failing to provide the press and public with notice and an opportunity to be heard prior to the closure of a magistration—in this order for two reasons: (1) Plaintiffs' arguments in their motion for preliminary injunction center on their First Amendment claim; and (2) while some of the Court's analysis arguably touches on due process, the Court finds that fuller analysis is premature given that Defendants have not yet opened their magistrations.

24-50135.204

magistrates' conduct and decision-making during the proceedings and from bringing any issues of concern to the public's attention." (*Id.*). Eric Martinez, Executive and Policy Director of Mano Amiga, describes Defendants' "refusal to allow Mano Amigo access to magistration proceedings" as impeding "many aspects of the organization's work, including bailing people out of jail expeditiously, gathering information to advocate for arrestees and victims of crime, supporting community members from populations that are overrepresented in the criminal legal system, and educating the public on the importance of local courts." (Martinez Decl., Dkt. 16-2, at 2). Finally, Jordan Buckley, the Executive Director of the Caldwell/Hays Examiner, says that the "Caldwell County magistrates' refusal to allow the Caldwell/Hays Examiner access to magistration impedes the Examiner's reporting on newsworthy cases or issues that intersect with its beat in the Caldwell County criminal legal system, including racial disparities in the bail amounts set by the Magistrates, whether the Magistrates are inquiring into arrestee's ability to pay bail, the County's compliance with the Sandra Bland Act and other issues related to detainees' mental health, and the jail population size and demographics." (Buckley Decl., Dkt. 16-3, at 3). Taking Plaintiffs' declarations into account, the Court also finds that Defendants' blanket policy of restricting all access to magistrations is causing irreparable harm to Plaintiffs and their ability to carry out their organizations' goals.

### 3. Balance of the Equities and Public Interest

The remaining two factors—the balance of the equities and public interest—strongly favor a preliminary injunction. The two factors "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). "Injunctions protecting First Amendment freedoms are always in the public interest." *Opulent Life Church v. City of Holly Springs, Miss.*, 697 F.3d 279, 298 (5th Cir. 2012) (quoting *Christian Legal Soc'y v. Walker*, 453 F.3d 853, 859 (7th Cir. 2006)). Since the "government's interest *is* the public interest," *Pursuing Am.'s Greatness v. Fed. Election Comm'n*, 831 F.3d 500, 511 (D.C. Cir. 2016), the preliminary injunction is in Defendants' interest. And, given that Defendants'

briefing is silent on the issue of hardship, the Court cannot find in their favor. Plaintiffs, on the other hand, point out that open magistrations will "foster[] an appearance of fairness, thereby heightening public respect for the judicial process." *Globe Newspaper*, 457 U.S. at 606. The Court finds that the balance of the equities and the public interest both weigh in favor of granting preliminary injunctive relief.

### 4. Security Requirement

Plaintiffs ask the Court to waive the security requirement because they are nonprofits with limited resources and have asked for injunctive relief to vindicate constitutional rights. Defendants do not express opposition to Plaintiffs' request. Within its discretion, the Court will not require Plaintiffs to post a bond. *Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 628 (5th Cir. 1996) ("[C]ourt may elect to require no security at all.") (quoting *Corrigan Dispatch Co. v. Casa Guzman, S. A.*, 569 F.2d 300, 303 (5th Cir. 1978)).

### B. Motion to Dismiss Under Rules 12(b)(1) and 12(c)

Rather than file an opposition brief to the motion for preliminary injunction, Defendants filed a combined motion to dismiss and response brief. In it, Defendants argue that Plaintiffs lack standing to bring their claims and do not state viable claims and therefore cannot obtain injunctive relief. The Court turns first to standing. To have Article III standing, a plaintiff must "(1) have suffered an injury in fact, (2) that is fairly traceable to the challenged action of the defendant, and (3) that will likely be redressed by a favorable decision." *Speech First, Inc. v. Fenves*, 979 F.3d 319, 330 (5th Cir. 2020), as revised (Oct. 30, 2020) (citing *Lujan v. Def's. of Wildlife*, 504 U.S. 555, 560–61 (1992)). In support of their standing argument, Defendants provide an overview of *Chagra* and state that the bail proceeding there did not involve magistration. (Mot. Dismiss, Dkt. 20, at 10–11). Because *Chagra* was about a bail reduction hearing, not a bail setting hearing, Defendants seem to jump to the conclusion that *Chagra* "refute[s] the contentions of Plaintiffs that they have a constitutional right to

16

participate in such informal proceedings." (*Id.* at 11). Defendants provide no analysis. Regardless, the Court has already addressed *Chagra*, (*see* Section III.A.1.), and adopts its discussion and conclusion that Plaintiffs likely do have a qualified constitutional right to access magistrations based in part on the reasoning in *Chagra*. Because Plaintiffs have shown they likely have a right to access magistrations, Defendants have not shown that Plaintiffs lack standing to bring their claims.

In one paragraph, Defendants unconvincingly argue that Plaintiffs have failed to establish their right to access magistrations and the right to receive notice and have an opportunity to be heard if a magistration is to be closed. Defendants merely repeat that magistrations are not "hearings" or "criminal proceedings" and assert that "Plaintiffs fail to plead facts demonstrating that presentation of an arrestee before the magistrate pursuant to Texas Code of Criminal Procedure, Articles 14.06 and 15.17 requires that the press and public have access to attend." (Mot. Dismiss, Dkt. 20, at 11). Defendants provide no support for their arguments. Because Defendants' arguments are inadequately briefed, the Court need not consider them and will not do so.[5] *See United States v. Green*, 508 F.3d 195, 203 (5th Cir. 2007) (deeming an "assert[ion] in a single sentence at the end of [a party's] opening brief" to be "waived for inadequate briefing"). Defendants missed their deadline to respond to the motion for preliminary injunction, and when prompted by the Court, filed a brief that did not seem intent on persuading the Court not to preliminarily enjoin Defendants but rather to comply with the Court's order to file something.

## IV. CONCLUSION

For these reasons, **IT IS ORDERED** that:

1.  Plaintiffs' motion for preliminary injunction, (Dkt. 16), is **GRANTED**, insofar as the Court will enter the following preliminary injunction: **IT IS ORDERED** that

---

[5] The Court also has considered the merits of Defendants' arguments, to the best of its ability, and declines Defendants' invitation to find that Plaintiffs' complaint fails to state a viable claim for the reasons given in Section III.A.1.

Defendants are **PRELIMINARILY ENJOINED** from (a) enforcing their policy of closing all magistration proceedings under Article 15.17 to the press and public and (b) from closing any magistration proceeding, except in extraordinary circumstances and as constitutionally permitted, under Article 15.17 without first providing reasonable notice and an opportunity to be heard, as practicable. Recognizing that Defendants may need time to implement open magistrations, the Court **ORDERS** that its preliminary injunction goes into effect on **March 4, 2024**. The Court expects Defendants to open magistrations as soon as possible and fully comply with this preliminary injunction on or before March 4, 2024.

2. Defendants' motion to dismiss, (Dkt. 20), is **DENIED**.

3. Plaintiffs are not required to post a security bond.

**SIGNED** on February 5, 2024.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE

18

TAB 3

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| TEXAS TRIBUNE, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | 1:23-CV-910-RP |
| | § | |
| CALDWELL COUNTY, TEXAS, et al., | § | |
| | § | |
| Defendants. | § | |

## ORDER

Before the Court is Plaintiffs Texas Tribune, Mano Amiga, and Caldwell/Hays Examiner's

("Plaintiffs") motion for a preliminary injunction, (Dkt. 16), and Defendants'[1] motion to dismiss,

(Dkt. 20). On December 12, 2023, the Court held a hearing on both motions. (Dkt. 26). Having

considered the parties' arguments, the evidence presented, and the relevant law, the Court will grant

Plaintiffs' motion for preliminary injunction and deny Defendants' motion to dismiss.

## I. BACKGROUND

Plaintiffs allege they cannot access bail hearings, commonly called magistrations in Texas

state court,[2] in Caldwell County because Defendants Caldwell County, the county judge who is the

senior magistrate, four justices of the peace who serve as magistrates, and the county sheriff "have

adopted a policy of categorically closing all magistration proceedings to the press and public, and the

---

[1] Defendants are Caldwell County, Texas, Trey Hicks, in his official capacity as Caldwell County Court at Law Judge and Caldwell County Magistrate; Matt Kiely, in his official capacity as Caldwell County Justice of the Peace and Caldwell County Magistrate; Shanna Conley, in her official capacity as Caldwell County Justice of the Peace and Caldwell County Magistrate; Anita DeLeon, in her official capacity as Caldwell County Justice of the Peace and Caldwell County Magistrate; Yvette Mireles, in her official capacity as Caldwell County Justice of the Peace and Caldwell County Magistrate; and Mike Lane, in his official capacity as the Sheriff of Caldwell County.

[2] Magistrations are the same or substantially the same as a bail hearing, which generally occurs soon after someone is arrested to determine whether the arrestee will be detained pending trial and, if not, whether the arrestee will need to post bail. For the purposes of this opinion, the Court uses the terms "magistration" and "bail hearing" interchangeably. To the extent Defendants make arguments based on nomenclature, those arguments are not persuasive.

1

24-50135.169

County Sheriff has enforced this blanket closure policy by denying access to all would-be observers" in violation of the First and Fourteenth Amendments. (Compl., Dkt. 1, at 3). Generally, a magistration "combines the Fourth Amendment's required probable-cause determination with the setting of bail, and is the point at which the arrestee is formally apprised of the accusation against him." *Rothgery v. Gillespie County*, 554 U.S. 191, 195 (2008). As the "first formal proceeding against an accused," "where he learns the charge against him and his liberty is subject to restriction," magistration "marks the start of adversary judicial proceedings that trigger attachment of the Sixth Amendment right to counsel." *Id.* at 203, 213.

Plaintiffs are organizations that seek to access magistrations as part of the press and public's "broad First Amendment right of access to judicial proceedings." (Compl., Dkt. 16, at 7). The Texas Tribune and the Caldwell/Hays Examiner are both nonprofit news organizations that cover topics including criminal justice, prisons, and jails, access to counsel, bail, policing, and mental health services. (*Id.* at 4–5). Mano Amiga, an advocacy organization "that works with communities impacted by the intersection of the criminal legal system and immigration policy," focuses on criminal justice reforms in Caldwell and Hays Counties and has operated a bail fund in Caldwell County since 2020. (*Id.* at 5). Because magistrations "implicate numerous constitutional protections, determine whether the presumptively innocent will be deprived of their liberty pending trial, involve the consideration of weighty questions such as community safety and the risk of flight, and in most cases are the accused's only hearing prior to entering a plea," Plaintiffs allege that access to magistrations serves the same societal interests as access to trials: promoting an informed discussion of governmental affairs, allowing the public to serve as check on the judicial process, fostering the appearance of fairness, and heightening the public's respect for the judicial process. (*Id.* at 15).

24-50135.170

**A. Article 15.17: the State Statute Governing Magistration**

In Texas, Article 15.17 of the Texas Code of Criminal Procedure governs magistrations and sets out requirements for what must occur during magistration. Article 15.17 requires a person to be taken before a magistrate within 48 hours of being arrested. Tex. Code Crim. Proc., Art. 15.17(a). During magistration, the magistrate must:

1. Inform arrestees of the accusations against them;

2. Make probable cause determinations;

3. Advise arrestees of their rights, including the right to counsel;

4. Provide arrestees who request appointment of counsel with the indigency affidavit application and ensure they have reasonable assistance completing the application;

5. Make individualized bail determinations based on a number of factors, including the arrestee's ability to pay money bail; and

6. Set cash bonds, personal bonds, and other bond conditions as necessary.

*Id.* "A record of the communication between the arrested person and the magistrate shall be made" and "preserved" for a certain period of time. *Id.*

**B. Magistration in Caldwell County**

In Caldwell County, a person under arrest is magistrated via videoconference by the on-duty magistrate without any other person present—no counsel, family, friends, or press—with the arrestee appearing from the county jail and the magistrate located somewhere else. (Compl., Dkt. 1, at 8). The Sheriff "enforces this blanket closure by maintaining a policy prohibiting access to the jail for the purpose of observing Magistration." (*Id.* at 9). Defendants do not provide the press or public with notice of when magistration will occur or the names of arrestees who will be magistrated. (*Id.* at 9–10). Defendants do not make findings on the record that provide an explanation as to why magistration proceedings are closed to anyone but the arrestee and the magistrate. (*Id.* at 9).

3

24-50135.171

### C. Plaintiffs' Requests to Access Magistrations

Over the last few years, Plaintiffs have sought to access magistrations, and those requests have been denied by Defendants. On June 7, 2022, Jordan Buckley, the executive director of the Caldwell/Hays Examiner, visited the Caldwell County Jail and talked with Captain James Short about access to magistrations. (Compl., Dkt. 1, at 11). Captain Short confirmed that all magistrations are closed to the public. (*Id.*). He showed Buckley the room where magistrations take place on videoconference and said that the room and the adjoining space could be remodeled to allow for open magistrations. (*Id.*). Captain Short also said the County could provide remote access if it used a different type of videoconferencing account. (*Id.*).

A few days later, Mano Amiga wrote to Caldwell County officials, including some Defendants, requesting that the County rescind its blanket closure of magistration, open magistrations to the public, provide online notice of the date and time of magistrations, provide remote access to magistrations, and "comply with all constitutional requirements before closing any magistration proceeding." (*Id.* at 11–12). The county judge at the time responded, "[t]he Magistrates of Caldwell County are maintaining the policy banning the public from observing magistration." (*Id.* at 12). A few months later, Buckley sought access to magistration at the Caldwell County jail. He was informed by a sergeant at the facility that the public is not allowed to access magistrations. (*Id.*).

After Defendant Trey Hicks took office as the new county court at law judge and Defendant Yvette Mireles took office as a new justice of the peace in January 2023, counsel for Plaintiffs wrote to Defendants and county judge Hoppy Haden on March 23, 2023 requesting that they rescind the administrative policy banning the public from observing magistration and open magistrations to the public. Knight First Amendment Institute and Texas Fair Defense Project Letter, Dkt. 16-4, at 5–6). Plaintiffs requested a response by April 6, 2023. (*Id.* at 6). Defendants did not respond. ((Compl., Dkt. 1, at 12). Plaintiffs wrote again on April 17, 2023 and again received no response. (*Id.*).

4

### D. Procedural Background of This Lawsuit

Plaintiffs filed suit on August 3, 2023, seeking declaratory and injunctive relief under the First and Fourteenth Amendments plus costs and attorney's fees. (*Id.* at 13–15). Plaintiffs request that the Court declare that "Defendants' blanket closure of magistration proceedings in Caldwell County violates Plaintiffs' First Amendment right of access to judicial proceedings and Plaintiffs' Fourteenth Amendment right to procedural due process." (*Id.* at 15). Plaintiffs also request that the Court require that Defendants "rescind their blanket closure policy and provide the press and public with access to all magistration proceedings, with closure of specific proceedings permitted only if Defendants meet the substantive and procedural requirements of the First and Fourteenth Amendments." (*Id.*).

In late September, Plaintiffs filed their motion for preliminary injunction. (Dkt. 16). Plaintiffs request that the Court enjoin Defendants from enforcing their policy of closing magistrations to the press and public and from closing any specific magistration without first complying with all constitutional requirements. (*Id.* at 23). Defendants did not file a response. The Court ordered Defendants to respond by October 30. (Dkt. 19). On October 30, Defendants filed a combined motion to dismiss and response. (Dkt. 20). Plaintiffs replied in support of their motion for preliminary injunction, (Dkt. 22), and responded to the motion to dismiss, (Dkt. 24). The Court held a hearing on both pending motions on December 12. (Minute Entry, Dkt. 25).

## II. LEGAL STANDARD

### A. Preliminary Injunction

A preliminary injunction is an extraordinary remedy, and the decision to grant such relief is to be treated as the exception rather than the rule. *Valley v. Rapides Parish Sch. Bd.*, 118 F.3d 1047, 1050 (5th Cir. 1997). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief,

24-50135.173

that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The party seeking injunctive relief carries the burden of persuasion on all four requirements. *PCI Transp. Inc. v. W. R.R. Co.*, 418 F.3d 535, 545 (5th Cir. 2005).

### B. Motion to Dismiss

Defendants filed a motion to dismiss Plaintiffs' claims under Federal Rules of Civil Procedure 12(b)(1) and 12(c). Rule 12(b)(1) allows a party to assert lack of subject-matter jurisdiction as a defense to suit. Fed. R. Civ. P. 12(b)(1). Federal district courts are courts of limited jurisdiction and may only exercise such jurisdiction as is expressly conferred by the Constitution and federal statutes. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A federal court properly dismisses a case for lack of subject matter jurisdiction when it lacks the statutory or constitutional power to adjudicate the case. *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001), *cert. denied*, 536 U.S. 960 (2002). "Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Id.* In ruling on a Rule 12(b)(1) motion, the court may consider any one of the following: (1) the complaint alone; (2) the complaint plus undisputed facts evidenced in the record; or (3) the complaint, undisputed facts, and the court's resolution of disputed facts. *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008).

"The standard for a Rule 12(c) motion is the same as the standard used for Rule 12(b)(6) motions." *Terry Black's Barbecue, L.L.C. v. State Auto. Mut. Ins. Co.*, 22 F.4th 450, 454 (5th Cir. 2022). Pursuant to Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a 12(b)(6) motion, a "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina*

*Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Dorsey v. Portfolio Equities, Inc.,* 540 F.3d 333, 338 (5th Cir. 2008) (citations and internal quotation marks omitted).

### III. DISCUSSION

#### A. Preliminary Injunction

#### 1. Plaintiffs Have Shown a Likelihood of Success on the Merits

While the specific question in this case—whether a First Amendment right to access magistrations in Texas exists—may be an issue of first impression, the Supreme Court has long recognized a First Amendment right of access to criminal trials and criminal pretrial proceedings. *See Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555 (1980); *Globe Newspaper Co. v. Superior Ct. for Norfolk Cnty.*, 457 U.S. 596 (1982); *Press-Enterprise Co. v. Superior Ct. of Cal. (Press-Enterprise I)*, 464 U.S. 501

(1984); *Press-Enterprise Co. v. Superior Ct. of Cal. (Press-Enterprise II)*, 478 U.S. 1 (1986); *El Vocero de P.R. v. Puerto Rico*, 508 U.S. 147 (1993) (per curiam). The right of access to criminal trials "rests in part on the fact that 'the criminal trial historically has been open to the press and general public' and in part on the fact that 'public access to criminal trials permits the public to participate in and serve as a check upon the judicial process—an essential component in our structure of self-government.'" *In re Globe Newspaper Co.*, 729 F.2d 47, 51 (1st Cir. 1984) (quoting *Globe Newspaper Co.*, 457 U.S. at 605–06)).

Courts apply a two-part "experience and logic" test[3] to determine whether the press and public have a presumptive First Amendment right of access to the type of proceeding at issue: "(1) whether the proceeding has historically been open to the public and press; and (2) whether public access plays a significant positive role in the functioning of the particular process in question." *Press–Enterprise II*, 478 U.S. at 8–9. The experience prong asks, "whether the place and process have historically been open to the press and general public," because a "tradition of accessibility implies the favorable judgment of experience." *Id.* at 8. Courts look to the history of openness "throughout the United States" rather than in "any one jurisdiction." *El Vocero de P.R.*, 508 U.S. at 150. The logic prong, in turn, asks "whether public access plays a significant positive role in the functioning of the particular process in question," *Press-Enterprise II*, 478 U.S. at 8, and looks to the societal interests that would be served by the openness of the proceeding, *Press Enterprise I*, 464 U.S. at 508–09.

Applying the experience and logic test, the courts of appeal have "recognized a First Amendment right of access to various proceedings within a criminal prosecution," including bail, suppression, due process, entrapment, plea, and sentencing hearings. *In re Hearst Newspapers, L.L.C.*, 641 F.3d 168, 176 (5th Cir. 2011) (collecting cases). Critically, in the context of bail hearings, every

---

[3] This Court applies the experience and logic test as it appears to be appropriate given the question before this Court but takes no position on the vitality or usefulness of the test, leaving that analysis to the discretion of higher courts.

court that considered the issue has held that the press and public have a First Amendment right of access to bail hearings. *See, e.g.*, *In re Globe Newspaper Co.*, 729 F.3d 47, 52 (1st Cir. 1984) (holding that Globe Newspaper's interest in access to bail hearings "enlists the First Amendment in its favor" because the "same policy concerns that the Supreme Court identified when it found that the public has a First Amendment right of access to criminal trials—the need for a public educated in the workings of the justice system and for a justice system subjected to the scrutiny of the public— operate in pretrial proceedings"); *Seattle Times Co. v. U.S. Dist. Ct. for W. Dist. of Washington*, 845 F.2d 1513, 1517 (9th Cir. 1988) ("We hold, therefore, that the press and public have a right of access to pretrial release proceedings."); *United States v. Leonardo*, 129 F. Supp. 2d 240, 243 (W.D.N.Y. 2001) (holding that "the public and the press have a First Amendment right of access to bail and detention hearings"); *Philadelphia Bail Fund v. Arraignment Ct. Magistrate Judges*, 440 F. Supp. 3d 415, 421 (E.D. Pa. 2020) ("[W]e have no hesitancy in determining that the right of public access encompasses this significant aspect of the judicial process.").

In *United States v. Chagra*, the Fifth Circuit considered the First Amendment right to access bail reduction hearings and held that the press and public have a presumptive First Amendment right of access to bail reduction hearings. 701 F.2d 354, 363–64 (5th Cir. 1983). The case stemmed from the assassination of United States District Judge John Wood in San Antonio. *Id.* at 355–56. "The press coverage of the murder and its investigation was described by reporters for San Antonio's major newspapers as 'very extensive' and 'intensive.'" *Id.* at 356. Several people were indicted, including El Paso attorney Joseph Chagra whose bail was set at $1,500,000 for the murder with an additional amount for another charge. *Id.* Chagra moved to have bail reduced, and the hearing was held before a magistrate judge. *Id.* During the open hearing, Chagra moved to close it because certain evidence that would be disclosed would prejudice his right to a fair trial. *Id.* The judge closed that portion of the hearing over the objections of local newspapers. *Id.*

9

In its analysis, the Fifth Circuit confirmed that the "first amendment guarantees the public and the press the right to attend criminal trials unless it is demonstrated that some curtailment of that right is required 'to protect defendant's superior right to a fair trial or that some other overriding consideration requires closure.'" *Id.* at 361 (quoting *Richmond Newspapers*, 448 U.S. at 564). Because the First Amendment right to access is rooted in the "societal interests in public awareness of, and its understanding and confidence in, the judicial system," *id.* at 363, and "the same societal interests that mandated a first amendment right of access to criminal trials in *Richmond Newspapers* apply to pretrial criminal proceedings," the Fifth Circuit extended the right to access to bail reduction hearings, *id.* at 363–64.

Applying this well-developed body of law, including the reasoning of *Chagra*, this Court finds that Plaintiffs are likely to show that the press and public have a presumptive First Amendment right to access magistrations in Caldwell County. As to the experience prong, this Court adopts *Chagra*'s reasoning regarding access to bail hearings and bail reduction hearings. Even if bail hearings, nationwide, are not uniformly and historically held in open court and may be informal, they "serve an important purpose." *Id.* at 363. The "relative importance of pretrial procedure to that of trial has grown immensely in the last two hundred years," and "[b]ail procedures have likewise become more significant." *Id.* Following *Chagra*, this Court finds that access to bail hearings "should not be foreclosed because these proceedings lack the history of openness relied on by the *Richmond Newspapers* court" due to their growing importance and great significance to the accused, the victim, and the community. *Id.*

Turning to the logic prong, the determination of bail is "one of major importance to the administration of justice." *In re Globe Newspaper*, 729 F.2d at 52. Bail determinations require important considerations, such as likelihood of flight and risk to community safety, and have a constitutional dimension. In fact, deciding whether a person under arrest shall be detained in jail,

10

even for a short period, is as significant, and arguably much more significant, than the determination made at a bail reduction hearing, which the Fifth Circuit already determined falls within the press and public's First Amendment right to access. During the hearing on Plaintiffs' motion for preliminary injunction, Defendants admitted that "[i]t is a public concern" when a magistrate determines whether to release an arrestee on bond, and, if so, the amount of the bond and the conditions of the bond. (*See* Minute Entry, Dkt. 26; Transcript at 18). As addressed by Plaintiffs, the increasing significance of bail hearings underlies the nationwide trend toward opening bail hearings—and notably there is no trend in the opposite direction to close bail hearing that were once open. (*See* PI Motion, Dkt. 16, at 17).

Open bail hearings foster an informed discussion of criminal justice by providing the public with a more complete understanding of the judiciary system. *See Globe Newspaper*, 457 U.S. at 604–05. Openness also acts as "an effective restraint on possible abuse of judicial power" by subjecting the hearings "to contemporaneous review in the forum of public opinion." *Richmond Newspapers*, 448 U.S. at 596 (Brennan, J., concurring in the judgment). Restraining the possibility of judicial abuse is particularly important in bail hearings, where no jury is present. *See Press-Enterprise II*, 478 U.S. at 12–13. Public access to bail hearings also "fosters an appearance of fairness, thereby heightening public respect for the judicial process," *Globe Newspaper*, 457 U.S. at 606, because "people not actually attending [the hearings] can have confidence that standards of fairness are being observed; the sure knowledge that anyone is free to attend gives assurance that established procedures are being followed and that deviations will become known." *Press-Enterprise I*, 464 U.S. at 508. Open bail hearings also can provide "community therapeutic value" by serving as an outlet for concern, hostility, and emotion that can be provoked by crimes, especially violent ones. *See Richmond Newspapers*, 448 U.S. at 569–72 (plurality opinion). Recognizing the significance of bail hearings and

the positive community effects of open pretrial proceedings, including bail hearings, in criminal cases, the logic prong is easily satisfied.

In Defendants' response to the motion for preliminary injunction, Defendants attempt to distinguish *Chagra* on two bases: (1) the proceeding under scrutiny there was a federal bail reduction hearing, not a state bail hearing or magistration, and (2) *Chagra* did not foreclose informal bail determinations made by state magistrates. (Mot. Dismiss, Dkt. 20, at 10). Defendants' arguments are not persuasive. Both of Defendants' arguments are based on an assumption that *Chagra* already decided the issue before this Court, which is incorrect. *Chagra* held that the press and public can access bail reduction hearings, not initial bail hearings. While *Chagra* did not decide the exact constitutional question here, *Chagra*'s reasoning exactly applies in this case. The fact that the proceeding took place in federal court in *Chagra* and here it takes place in state court does not impact the press and public's First Amendment right of access nor does it alter the reasoning set out by the Supreme Court in *Richmond Newspapers* and the long lines of cases following it. Moreover, Defendants provide no basis for their nonsensical theory that the First Amendment right of access should apply differently to federal courts than state courts.

To the extent Defendants claim that *Chagra* exempted bail hearings from the reach of the First Amendment, Defendants have misinterpreted *Chagra*'s dicta. When the Fifth Circuit noted that "nothing in this opinion should be construed as forbidding . . . informal bail procedures," 701 F.2d at 343, informal bail procedures were not at issue in that case, and this Court is not bound by *Chagra*'s dicta. Even if the statement were not dictum, Defendants seem to mistakenly interpret *Chagra*'s clarification that it was not addressing or *forbidding* informal bail procedures as meaning that the Fifth Circuit *sanctioned* a policy like Caldwell County's to close all bail hearings to the press and public. The Fifth Circuit merely clarified the parameters of its *Chagra* opinion relating to bail reduction hearings and did not hold, or state in dicta, that a county may restrict all access to bail

12

hearings. Additionally, the format of a bail hearing does not dictate whether constitutional rights attach. For example, in Texas state courts, the right to counsel attaches at magistration—whether the magistration is conducted in a formal or informal proceeding. *See Rothgery v. Gillespie County, Tex.*, 554 U.S. 191, 212–13 (2008); *El Bey v. Dominguez*, 540 F. Supp. 3d 653, 669 (N.D. Tex. 2020) ("In Texas, the right [to counsel] specifically attaches when an accused is brought before a magistrate, as required by state law, for a hearing under Texas Code of Criminal Procedure art. 15.17(a), at which a probable cause determination is made, bail is set, and the defendant is formally apprised of the accusation against him."). The Supreme Court and the Fifth Circuit have attached constitutional rights to bail hearings and bail reduction hearings, and nothing in *Chagra* carved out bail hearings from the reach of the First Amendment.

Nonetheless, the First Amendment right to access bail hearings is not absolute. The right to access is presumptive, and a bail hearing can be closed if a magistrate makes the required findings. The Supreme Court requires a "case-by-case approach" so that "the constitutional right of . . . access . . . will not be restricted except where necessary to protect the State's interest." *Globe Newspaper*, 457 U.S. at 609. "These procedural requirements are essential to safeguarding the First Amendment right of access to sentencing proceedings." *In re Hearst Newspapers, L.L.C.*, 641 F.3d 168, 182–83 (5th Cir. 2011), as revised (June 9, 2011). Likewise, for bail hearings, magistrates must make a determination to close a bail hearing on a case-by-case basis. For sentencings, for example, the Fifth Circuit has held that courts must provide the press and public with "notice and an opportunity to be heard" before closing the sentencing but acknowledged that the "importance of these requirements, however, does not preclude a trial court from choosing among various options, given the circumstances and interests involved in a particular case, to determine how it will provide notice and an opportunity to be heard." *Id.* As Plaintiffs conceded, Defendants "Caldwell County Magistrates will have some discretion to decide what form of notice and opportunity to be heard to provide to

13

the press and public." (PI Motion, Dkt. 16, at 20). Abiding by those procedural requirements within the 48-hour window between arrest and magistration may present a practical challenge to Defendants. The Court need not decide now the particulars of how the procedural safeguards of notice and an opportunity to be heard should operate in the context of a bail hearing.[4] Rather, the Court trusts that Defendants will soon make reasonable efforts to provide notice and an opportunity to be heard if, on a case-by-case basis, a magistrate intends to close or is asked to close a bail hearing.

### 2. Irreparable Harm

Given that the Court has found that Plaintiffs are likely to succeed on the merits of their First Amendment claim, Plaintiffs suffer irreparable harm due to Caldwell County's blanket policy of closing bail hearings. "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976); *Franciscan All., Inc. v. Becerra*, 47 F.4th 368, 380 (5th Cir. 2022) ("We have recognized that the loss of freedoms guaranteed by the First Amendment . . . constitute[s] per se irreparable harm."). Plaintiffs' likely constitutional deprivation is causing irreparable harm.

Moreover, Plaintiffs have shown that Defendants' policy inhibits their ability to pursue their organizational goals. Sewell Chan, the editor of the Texas Tribune, explains that "[a]ccess to criminal proceedings, including magistration, is fundamental to The Texas Tribune's mission of ensuring that every Texas is empowered with the civic information they need to become full participants in our democracy." (Chan Decl., Dkt. 16-1, at 2). "The Caldwell County magistrates' refusal to allow The Texas Tribune access to magistration proceedings prevents the Tribune from investigating

---

[4] Likewise, the Court does not address Plaintiffs' second claim in their complaint—that Defendants violate the Fourteenth Amendment by failing to provide the press and public with notice and an opportunity to be heard prior to the closure of a magistration—in this order for two reasons: (1) Plaintiffs' arguments in their motion for preliminary injunction center on their First Amendment claim; and (2) while some of the Court's analysis arguably touches on due process, the Court finds that fuller analysis is premature given that Defendants have not yet opened their magistrations.

magistrates' conduct and decision-making during the proceedings and from bringing any issues of concern to the public's attention." (*Id.*). Eric Martinez, Executive and Policy Director of Mano Amiga, describes Defendants' "refusal to allow Mano Amigo access to magistration proceedings" as impeding "many aspects of the organization's work, including bailing people out of jail expeditiously, gathering information to advocate for arrestees and victims of crime, supporting community members from populations that are overrepresented in the criminal legal system, and educating the public on the importance of local courts." (Martinez Decl., Dkt. 16-2, at 2). Finally, Jordan Buckley, the Executive Director of the Caldwell/Hays Examiner, says that the "Caldwell County magistrates' refusal to allow the Caldwell/Hays Examiner access to magistration impedes the Examiner's reporting on newsworthy cases or issues that intersect with its beat in the Caldwell County criminal legal system, including racial disparities in the bail amounts set by the Magistrates, whether the Magistrates are inquiring into arrestee's ability to pay bail, the County's compliance with the Sandra Bland Act and other issues related to detainees' mental health, and the jail population size and demographics." (Buckley Decl., Dkt. 16-3, at 3). Taking Plaintiffs' declarations into account, the Court also finds that Defendants' blanket policy of restricting all access to magistrations is causing irreparable harm to Plaintiffs and their ability to carry out their organizations' goals.

### 3. Balance of the Equities and Public Interest

The remaining two factors—the balance of the equities and public interest—strongly favor a preliminary injunction. The two factors "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). "Injunctions protecting First Amendment freedoms are always in the public interest." *Opulent Life Church v. City of Holly Springs, Miss.*, 697 F.3d 279, 298 (5th Cir. 2012) (quoting *Christian Legal Soc'y v. Walker*, 453 F.3d 853, 859 (7th Cir. 2006)). Since the "government's interest *is* the public interest," *Pursuing Am.'s Greatness v. Fed. Election Comm'n*, 831 F.3d 500, 511 (D.C. Cir. 2016), the preliminary injunction is in Defendants' interest. And, given that Defendants'

briefing is silent on the issue of hardship, the Court cannot find in their favor. Plaintiffs, on the other hand, point out that open magistrations will "foster[] an appearance of fairness, thereby heightening public respect for the judicial process." *Globe Newspaper*, 457 U.S. at 606. The Court finds that the balance of the equities and the public interest both weigh in favor of granting preliminary injunctive relief.

### 4. Security Requirement

Plaintiffs ask the Court to waive the security requirement because they are nonprofits with limited resources and have asked for injunctive relief to vindicate constitutional rights. Defendants do not express opposition to Plaintiffs' request. Within its discretion, the Court will not require Plaintiffs to post a bond. *Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 628 (5th Cir. 1996) ("[C]ourt may elect to require no security at all.") (quoting *Corrigan Dispatch Co. v. Casa Guzman, S. A.*, 569 F.2d 300, 303 (5th Cir. 1978)).

### B. Motion to Dismiss Under Rules 12(b)(1) and 12(c)

Rather than file an opposition brief to the motion for preliminary injunction, Defendants filed a combined motion to dismiss and response brief. In it, Defendants argue that Plaintiffs lack standing to bring their claims and do not state viable claims and therefore cannot obtain injunctive relief. The Court turns first to standing. To have Article III standing, a plaintiff must "(1) have suffered an injury in fact, (2) that is fairly traceable to the challenged action of the defendant, and (3) that will likely be redressed by a favorable decision." *Speech First, Inc. v. Fenves*, 979 F.3d 319, 330 (5th Cir. 2020), as revised (Oct. 30, 2020) (citing *Lujan v. Def's. of Wildlife*, 504 U.S. 555, 560–61 (1992)). In support of their standing argument, Defendants provide an overview of *Chagra* and state that the bail proceeding there did not involve magistration. (Mot. Dismiss, Dkt. 20, at 10–11). Because *Chagra* was about a bail reduction hearing, not a bail setting hearing, Defendants seem to jump to the conclusion that *Chagra* "refute[s] the contentions of Plaintiffs that they have a constitutional right to

16

participate in such informal proceedings." (*Id.* at 11). Defendants provide no analysis. Regardless, the Court has already addressed *Chagra*, (*see* Section III.A.1.), and adopts its discussion and conclusion that Plaintiffs likely do have a qualified constitutional right to access magistrations based in part on the reasoning in *Chagra*. Because Plaintiffs have shown they likely have a right to access magistrations, Defendants have not shown that Plaintiffs lack standing to bring their claims.

In one paragraph, Defendants unconvincingly argue that Plaintiffs have failed to establish their right to access magistrations and the right to receive notice and have an opportunity to be heard if a magistration is to be closed. Defendants merely repeat that magistrations are not "hearings" or "criminal proceedings" and assert that "Plaintiffs fail to plead facts demonstrating that presentation of an arrestee before the magistrate pursuant to Texas Code of Criminal Procedure, Articles 14.06 and 15.17 requires that the press and public have access to attend." (Mot. Dismiss, Dkt. 20, at 11). Defendants provide no support for their arguments. Because Defendants' arguments are inadequately briefed, the Court need not consider them and will not do so.[5] *See United States v. Green*, 508 F.3d 195, 203 (5th Cir. 2007) (deeming an "assert[ion] in a single sentence at the end of [a party's] opening brief" to be "waived for inadequate briefing"). Defendants missed their deadline to respond to the motion for preliminary injunction, and when prompted by the Court, filed a brief that did not seem intent on persuading the Court not to preliminarily enjoin Defendants but rather to comply with the Court's order to file something.

## IV. CONCLUSION

For these reasons, **IT IS ORDERED** that:

1. Plaintiffs' motion for preliminary injunction, (Dkt. 16), is **GRANTED**, insofar as the Court will enter the following preliminary injunction: **IT IS ORDERED** that

---

[5] The Court also has considered the merits of Defendants' arguments, to the best of its ability, and declines Defendants' invitation to find that Plaintiffs' complaint fails to state a viable claim for the reasons given in Section III.A.1.

Defendants are **PRELIMINARILY ENJOINED** from (a) enforcing their policy of closing all magistration proceedings under Article 15.17 to the press and public and (b) from closing any magistration proceeding, except in extraordinary circumstances and as constitutionally permitted, under Article 15.17 without first providing reasonable notice and an opportunity to be heard, as practicable. Recognizing that Defendants may need time to implement open magistrations, the Court **ORDERS** that its preliminary injunction goes into effect on **March 4, 2024**. The Court expects Defendants to open magistrations as soon as possible and fully comply with this preliminary injunction on or before March 4, 2024.

2. Defendants' motion to dismiss, (Dkt. 20), is **DENIED**.

3. Plaintiffs are not required to post a security bond.

**SIGNED** on February 5, 2024.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE

18

TAB 4

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

TEXAS TRIBUNE, MANO AMIGA,
CALDWELL/HAYS EXAMINER,

       Plaintiffs,

    v.

CALDWELL COUNTY, TEXAS,

TREY HICKS, in his official capacity as
Caldwell County Court at Law Judge and
Caldwell County Magistrate,

MATT KIELY, SHANNA CONLEY, ANITA
DELEON, and YVETTE MIRELES, in their
official capacities as Caldwell County Justices
of the Peace and Caldwell County
Magistrates, and

MIKE LANE, in his official capacity as the
Sheriff of Caldwell County,

       Defendants.

Civil Action No. 1:23-cv-910-RP

## DECLARATION OF THE TEXAS TRIBUNE IN SUPPORT OF PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

I, Sewell Chan, hereby declare and state as follows:

    1.    I am the Editor in Chief of The Texas Tribune and have served in that role since October 2021. I am over the age of eighteen and am competent to make the statements herein. I have personal knowledge of the facts stated in this declaration, and, if called and sworn as a witness, could and would competently testify to them.

    2.    The Texas Tribune, founded in 2009, is a nonprofit, nonpartisan news organization that promotes civic engagement and discourse on public policy, politics,

24-50135.82

1

government, and other matters of statewide concern. The Tribune's model of nonprofit journalism, supported by individual contributions, major gifts, corporate sponsorships, and grants from foundations and endowments, has been recognized with numerous national awards, including the Edward R. Murrow Awards, the Online Journalism Awards and the Texas Managing Editors Awards. The Tribune covers a wide range of public policy, including criminal justice, prisons and jails. It employs journalists across the state, including one who lives in Lockhart, in Caldwell County.

3.    Access to criminal proceedings, including magistration, is fundamental to The Texas Tribune's mission of ensuring that every Texan is empowered with the civic information they need to become full participants in our democracy. The Tribune regularly reports on a broad range of criminal justice issues, including the role that bail and pretrial detention play in the criminal legal system.[1]

4.    The Caldwell County magistrates' refusal to allow The Texas Tribune access to magistration proceedings prevents the Tribune from investigating magistrates' conduct and decision-making during the proceedings and from bringing any issues of concern to the public's attention. For example, the Tribune cannot evaluate the fairness of the proceedings, including the bail amount set for individual arrestees. The closure of magistration also prevents the Tribune from assessing whether magistrates are fully carrying out their duties. If magistrates fail to inform arrestees of their right to counsel, including court-appointed counsel, that would be a matter of public concern.

---

[1] E.g., Jolie McCullough, *Federal judge orders Galveston County to have defense lawyers at bail-setting hearings*, Tex. Tribune (Sept. 11, 2019), https://perma.cc/WW2Y-28L7; Jolie McCullough, *Gov. Greg Abbott prioritized changing how bail is set. He isn't addressing people stuck behind bars because they can't afford to pay.*, Tex. Tribune (Feb. 11, 2021), https://perma.cc/Z54G-PQK6.

24-50135.83

I declare under penalty of perjury that the foregoing is true and correct. Executed on this

25th day of September 2023.

Sewell Chan

24-50135.84

TAB 5

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

TEXAS TRIBUNE, MANO AMIGA, CALDWELL/HAYS EXAMINER,

    Plaintiffs,

v.

CALDWELL COUNTY, TEXAS,

TREY HICKS, in his official capacity as Caldwell County Court at Law Judge and Caldwell County Magistrate,

MATT KIELY, SHANNA CONLEY, ANITA DELEON, and YVETTE MIRELES, in their official capacities as Caldwell County Justices of the Peace and Caldwell County Magistrates, and

MIKE LANE, in his official capacity as the Sheriff of Caldwell County,

    Defendants.

Civil Action No. 1:23-cv-910-RP

## DECLARATION OF MANO AMIGA IN SUPPORT OF PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

I, Eric Martinez, hereby declare and state as follows:

1.    I am Executive and Policy Director of Mano Amiga. I am over the age of eighteen and am competent to make the statements herein. I have personal knowledge of the facts stated in this declaration, and, if called and sworn as a witness, could and would competently testify to them.

2.    Mano Amiga is an advocacy organization founded in 2017 that works with communities impacted by the intersection of the criminal legal system and immigration policy. It

1

focuses on criminal legal system reform issues in Caldwell and Hays Counties, including reducing pretrial detention, ensuring access to counsel, and minimizing the impact of the criminal legal system on noncitizens. In addition, Mano Amiga has operated a bail fund in Caldwell County since 2020.

3.      The Caldwell County magistrates' refusal to allow Mano Amiga access to magistration proceedings impedes many aspects of the organization's work, including bailing people out of jail expeditiously, gathering information to advocate for arrestees and victims of crime, supporting community members from populations that are overrepresented in the criminal legal system, and educating the public on the importance of local courts.

4.      Being banned from attending magistration in Caldwell County prevents us from bailing people out expeditiously because there are significant delays between when a bond is set and when that information becomes available to our organization and the wider public. Since we are unable to learn bail amounts in real-time by attending magistration, our organization has to wait for bail to be set, bail information to be processed, processed bail information to be entered into the online system, and the system to populate bail information publicly. In our experience, these processes often take significant amounts of time.

5.      Due to the policy prohibiting us from observing magistration, we have been unable to expand our support for detained community members through initiatives like court-watching during bail setting, offering court accompaniment, and collecting and organizing data on bail practices for broader public awareness.

6.      I declare under penalty of perjury that the foregoing is true and correct. Executed on this 20th day of September, 2023.

Eric Martinez

2

TAB 6

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| TEXAS TRIBUNE, MANO AMIGA, CALDWELL/HAYS EXAMINER,<br><br>       Plaintiffs,<br><br>  v.<br><br>CALDWELL COUNTY, TEXAS,<br><br>TREY HICKS, in his official capacity as Caldwell County Court at Law Judge and Caldwell County Magistrate,<br><br>MATT KIELY, SHANNA CONLEY, ANITA DELEON, and YVETTE MIRELES, in their official capacities as Caldwell County Justices of the Peace and Caldwell County Magistrates, and<br><br>MIKE LANE, in his official capacity as the Sheriff of Caldwell County,<br><br>       Defendants. | Civil Action No. 1:23-cv-910-RP |

**DECLARATION OF CALDWELL/HAYS EXAMINER IN SUPPORT OF PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION**

I, Jordan Buckley, hereby declare and state as follows:

    1.    I am Executive Director of Plaintiff Caldwell/Hays Examiner. I am over the age of eighteen and am competent to make the statements herein. I have personal knowledge of the facts stated in this declaration, and, if called and sworn as a witness, could and would competently testify to them.

1

24-50135.87

2.      The Caldwell/Hays Examiner is a nonprofit local publication founded in January 2022 that covers criminal legal issues in Caldwell and Hays Counties, including access to counsel, bail, policing, and mental health services.

3.      In April 2022, I had a conversation with County Judge Hoppy Haden about the possibility of establishing a Public Defender Office in Caldwell County. Shortly after that, Judge Haden and the Executive Director of the Texas Indigent Defense Commission met to discuss the procedure for setting up a Public Defender Office. The Caldwell/Hays Examiner would like to attend magistration hearings to get a better sense of what role a Public Defender could play at those hearings and to better understand the operations of the criminal legal system in Caldwell County in general.

4.      Additionally, we are interested in possible racial disparities in bail amounts set by magistrates in Caldwell County. As an example, according to press reports, drastically different bail amounts were set for the suspects in two killings that occurred just three weeks apart in Caldwell County in the fall of 2021. In the first case, a 69-year-old white woman, Dena Storch, was arrested for allegedly shooting to death her 82-year-old white husband, Lothar Storch, in their home. She was arrested shortly after the killing and her bail was set at $1 million. In the second incident, a 65-year-old white male, Terry Turner, was arrested for allegedly shooting to death Adil Dghoughi, a young Moroccan immigrant, who was backing his car out of Mr. Turner's driveway when Turner allegedly shot him through the windshield. Turner was not taken into custody until 11 days later, and his bail was set at $150,000. He spent less than two hours in jail before posting bond. Dena Storch and Terry Turner were both eventually charged with first-degree-murder. To understand the reasons why magistrates in Caldwell County are imposing these wildly differing bail amounts, we need access to magistration.

2

24-50135.88

5.     On June 7, 2022, I visited the Caldwell County Jail and spoke with Captain James Short about public access to magistration. Captain Short confirmed that all magistration proceedings are closed to the public. At my request, Captain Short showed me the room where magistration takes place. He explained that the County uses video conferencing technology to connect that room with the Magistrate on duty. In response to my questions, Captain Short said that if the County decided to open magistration proceedings to the public, the room used for magistration and the adjoining space could possibly be remodeled for that purpose. He also said that the County could potentially provide the public with remote access if the County obtained a different type of video conferencing account.

6.     On August 17, 2022, I again sought access to magistration at the Caldwell County Jail. A jail sergeant refused to permit me to enter the jail for the purpose of attending magistration. She informed me that the public is not permitted to observe magistration at the jail.

7.     The Caldwell County magistrates' refusal to allow the Caldwell/Hays Examiner access to magistration impedes the Examiner's reporting on newsworthy cases or issues that intersect with its beat in the Caldwell County criminal legal system, including racial disparities in the bail amounts set by the Magistrates, whether the Magistrates are inquiring into arrestees' ability to pay bail, the County's compliance with the Sandra Bland Act and other issues related to detainees' mental health, and the jail population size and demographics.

8.     I declare under penalty of perjury that the foregoing is true and correct. Executed on this 22nd day of September, 2023.

Jordan Buckley

3

TAB 7

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

TEXAS TRIBUNE, MANO AMIGA,
CALDWELL/HAYS EXAMINER,

     Plaintiffs,

    v.

CALDWELL COUNTY, TEXAS,

TREY HICKS, in his official capacity as
Caldwell County Court at Law Judge and
Caldwell County Magistrate,

MATT KIELY, SHANNA CONLEY, ANITA
DELEON, and YVETTE MIRELES, in their
official capacities as Caldwell County Justices
of the Peace and Caldwell County
Magistrates, and

MIKE LANE, in his official capacity as the
Sheriff of Caldwell County,

     Defendants.

Civil Action No. 1:23-cv-910-RP

**DECLARATION OF SCOTT WILKENS IN SUPPORT OF PLAINTIFFS' MOTION
FOR A PRELIMINARY INJUNCTION**

I, Scott Wilkens, hereby declare and state as follows:

    1.    I am Senior Counsel at the Knight First Amendment Institute at Columbia University. I am also counsel for Plaintiffs in this action. I am over the age of eighteen and am competent to make the statements herein. I have personal knowledge of the facts stated in this declaration, and, if called and sworn as a witness, could and would competently testify to them.

    2.    Attached as Exhibit A is a true and correct copy of a cover email and letter I sent on March 23, 2023, to Caldwell County Court at Law Judge Trey Hicks, Justices of the Peace

24-50135.90

Matt Kiely, Shanna Conley, Anita DeLeon, and Yvette Mireles, Judge Hoppy Haden, and Sheriff Mike Lane.

      3.     Attached as Exhibit B is a true and correct copy of an email I sent to the same addressees on April 17, 2023.

      I declare under penalty of perjury that the foregoing is true and correct. Executed on this 26th day of September, 2023.

Scott B Wilkens

_____

Scott Wilkens

2

24-50135.91

# EXHIBIT 1

**Friday, September 15, 2023 at 10:17:46 Eastern Daylight Time**

| | |
|---|---|
| **Subject:** | Public access to magistration in Caldwell County |
| **Date:** | Thursday, March 23, 2023 at 6:27:00 PM Eastern Daylight Time |
| **From:** | Scott Wilkens |
| **To:** | trey.hicks@co.caldwell.tx.us |
| **CC:** | matt.kiely@co.caldwell.tx.us, shanna.conley@co.caldwell.tx.us, anita.deleon@co.caldwell.tx.us, Yvette.mireles@co.caldwell.tx.us, hoppy.haden@co.caldwell.tx.us, mike.lane@co.caldwell.tx.us, Camilla Hsu |

**Attachments:** Letter to Caldwell County Magistrates 03 23 2023.pdf

Dear Judge Hicks,

My colleague Camilla Hsu and I write to you on behalf of the Texas Tribune, Mano Amiga, and the Caldwell-Hays Examiner, which seek to exercise their First Amendment right of access to magistration in Caldwell County. Camilla Hsu is Interim Co-Executive Director of the Texas Fair Defense Project, and I am a Senior Counsel at the Knight First Amendment Institute at Columbia University.

I am attaching a letter, which also includes correspondence with your predecessor, Judge Molina.

As the letter indicates, we would appreciate a response by April 6, 2023.

Sincerely, ,
Scott Wilkens





March 23, 2023

The Hon. Trey Hicks
Judge, Caldwell County Court at Law
1703 S. Colorado St., Box 11
Lockhart, TX 78644
Tel. (512) 398-6527
Email: trey.hicks@co.caldwell.tx.us

Dear Judge Hicks,

The Texas Fair Defense Project ("TFDP") and the Knight First Amendment Institute at Columbia University ("Knight Institute") write on behalf of the Texas Tribune, Mano Amiga, and the Caldwell-Hays Examiner, who have a First Amendment right of access to an arrestee's initial appearance before a Magistrate—commonly referred to as "magistration"—and who seek to exercise that right. As you know, at this initial appearance, Magistrates carry out many duties fundamental to the rights of arrestees, such as informing them of the charges against them and their legal rights, determining probable cause, and setting bail. In essence, Magistrates decide whether arrestees—all of whom are presumed innocent—will remain behind bars pending trial.

Public access to judicial proceedings is a cornerstone of American democracy and is protected by the First Amendment. The constitutional right of access applies to criminal trials as well as to most pre-trial proceedings, including hearings setting or modifying bail. *See, e.g.*, *Press-Enterprise Co. v. Superior Court of California*, 478 U.S. 11-13 (1986); *United States v. Chagra*, 701 F.2d 354, 364-65 (5th Cir. 1983). Among other important benefits, openness helps to ensure that the public has a full understanding of the criminal justice system and can therefore serve as an effective check on that system. Public access to bail decisions is critically important not only because those decisions determine whether the presumptively innocent will be detained pending trial, but also because pre-trial detention exerts enormous pressure on the accused to plead guilty rather than proceed to trial. Indeed, bail hearings are often the arrestee's only appearance before a judicial officer prior to entering a plea.

In prior correspondence with TFDP and Mano Amiga, attached to this letter as Exhibit A, your predecessor Judge Molina stated that all magistration in Caldwell County is closed to the public as a matter of policy. We request that Caldwell County Magistrates rescind this policy and open all magistration to the public, as is required by the United States Constitution. By necessity, this will include providing the public with notice of the names of the arrestees to be magistrated as well as the dates, times and locations of their magistration. We further request that prior to closing any particular arrestee's magistration, the public be provided with notice and an opportunity to be heard.

We appreciate your attention to this important matter and request a response by April 6, 2023.

Sincerely,

Scott Wilkens
Knight First Amendment Institute at
 Columbia University
475 Riverside Drive, Suite 302
New York, NY 10115
(646) 745-8500
Scott.Wilkens@knightcolumbia.org

Camilla Hsu
Texas Fair Defense Project
314 E. Highland Mall Blvd., #204
Austin, TX 78722
(512) 637-5220 x111
chsu@fairdefense.org

cc:     Matt Kiely, Justice of the Peace Precinct 1
        Shanna Conley, Justice of the Peace Precinct 2
        Anita DeLeon, Justice of the Peace Precinct 3
        Yvette Mireles, Justice of the Peace Precinct 4
        Hoppy Haden, County Judge
        Mike Lane, County Sheriff

EXHIBIT A



**Maya Chaudhuri <mchaudhuri@fairdefense.org>**

## RE: Public Access to Magistration

1 message

**Barbara Molina** <barbara.molina@co.caldwell.tx.us>                Tue, Jun 21, 2022 at 3:25 PM
To: Maya Chaudhuri <mchaudhuri@fairdefense.org>, Fred Weber <fred.weber@co.caldwell.tx.us>
Cc: Eric Martinez <eric@manoamigasm.org>, Sam Benavides <Sam@manoamigasm.org>, Matt Kiely
<matt.kiely@co.caldwell.tx.us>, Shanna Conley <shanna.conley@co.caldwell.tx.us>, Anita De Leon
<anita.deleon@co.caldwell.tx.us>, Raymond DeLeon <raymond.deleon@co.caldwell.tx.us>, Hoppy Haden
<hoppy.haden@co.caldwell.tx.us>, "jon.pettit@co.caldwell.tx.us" <jon.pettit@co.caldwell.tx.us>,
"james.short@caldwell.co.tx.us" <james.short@caldwell.co.tx.us>

Ms. Chadhuri,

Mr. Weber is correct in that the prosecutor has no authority to set procedure or to schedule the magistration of a person arrested.

The  Magistrates of Caldwell County, Texas consist of all the Justices of the Peace, and the County Court-at-Law Judge.  No prosecutor or other individual is present during Magistration, except for the person arrested.

Magistration is not open to the public.  Magistration is conducted every day, even on holidays.  The Magistrate Judges set their schedule to rotate the magistration duties each week to be conducted at the county jail.

At Magistration, the Magistrate Judge will not ask for or receive a plea on the charged offense(s). Such pleas may only be received in the Court when and where the defendant's case is filed by the prosecutor. The District Court or County Court-at-Law are the Courts where a defendant will enter a plea to the crime with which they are charged.

A Motion to reduce bond, as in the *U.S. v. Chagra* case cited in your letter,  will be heard in the appropriate court, which is open to the public in compliance with the Open Courts and Public Trial Requirements of the United States and Texas Constitution.

The Magistrate Judges have the following General Functions and Duties and as more particularly set out in the section on Magistrates Responsibilities in the Indigent Defense Commission Plans on file for Caldwell County.

The Magistrates:

> 1. Determine probable cause. (If no probable cause exists, the individual arrested is released from custody).
>
> 2. Inform Defendant of charges.
>
> 3. Set amount of bail according to law and consider criminal history and the Public Safety Report System.

4. Advise Defendant of legal rights.

5. Provide indigency affidavit application (the determination of appointed Counsel will be made by the County Court-at-Law Judge for misdemeanor cases and by the District Judge for felony cases).

6. Issue appropriate bond condition orders.

7. Consider if personal bond is appropriate.

8. Adjust, modify, revoke and enforce bonds and bond conditions.

9. Enter data in the Public Safety Report System.

The Damon Allen Act of 2021 mandates that Magistrate Judges use the statewide Public Safety Report System as developed by the Texas Office of Court Administration, which enables a review of the defendant's criminal history as part of the safety risk assessment in setting bail. The PSRS system also generates summary reports of the magistration setting bail and includes bond conditions and warnings to be provided to the defendant magistrated. (See C.C.P. Art. 17.021 CODE OF CRIMINAL PROCEDURE CHAPTER 17. BAIL (texas.gov)).

The Magistrates of Caldwell County are maintaining the policy banning the public from observing magistration.

Sincerely,

**Barbara L Molina**

**Judge, Caldwell County Court At Law**

**1703 S. Colorado St., Box 11**

**Lockhart, Texas 78644**

**(512) 398-6527**



*This email message, including all attachments, is for the sole use of the intended recipient(s) and may contain confidential information. Unauthorized use or disclosure of confidential information is prohibited under Federal Law. If you are not the intended recipient, you may not use, disclose, copy or disseminate this information. Please contact the sender and delete all copies of the message, including attachments.*

**From:** Maya Chaudhuri <mchaudhuri@fairdefense.org>
**Sent:** Thursday, June 16, 2022 3:35 PM
**To:** Fred Weber <fred.weber@co.caldwell.tx.us>
**Cc:** Eric Martinez <eric@manoamigasm.org>; Sam Benavides <Sam@manoamigasm.org>; Barbara Molina <barbara.molina@co.caldwell.tx.us>
**Subject:** Re: Public Access to Magistration

Mr. Weber,

Thank you for following up with us. Judge Molina received a copy of the letter as well. We look forward to her response.

Sincerely,

**Maya Chaudhuri**
*she/her/hers*
Equal Justice Works Fellow
Sponsored by Pillsbury Winthrop Shaw Pittman LLP
Texas Fair Defense Project



314 E. Highland Mall Blvd #204
Austin, TX 78752
Main Number: 512-637-5220
Direct: 737-284-1011
Fax: 512-637-5224
fairdefense.org

Follow us on Instagram @fairdefense

Like our page on Facebook

On Wed, Jun 15, 2022 at 11:33 AM Fred Weber <fred.weber@co.caldwell.tx.us> wrote:

 Ms. Chaudhuri,

  I spoke with Judge Molina about your concerns.  She is the senior judge performing magistration and we are both in agreement that magistration is a judicial function that does not involve my office.  I have no authority to set magistration schedules or procedures.  I would request that you address this matter directly with Judge Molina.

 Sincerely,

 **Fred Weber**

 **Criminal District Attorney**

 **Caldwell County, Texas**

 **(512) 398-1811**

31-59135.90

**From:** Maya Chaudhuri <mchaudhuri@fairdefense.org>
**Sent:** Monday, June 13, 2022 12:15 PM
**To:** Fred Weber <fred.weber@co.caldwell.tx.us>
**Cc:** Eric Martinez <eric@manoamigasm.org>; Sam Benavides <Sam@manoamigasm.org>; Matt Kiely
<matt.kiely@co.caldwell.tx.us>; Shanna Conley <shanna.conley@co.caldwell.tx.us>; Anita De Leon
<anita.deleon@co.caldwell.tx.us>; Raymond DeLeon <raymond.deleon@co.caldwell.tx.us>; Barbara Molina
<barbara.molina@co.caldwell.tx.us>; Hoppy Haden <hoppy.haden@co.caldwell.tx.us>; jon.pettit@co.caldwell.tx.us;
james.short@caldwell.co.tx.us
**Subject:** Public Access to Magistration

Dear Mr. Weber,

Please find attached a letter from Texas Fair Defense Project and Mano Amiga regarding public access to magistration
in Caldwell County. We appreciate your attention to this matter.

Sincerely,

**Maya Chaudhuri**
*she/her/hers*
Equal Justice Works Fellow
Sponsored by Pillsbury Winthrop Shaw Pittman LLP
Texas Fair Defense Project



314 E. Highland Mall Blvd #204
Austin, TX 78752
Main Number: 512-637-5220
Direct: 737-284-1011
Fax: 512-637-5224
fairdefense.org

Follow us on Instagram @fairdefense

Like our page on Facebook

 

June 13, 2022

Fred Weber
Caldwell County Attorney
1703 S. Colorado Street
Lockhart, Texas 78644

Dear Mr. Weber:

We are writing on behalf of members of the public requesting that you protect their constitutional right to attend magistration in Caldwell County. Public access to criminal court proceedings is protected by the First and Sixth Amendments of the U.S. Constitution, as well as Article I of the Texas Constitution. Further, it strengthens communities and has the potential to reduce individuals' interactions with the criminal legal system. Stakeholders at all levels have a vested interest in ensuring there is public access to magistration in Caldwell County.

Public access to the courts is a fundamental part of democracy and integral to the public's faith in our criminal legal system.[1] Any courtroom closure can have a chilling effect, leaving communities with the impression that they should not even attempt to enter this historically public space. Moreover, the U.S. Supreme Court has long recognized that the public's presence in the courtroom can "enhance the integrity and quality" of courtroom proceedings.[2] Public access allows for family members and loved ones to stay connected to people charged with crimes, which in turn improves their case outcomes.[3] Loved ones' presence can bolster those connections and provide emotional support simply by attending and observing criminal proceedings. Thus, public access to courts has the power both to increase the community's faith in the criminal legal system and reduce recidivism among the general population, easing the financial burden on the government and justice-impacted community members alike.

The U.S. Supreme Court has explained that public access to courts stems from the First Amendment, including the right to free speech, the right to listen, the right of assembly, the right

---

[1] *Richmond Newspapers, Inc., v. Virginia*, 448 U.S. 555 (1980) (plurality).

[2] *Id.*

[3] Thomas J. Mowen & Christy A. Visher, *Changing the Ties that Bind*, 15 Criminology & Public Policy 503 (2016) (using data from formerly incarcerated Texans to explore family relationships and recidivism). The U.S. Supreme Court has specifically recognized the importance of the presence of defendants' family members and friends. *In re Oliver*, 333 U.S. 257, 271–72 (1948).

to observe, and the right to learn.[4] For these reasons, criminal courtrooms are presumptively open.[5] The presumption of openness extends beyond trials to pretrial proceedings, including bail hearings.[6] When courts do seek to close proceedings to the public they must do so on a case-by-case basis, not in blanket fashion.[7] Any barrier to access, ranging from the total exclusion of the public from entire proceedings to the exclusion of a single person from a portion of a proceeding, constitutes a closure.[8] Before closing any individual proceeding, the court must provide the public with notice and an opportunity to be heard regarding the closure.[9] Courts must then conduct the *Waller* test before closing a proceeding to the public, which includes considering all reasonable alternatives to closure.[10] Only a "small universe of cases [] will satisfy" the constitutional requirements for full closure.[11]

Magistrates set bail amounts at magistration; the proceedings are therefore presumptively open to the public. The Caldwell County Justices of the Peace currently maintain a policy banning the public from observing magistration. General bans on public access to criminal court proceedings, such as the one in place in Caldwell County for access to magistration, are per se unconstitutional and violate the public's First Amendment rights.[12] The current policy further violates the rights of members of the public by failing to provide advance notice of the closures or an opportunity to be heard.

We ask that you immediately take steps to protect the constitutional rights of Caldwell County community members by:

- Providing advance notice of magistration, including the date and time of the proceeding, on a public website;
- Ensuring magistration is presumptively open to the public such that they might attend in-person without making a request in advance;
- Making a remote stream of court proceedings available for people who cannot observe court in-person;
- Providing the constitutionally-required advance notice when contemplating closure; and
- Conducting the constitutionally-mandated procedure before any closure.

---

[4] *Richmond Newspapers, Inc.*, 448 U.S. at 579.

[5] *Id.* at 587.

[6] *U.S. v. Chagra*, 701 F.2d 354, 363 (5th Cir. 1983); *U.S. v. Edwards*, 823 F.2d 111, 113 (5th Cir. 1987).

[7] *Waller v. Georgia*, 467 U.S. 39, 48 (1984).

[8] *See Presley v. Georgia*, 558 U.S. 209, 210 (2010) (finding the exclusion of a single member of the public from voir dire was a closure).

[9] *In re Hearst Newspapers, L.L.C.*, 641 F.3d 168, 180 (5th Cir. 2011); *see also Globe Newspaper Co. v. Superior Court for Norfolk County*, 457 U.S. 596, 607–08 (1982).

[10] *Presley v. Georgia*, 558 U.S. 209, 214 (2010).

[11] *United States v. Abuhamra*, 389 F.3d 309, 330 (2d Cir. 2004).

[12] *Waller*, 467 U.S. at 48 (requiring case-by-case findings); *see also New York Civil Liberties Union v. New York City Transit Authority*, 684 F.3d 286 (2nd Cir. 2012) (finding a general ban on access unconstitutional).

We appreciate your prompt attention to this matter and are requesting a response by June 29, 2022. Please do not hesitate to contact us if you would like to discuss this or if we can provide additional information.

Sincerely,

Mano Amiga
Texas Fair Defense Project


cc:    Matt Kiely, Justice of the Peace Precinct 1
       Shanna Conley, Justice of the Peace Precinct 2
       Anita DeLeon, Justice of the Peace Precinct 3
       Raymond DeLeon, Justice of the Peace Precinct 4
       Barbara Molina, County Court at Law Judge
       Hoppy Haden, County Judge
       Jon Petit, County Jailer
       James Short, Jail Captain

# EXHIBIT 2

24-50135.104

**Subject:** Re: Public access to magistration in Caldwell County
**Date:** Monday, April 17, 2023 at 11:09:59 AM Eastern Daylight Time
**From:** Scott Wilkens
**To:** trey.hicks@co.caldwell.tx.us
**CC:** matt.kiely@co.caldwell.tx.us, shanna.conley@co.caldwell.tx.us, anita.deleon@co.caldwell.tx.us, Yvette.mireles@co.caldwell.tx.us, hoppy.haden@co.caldwell.tx.us, mike.lane@co.caldwell.tx.us, Camilla Hsu

Dear Judge Hicks,
☐
I am following up on my March 23 email and attached letter (see below). We did not receive a response by April 6, as we had requested, or in the week and a half since. This lack of response is particularly concerning because the many magistrations that have been conducted over the last several weeks have been closed to the public in violation of numerous constitutional requirements. Accordingly, we will interpret your failure to respond as a denial of the request for access made by the Texas Tribune, Mano Amiga, and the Caldwell-Hays Examiner and a refusal to rescind the administrative policy banning the public from observing magistration in Caldwell County.
☐
Sincerely,
Scott Wilkens
☐
☐

**From:** Scott Wilkens <scott.wilkens@knightcolumbia.org>
**Date:** Thursday, March 23, 2023 at 6:27 PM
**To:** trey.hicks@co.caldwell.tx.us <trey.hicks@co.caldwell.tx.us>
**Cc:** matt.kiely@co.caldwell.tx.us <matt.kiely@co.caldwell.tx.us>, shanna.conley@co.caldwell.tx.us <shanna.conley@co.caldwell.tx.us>, anita.deleon@co.caldwell.tx.us <anita.deleon@co.caldwell.tx.us>, Yvette.mireles@co.caldwell.tx.us <Yvette.mireles@co.caldwell.tx.us>, hoppy.haden@co.caldwell.tx.us <hoppy.haden@co.caldwell.tx.us>, mike.lane@co.caldwell.tx.us <mike.lane@co.caldwell.tx.us>, Camilla Hsu <chsu@fairdefense.org>
**Subject:** Public access to magistration in Caldwell County

Dear Judge Hicks,
☐
My colleague Camilla Hsu and I write to you on behalf of the Texas Tribune, Mano Amiga, and the Caldwell-Hays Examiner, which seek to exercise their First Amendment right of access to magistration in Caldwell County. Camilla Hsu is Interim Co-Executive Director of the Texas Fair Defense Project, and I am a Senior Counsel at the Knight First Amendment Institute at Columbia University.
☐
I am attaching a letter, which also includes correspondence with your predecessor, Judge Molina.

As the letter indicates, we would appreciate a response by April 6, 2023.

Sincerely, ,
Scott Wilkens

TAB 8

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

TEXAS TRIBUNE, MANO AMIGA,
CALDWELL/HAYS EXAMINER,

      Plaintiffs,

    v.

CALDWELL COUNTY, TEXAS,

TREY HICKS, in his official capacity as
Caldwell County Court at Law Judge and
Caldwell County Magistrate,

MATT KIELY, SHANNA CONLEY, ANITA
DELEON, and YVETTE MIRELES, in their
official capacities as Caldwell County Justices
of the Peace and Caldwell County
Magistrates, and

MIKE LANE, in his official capacity as the
Sheriff of Caldwell County,

      Defendants.

Civil Action No. 1:23-cv-910-RP

## DECLARATION OF TEXAS FAIR DEFENSE PROJECT IN SUPPORT OF PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

I, Camilla Hsu, declare as follows:

1. I am the Managing Attorney of Litigation at the Texas Fair Defense Project (TFDP). I submit this declaration in support of Plaintiffs' motion for a preliminary injunction. I am over 21 years old and am competent to make the statements herein. Except as otherwise stated, I have personal knowledge of the matters set forth herein and can and will testify thereto if called upon to do so.

2. I am counsel for two of the plaintiffs in this action—Mano Amiga and the Caldwell/Hays Examiner—but this declaration concerns actions that TFDP took on its own behalf and jointly with Mano Amiga before representation began. Between October 2021 and June 2022, TFDP contacted Caldwell County magistrates on multiple occasions requesting access to magistration, to no avail. The individual magistrates TFDP contacted either

1

expressly refused access—stating that all of the County's magistrates prohibit the public from observing magistration—or failed to respond to TFDP's requests.

3. I attach as Exhibit 1 a true and correct copy of the Declaration of Maya Chaudhuri, who served as a legal fellow and attorney at TFDP from October 2021 to September 2022. During her tenure at TFDP, Ms. Chaudhuri was responsible for communicating with Caldwell County magistrates and other County officials about obtaining access to magistration proceedings. She reported those communications to me. Ms. Chaudhuri's declaration describes her communications with County officials.

4. I attach as Exhibit 2 a true and correct copy of the letter to Caldwell County officials that Ms. Chaudhuri describes in Paragraph 7 of her declaration.

5. I attach as Exhibit 3 a true and correct copy of the email that Ms. Chaudhuri received in reply from then-County Court at Law Judge Barbara Molina, which is described in Paragraph 7 of Ms. Chaudhuri's declaration.

I declare under penalty of perjury that the foregoing is true and correct. Executed on September 26 , 2023.

_____
Camilla Hsu

2

EXHIBIT 1

### Declaration of Maya Chaudhuri

I, Maya Chaudhuri, declare as follows:

1. I am over 21 years old and a resident of Texas.

2. I am a legal fellow and attorney at Texas Fair Defense Project in Austin, Texas. Between October 2021 and June 2022, I made multiple attempts to learn how to access magistration in Caldwell County, Texas. At no point did any of the magistrates allow me to access magistration remotely or in person.

3. I first reached out to Justice Raymond DeLeon on October 8, 2021, to learn more about magistration in Caldwell County. Justice Raymond DeLeon called me on November 23, 2021. During that call, I asked to observe magistration in Caldwell County and Justice Raymond DeLeon told me that neither he nor the other magistrates allowed people to come in to observe magistration. Justice Raymond DeLeon told me that he had previously consulted with the district attorney about not allowing members of the public to observe magistration and understood disallowing them to be legal from that conversation.

4. On April 6, 2022, I called the offices of Justice Matt Kiely and left a message with a staff member asking how I could observe magistration. I did not receive a call back. On April 20, 2022, I called again with the same request and did not receive a call back.

5. On April 6, 2022, I called Justice Shanna Conley and asked how to observe magistration when she is presiding. Justice Conley took my information and said she would get back to me. I did not receive a call back. On April 20, 2022, I called again and reached a staff member, Laura. I made the same request and Laura told me, "We will not be doing that." When I asked for a reason, I was told, "There's not really a reason, she doesn't allow that either," explaining that her practices conformed with the practice of the other justices who do not allow public access to magistration.

6. On April 6, 2022, I called the offices of Justice Anita DeLeon and left a message with a staff member asking how I could observe magistration. I did not receive a call back. I called again on April 20, 2022, with the same request and did not receive a call back.

7. On June 13, 2022, I sent a letter to a number of Caldwell County government officials on behalf of Texas Fair Defense Project and Mano Amiga requesting access to magistration. On June 21, 2022, I received a response from Judge Barbara Molina denying our request and laying out the Caldwell County magistrates' policy on public access to magistration.

I declare under penalty of perjury that the foregoing is true and correct. Executed on September 14, 2022.

Maya Chaudhuri
Maya Chaudhuri

EXHIBIT 2





June 13, 2022

Fred Weber
Caldwell County Attorney
1703 S. Colorado Street
Lockhart, Texas 78644

Dear Mr. Weber:

We are writing on behalf of members of the public requesting that you protect their constitutional right to attend magistration in Caldwell County. Public access to criminal court proceedings is protected by the First and Sixth Amendments of the U.S. Constitution, as well as Article I of the Texas Constitution. Further, it strengthens communities and has the potential to reduce individuals' interactions with the criminal legal system. Stakeholders at all levels have a vested interest in ensuring there is public access to magistration in Caldwell County.

Public access to the courts is a fundamental part of democracy and integral to the public's faith in our criminal legal system.[1] Any courtroom closure can have a chilling effect, leaving communities with the impression that they should not even attempt to enter this historically public space. Moreover, the U.S. Supreme Court has long recognized that the public's presence in the courtroom can "enhance the integrity and quality" of courtroom proceedings.[2] Public access allows for family members and loved ones to stay connected to people charged with crimes, which in turn improves their case outcomes.[3] Loved ones' presence can bolster those connections and provide emotional support simply by attending and observing criminal proceedings. Thus, public access to courts has the power both to increase the community's faith in the criminal legal system and reduce recidivism among the general population, easing the financial burden on the government and justice-impacted community members alike.

The U.S. Supreme Court has explained that public access to courts stems from the First Amendment, including the right to free speech, the right to listen, the right of assembly, the right

---

[1] *Richmond Newspapers, Inc., v. Virginia*, 448 U.S. 555 (1980) (plurality).

[2] *Id.*

[3] Thomas J. Mowen & Christy A. Visher, *Changing the Ties that Bind*, 15 Criminology & Public Policy 503 (2016) (using data from formerly incarcerated Texans to explore family relationships and recidivism). The U.S. Supreme Court has specifically recognized the importance of the presence of defendants' family members and friends. *In re Oliver*, 333 U.S. 257, 271–72 (1948).

24-50135.113

to observe, and the right to learn.[4] For these reasons, criminal courtrooms are presumptively open.[5] The presumption of openness extends beyond trials to pretrial proceedings, including bail hearings.[6] When courts do seek to close proceedings to the public they must do so on a case-by-case basis, not in blanket fashion.[7] Any barrier to access, ranging from the total exclusion of the public from entire proceedings to the exclusion of a single person from a portion of a proceeding, constitutes a closure.[8] Before closing any individual proceeding, the court must provide the public with notice and an opportunity to be heard regarding the closure.[9] Courts must then conduct the *Waller* test before closing a proceeding to the public, which includes considering all reasonable alternatives to closure.[10] Only a "small universe of cases [] will satisfy" the constitutional requirements for full closure.[11]

Magistrates set bail amounts at magistration; the proceedings are therefore presumptively open to the public. The Caldwell County Justices of the Peace currently maintain a policy banning the public from observing magistration. General bans on public access to criminal court proceedings, such as the one in place in Caldwell County for access to magistration, are per se unconstitutional and violate the public's First Amendment rights.[12] The current policy further violates the rights of members of the public by failing to provide advance notice of the closures or an opportunity to be heard.

We ask that you immediately take steps to protect the constitutional rights of Caldwell County community members by:

- Providing advance notice of magistration, including the date and time of the proceeding, on a public website;
- Ensuring magistration is presumptively open to the public such that they might attend in-person without making a request in advance;
- Making a remote stream of court proceedings available for people who cannot observe court in-person;
- Providing the constitutionally-required advance notice when contemplating closure; and
- Conducting the constitutionally-mandated procedure before any closure.

---

[4] *Richmond Newspapers, Inc.*, 448 U.S. at 579.

[5] *Id.* at 587.

[6] *U.S. v. Chagra*, 701 F.2d 354, 363 (5th Cir. 1983); *U.S. v. Edwards*, 823 F.2d 111, 113 (5th Cir. 1987).

[7] *Waller v. Georgia*, 467 U.S. 39, 48 (1984).

[8] *See Presley v. Georgia*, 558 U.S. 209, 210 (2010) (finding the exclusion of a single member of the public from voir dire was a closure).

[9] *In re Hearst Newspapers, L.L.C.*, 641 F.3d 168, 180 (5th Cir. 2011); *see also Globe Newspaper Co. v. Superior Court for Norfolk County*, 457 U.S. 596, 607–08 (1982).

[10] *Presley v. Georgia*, 558 U.S. 209, 214 (2010).

[11] *United States v. Abuhamra*, 389 F.3d 309, 330 (2d Cir. 2004).

[12] *Waller*, 467 U.S. at 48 (requiring case-by-case findings); *see also New York Civil Liberties Union v. New York City Transit Authority*, 684 F.3d 286 (2nd Cir. 2012) (finding a general ban on access unconstitutional).

We appreciate your prompt attention to this matter and are requesting a response by June 29, 2022. Please do not hesitate to contact us if you would like to discuss this or if we can provide additional information.

Sincerely,

Mano Amiga
Texas Fair Defense Project

cc:     Matt Kiely, Justice of the Peace Precinct 1
        Shanna Conley, Justice of the Peace Precinct 2
        Anita DeLeon, Justice of the Peace Precinct 3
        Raymond DeLeon, Justice of the Peace Precinct 4
        Barbara Molina, County Court at Law Judge
        Hoppy Haden, County Judge
        Jon Petit, County Jailer
        James Short, Jail Captain

EXHIBIT 3



**Maya Chaudhuri <mchaudhuri@fairdefense.org>**

## Public Access to Magistration

**Barbara Molina** <barbara.molina@co.caldwell.tx.us>                   Tue, Jun 21, 2022 at 3:25 PM
To: Maya Chaudhuri <mchaudhuri@fairdefense.org>, Fred Weber <fred.weber@co.caldwell.tx.us>
Cc: Eric Martinez <eric@manoamigasm.org>, Sam Benavides <Sam@manoamigasm.org>, Matt Kiely
<matt.kiely@co.caldwell.tx.us>, Shanna Conley <shanna.conley@co.caldwell.tx.us>, Anita De Leon
<anita.deleon@co.caldwell.tx.us>, Raymond DeLeon <raymond.deleon@co.caldwell.tx.us>, Hoppy Haden
<hoppy.haden@co.caldwell.tx.us>, "jon.pettit@co.caldwell.tx.us" <jon.pettit@co.caldwell.tx.us>,
"james.short@caldwell.co.tx.us" <james.short@caldwell.co.tx.us>

Ms. Chadhuri,

Mr. Weber is correct in that the prosecutor has no authority to set procedure or to schedule the magistration of a person arrested.

The Magistrates of Caldwell County, Texas consist of all the Justices of the Peace, and the County Court-at-Law Judge. No prosecutor or other individual is present during Magistration, except for the person arrested.

Magistration is not open to the public. Magistration is conducted every day, even on holidays. The Magistrate Judges set their schedule to rotate the magistration duties each week to be conducted at the county jail.

At Magistration, the Magistrate Judge will not ask for or receive a plea on the charged offense(s). Such pleas may only be received in the Court when and where the defendant's case is filed by the prosecutor. The District Court or County Court-at-Law are the Courts where a defendant will enter a plea to the crime with which they are charged.

A Motion to reduce bond, as in the *U.S. v. Chagra* case cited in your letter, will be heard in the appropriate court, which is open to the public in compliance with the Open Courts and Public Trial Requirements of the United States and Texas Constitution.

The Magistrate Judges have the following General Functions and Duties and as more particularly set out in the section on Magistrates Responsibilities in the Indigent Defense Commission Plans on file for Caldwell County.

The Magistrates:

> 1. Determine probable cause. (If no probable cause exists, the individual arrested is released from custody).
>
> 2. Inform Defendant of charges.
>
> 3. Set amount of bail according to law and consider criminal history and the Public Safety Report System.

4. Advise Defendant of legal rights.

5. Provide indigency affidavit application (the determination of appointed Counsel will be made by the County Court-at-Law Judge for misdemeanor cases and by the District Judge for felony cases).

6. Issue appropriate bond condition orders.

7. Consider if personal bond is appropriate.

8. Adjust, modify, revoke and enforce bonds and bond conditions.

9. Enter data in the Public Safety Report System.

The Damon Allen Act of 2021 mandates that Magistrate Judges use the statewide Public Safety Report System as developed by the Texas Office of Court Administration, which enables a review of the defendant's criminal history as part of the safety risk assessment in setting bail. The PSRS system also generates summary reports of the magistration setting bail and includes bond conditions and warnings to be provided to the defendant magistrated. (See C.C.P. Art. 17.021 CODE OF CRIMINAL PROCEDURE CHAPTER 17. BAIL (texas.gov)).

The Magistrates of Caldwell County are maintaining the policy banning the public from observing magistration.

Sincerely,


**Barbara L Molina**

**Judge, Caldwell County Court At Law**

**1703 S. Colorado St., Box 11**

**Lockhart, Texas 78644**

**(512) 398-6527**



*This email message, including all attachments, is for the sole use of the intended recipient(s) and may contain confidential information. Unauthorized use or disclosure of confidential information is prohibited under Federal Law. If you are not the intended recipient, you may not use, disclose, copy or disseminate this information. Please contact the sender and delete all copies of the message, including attachments.*

[Quoted text hidden]

24-50135.118