# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

November 15, 2024

Lyle W. Cayce
Clerk

No. 24-50135

---

Texas Tribune; Mano Amiga; Caldwell/Hays Examiner,

*Plaintiffs—Appellees*,

*versus*

Caldwell County, Texas; Trey Hicks, in his official capacity as Caldwell County Court at Law Judge and Caldwell County Magistrate; Matt Kiely, in his official capacity as Caldwell County Justice of the Peace and Caldwell County Magistrate; Shanna Conley, in her official capacity as Caldwell County Justice of the Peace and Caldwell County Magistrate; Anita DeLeon, in her official capacity as Caldwell County Justice of the Peace and Caldwell County Magistrate; Yvette Mireles, in her official capacity as Caldwell County Justice of the Peace and Caldwell County Magistrate; Mike Lane, in his official capacity as the Sheriff of Caldwell County,

*Defendants—Appellants*.

---

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:23-CV-910

---

Before Wilson and Douglas, *Circuit Judges*, and Vitter, *District Judge*.*

Wendy B. Vitter, *District Judge*:

This case concerns a First Amendment right of access challenge to a policy in Caldwell County, Texas, of categorically excluding the press and the public from observing criminal pretrial proceedings commonly referred to as magistrations. Faced with a motion to enjoin this policy, the district court held the policy violates the First Amendment and granted the motion for preliminary injunction. On appeal, the County raises two issues. First, whether the Organizations challenging this policy have standing to do so, and second, whether the Organizations have shown a substantial likelihood that the County's policy of exclusion runs afoul of the First Amendment's right of access. Since we find the district court did not err in either of these determinations, we **AFFIRM** the district court's ruling.

## I.    Background

Article 15.17(a) of the Texas Code of Criminal Procedure provides that upon an individual's arrest, "the person making the arrest or the person having custody of the person arrested shall without unnecessary delay, but not later than 48 hours after the person is arrested, take the person arrested or have him taken before some magistrate of the county where the accused was arrested . . . ." At these magistrations, the state magistrate judge is tasked with informing the accused of the charges against him, as well as rights

---

* United States District Judge for the Eastern District of Louisiana, sitting by designation.

No. 24-50135

to which he is entitled.[1]  The magistrate judge is also instructed to "admit the person arrested to bail if allowed by law."[2]

In Caldwell County, magistrations are closed to the press and the public pursuant to a policy established and enforced by the County's magistrate judges, justices of the peace, and sheriff (the "County").  This policy led two nonprofit news organizations, The Texas Tribune and Caldwell/Hays Examiner, and an advocacy organization, Mano Amiga (the "Organizations"), to file a complaint for declaratory and injunctive relief, alleging that the policy is unconstitutional.  Shortly after filing suit, the Organizations filed a motion for preliminary injunction, arguing that the policy violates the Fourteenth Amendment, as well as the First Amendment's right of access to judicial proceedings.  The district court ultimately granted the motion and enjoined the County from enforcing its policy of categorical exclusion from magistrations.

In reaching its decision, the district court found the Organizations had shown a substantial likelihood of establishing that the County's policy violates the First Amendment,[3] the policy caused the Organizations irreparable harm, and the balance of the equities and the public interest weighed in favor of injunctive relief.  Citing its finding of a viable First Amendment claim, the district court rejected the County's position that the Organizations lack standing to challenge the policy.  Based on these findings, the district court preliminarily enjoined the County "from (a) enforcing [its] policy of closing all magistration proceedings under Article 15.17 to the press

_____

[1] Tex. Code of Crim. P. 15.17(a).

[2] Id.

[3] The district court made no finding as to the Organizations' Fourteenth Amendment claim.

and public and (b) from closing any magistration proceeding, except in extraordinary circumstances and as constitutionally permitted, under Article 15.17 without first providing reasonable notice and an opportunity to be heard, as practicable."

The County appealed, arguing that the district court erred in finding that the Organizations have Article III standing and that they succeeded in showing a substantial likelihood of success on the merits of their First Amendment claim.[4] The County did not move to stay the injunction pending appeal, and the injunction therefore remains in effect.

## II. Standard of Review

We review a district court's ruling on a Rule 12(b)(1) motion to dismiss *de novo*.[5] We review questions relating to standing under the same standard.[6] "The parties seeking access to federal court bear the burden of establishing their standing."[7]

On the other hand, "[w]e review preliminary injunctions for abuse of discretion."[8] "But such 'a decision grounded in erroneous legal principles is reviewed *de novo*.'"[9] "Preliminary injunctions are 'extraordinary

---

[4] The County also attacks the Organizations' likelihood of success in showing that the policy violates the Fourteenth Amendment. The court does not reach this issue for the same reasons the district court did not reach it.

[5] *Machete Prods., LLC v. Page*, 809 F.3d 281, 287 (5th Cir. 2015) (citing *Bryant v. Mil. Dep't of Miss.*, 597 F.3d 678, 684 (5th Cir. 2010)).

[6] *Nat'l Rifle Ass'n of Am., Inc. v. McCraw*, 719 F.3d 338, 343 (5th Cir. 2013) (citing *NAACP v. City of Kyle, Tex.*, 626 F.3d 233, 236 (5th Cir. 2010)).

[7] *Id.* (citing *Time Warner Cable, Inc. v. Hudson*, 667 F.3d 630, 635 (5th Cir. 2012)).

[8] *Free Speech Coal., Inc. v. Paxton*, 95 F.4th 263, 268 (5th Cir. 2024) (citing *Ashcroft v. Am. Civ. Liberties Union*, 542 U.S. 656, 664, 124 S. Ct. 2783 (2004)).

[9] *Id.* at 268–69 (quoting *Mock v. Garland*, 75 F.4th 563, 577 (5th Cir. 2023)).

No. 24-50135

remedies'" only to be granted when the moving party establishes the following four factors:

> (1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is not issued, (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction will not disserve the public interest.[10]

When a preliminary injunction is sought against the Government, the interests of the Government and the public merge.[11]

## III. DISCUSSION

The County's appeal raises two issues to this court: (1) whether the district court erred in finding the Organizations have standing to bring their First Amendment claim, and (2) whether the district court abused its discretion in finding the Organizations showed a substantial likelihood of success on their First Amendment claim. Finding the district court was correct in its rulings as to both of these issues, we affirm.

### A. Article III Standing

Federal courts' jurisdiction is limited to "cases" and "controversies."[12] "The doctrine of standing gives meaning to these constitutional limits by 'identifying those disputes which are appropriately resolved through the judicial process.'"[13] "To establish Article III standing,

---

[10] *Id.* (quoting *Mock*, 75 F.4th at 577) (cleaned up).

[11] *Nken v. Holder*, 556 U.S. 418, 435, 129 S. Ct. 1749 (2009).

[12] U.S. CONST. art. III, § 2.

[13] *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157, 134 S. Ct. 2334 (2014) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130 (1992)) (footnote and brackets omitted).

No. 24-50135

a plaintiff must show (1) an 'injury in fact,' (2) a sufficient 'causal connection between the injury and the conduct complained of,' and (3) a 'likelihood' that the injury 'will be redressed by a favorable decision.'"[14]

The initial standing requirement, injury in fact, helps ensure that the plaintiff has "a personal stake in the outcome of the controversy."[15] A plaintiff establishes injury in fact by showing "an 'invasion of a legally protected interest' that is both 'concrete and particularized' and also 'actual or imminent, not conjectural or hypothetical.'"[16] A particularized injury is one that affects the plaintiff in a personal and individual way.[17] "Particularization is necessary to establish injury in fact, but it is not sufficient. An injury in fact must also be 'concrete.'"[18] "A 'concrete' injury must be 'de facto'; that is, it must actually exist."[19] Finally, "the injury must be actual or imminent, not speculative—meaning that the injury must have already occurred or be likely to occur soon."[20]

Although the County's position on standing is not particularly clear, it appears to argue the Organizations have not suffered an injury in fact because the text of Article 15.17 does not require open magistrations. But the

---

[14] *Id.* (quoting *Lujan*, at 560–61, 112 S. Ct. 2130) (brackets omitted).

[15] *Warth v. Seldin*, 422 U.S. 490, 498, 95 S. Ct. 2197 (1975) (quoting *Baker v. Carr*, 369 U.S. 186, 204, 82 S. Ct. 691 (1962)) (internal quotations omitted).

[16] *Shrimpers & Fishermen of RGV v. Tex. Comm'n on Env't Quality*, 968 F.3d 419, 424 (5th Cir. 2020) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339, 136 S. Ct. 1540 (2016)).

[17] *Spokeo*, 578 U.S. at 339, 136 S. Ct. 1540 (citations omitted).

[18] *Id.*

[19] *Id.* at 340, 136 S. Ct. 1540 (citing *Black's Law Dictionary* 479 (9th ed. 2009)).

[20] *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 381, 144 S. Ct. 1540 (2024) (citing *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 420–22, 133 S. Ct. 1138 (2013)).

No. 24-50135

County confuses a merits-based analysis, which considers the sufficiency of a litigant's claim, with a standing analysis, which considers "whether the litigant is entitled to have the court decide the merits of the dispute."[21] Applying the familiar standing elements, it is clear the Organizations have established standing to bring their claims.

The court turns first to whether the Organizations have suffered an injury in fact. The Organizations are made up of two news outlets and an advocacy organization, each of which relies on access to magistrations to carry out their missions. The Texas Tribune "regularly reports on a broad range of criminal justice issues, including the role that bail and pretrial detention play in the criminal legal system." Caldwell/Hays Examiner likewise reports on issues relevant to "the Caldwell County criminal legal system, including racial disparities in the bail amounts set by the Magistrates, whether the Magistrates are inquiring into arrestees' ability to pay bail, . . . and other issues related to detainees' mental health, and the jail population size and demographics." Mano Amiga, an advocacy organization, relies on access to magistrations in order to "bail[] people out of jail expeditiously, gather[] information to advocate for arrestees and victims of crime, support[] community members from populations that are overrepresented in the criminal legal system, and educat[e] the public on the importance of local courts."

It is clear that each of the Organizations is injured by being denied access to magistrations. Preventing the Organizations from accessing these

---

[21] *Cibolo Waste, Inc. v. City of San Antonio*, 718 F.3d 469, 473 (5th Cir. 2013) (quoting *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 11, 124 S. Ct. 2301 (2004)) (internal quotations omitted); *ASARCO Inc. v. Kadish*, 490 U.S. 605, 624, 109 S. Ct. 2037 (1989) (quoting *Warth*, 422 U.S. at 500, 95 S. Ct. 2197) ("Nonetheless, although federal standing 'often turns on the nature and source of the claim asserted,' it 'in no way depends on the merits of the claim.'") (brackets omitted).

proceedings frustrates the news Organizations' ability to keep the public informed regarding a crucial part of the criminal justice system in Caldwell County. It is at magistrations that an arrestee is advised of the charges against him, informed of certain constitutional rights, and either released on bond or detained. Without access to these proceedings, the news Organizations are unable, for example, to report on bail trends and are effectively barred from carrying out their missions to ensure the fairness and accuracy of the magistrate judges' conduct. Mano Amigo is prevented from court-watching and supporting arrestees by attending the proceedings. Excluding the Organizations from these proceedings therefore creates an injury in fact.[22]

The County does not appear to contest the second and third standing elements, which require causation and redressability.[23] The Organizations have likewise established these elements. As to causation, each of the County defendants plays a role in enforcing the policy enjoined by the district court. There is nothing to suggest that the policy is promulgated by anyone other than the County, nor are the Organizations excluded from the proceeding by anything other than the policy to which they object. Finally, the Organizations would be redressed by a judicial decision in their favor. The elimination of this policy would immediately cure the Organizations' injuries by allowing them to attend the magistrations and access the information needed to carry out their missions and objectives.

---

[22] *La. Fair Hous. Ctr., Inc. v. Azalea Garden Props., LLC*, 82 F.4th 345, 353 (5th Cir. 2023) (quoting *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379, 102 S. Ct. 1114 (1982)) ("Put differently, the 'perceptible impair[ment]' to an organization's ability to carry out its mission, not the 'drain on the organization's resources,' is the 'concrete and demonstrable injury' for organizational standing.").

[23] *Lujan*, 504 U.S. at 560–61, 112 S. Ct. 2130.

## B.  *Substantial Likelihood of Success on the Merits*

Satisfied that the Organizations have Article III standing to bring their claims, we turn to the merits.  The County's sole argument is that the district court erred in finding that the Organizations showed a substantial likelihood of success on the merits of their First Amendment claim.  We find that they have.

In *Richmond Newspapers, Inc. v. Virginia*, the Supreme Court established "that the right to attend criminal trials is implicit in the guarantees of the First Amendment."[24]  Later finding that a "First Amendment question cannot be resolved solely on the label we give the event, *i.e.*, 'trial' or otherwise," the Supreme Court extended this right to certain pretrial proceedings.[25]  Our sister circuits have gone on to find that the First Amendment's right of access extends to additional criminal pretrial proceedings, including suppression hearings, due process and entrapment hearings, and hearings at which a criminal defendant pleads guilty.[26]

In determining whether a particular proceeding falls under the First Amendment's protections, courts are instructed to employ a two-factor test referred to as the "experience and logic test."[27]  The experience prong asks "whether the place and process have historically been open to the press and general public."[28]  Logic, in turn, considers "whether public access plays a

---

[24] 448 U.S. 555, 580, 100 S. Ct. 2814 (1980).

[25] Press-Enter. Co. v. Superior Ct. of Cal. for Riverside Cnty., 478 U.S. 1, 7, 106 S. Ct. 2735 (1986) (Press-Enter. II).

[26] *In re Hearst Newspapers, LLC*, 641 F.3d 168, 175 (5th Cir. 2011) (collecting cases).

[27] *Press-Enter. II*, 478 U.S. at 8, 106 S. Ct. 2735 (quoting *Globe Newspaper Co. v. Superior Ct. for Norfolk Cnty.*, 457 U.S. 596, 605, 102 S. Ct. 2613 (1982)).

[28] Id.

significant positive role in the functioning of the particular process in question."[29]  "If the particular proceeding in question passes these tests of experience and logic, a qualified First Amendment right of public access attaches."[30]

This is far from the first occasion this court has had to consider the applicability of the experience and logic test.  More than four decades ago, this court authored an opinion in *United States v. Chagra*, a case involving the bail reduction hearing of Joseph S. Chagra, an El Paso attorney charged with the murder of United States District Judge John H. Wood, Jr.[31]  In considering whether the district court erred in closing the bail reduction hearing, we addressed the history of open bail hearings and the societal interests relating to open pretrial hearings.[32]  This court found that while bail reduction hearings do not have "the 'unbroken, uncontradicted history' of public trials," this history should not foreclose access to bail reduction hearings because the importance of pretrial procedures has grown to that of a trial in the past two hundred years.[33]  This, combined with the positive societal interests in open pretrial proceedings—including increased public confidence in and understanding of the judicial system—led us to find a presumptive First Amendment right of access to bail reduction hearings.[34]

---

[29] *Id.* (citing *Globe Newspaper*, 457 U.S. at 606, 102 S. Ct. 2613).

[30] *Sullo v. Bobbitt, P.L.L.C. v. Milner*, 765 F.3d 388, 392 (5th Cir. 2014) (quoting *Press-Enter. II*, 478 U.S. at 9, 106 S. Ct. 2735) (internal quotations omitted).

[31] 701 F.2d 354 (5th Cir. 1983).

[32] *Id.* at 362–364.

[33] *Id.* at 362–63 (quoting *Richmond Newspapers*, 448 U.S. at 573, 100 S. Ct. 2814).

[34] *Id.* at 363–64.

No. 24-50135

The parties both claim that *Chagra* bolsters their respective positions. On one hand, the Organizations argue that although *Chagra* concerned bail reduction hearings, its analysis is nevertheless instructive to whether there is a First Amendment right of access to magistrations. The County, on the other hand, points to language in *Chagra* that "while the public and press may request access to bail hearings held in court or other places that traditionally are open to the public, nothing in this opinion should be construed as forbidding the more informal bail procedures discussed."[35] The County insists that this language places magistrations, which it considers informal procedures, outside the First Amendment's protections.

At the outset, we note that the language in *Chagra* pointed to by the County is dicta that is not binding on our decision. Regardless, magistrations are far from the informal proceedings contemplated in *Chagra*. In the life of a criminal case, magistrations are a pivotal point that "combines the Fourth Amendment's required probable-cause determination with the setting of bail, and is the point at which the arrestee is formally apprised of the accusation against him."[36] That the County may have previously chosen to conduct magistrations informally does not dictate whether First Amendment protections attach. The relevant consideration instead is whether these proceedings involve subject matter to which the First Amendment's protections attach. With this in mind, the court turns to the experience prong of the experience and logic test.

There is a history of open pretrial proceedings in general. For more than two hundred years, "the near uniform practice of state and federal

---

[35] *Id.* at 362–64.

[36] *Rothgery v. Gillespie Cnty., Tex.*, 554 U.S. 191, 195, 128 S. Ct. 2578 (2008) (discussing Article 15.17 magistrations) (citation and footnote omitted).

courts has been to conduct preliminary hearings in open court."[37]  Indeed, "[t]he vast majority of States considering the issue have concluded that the same tradition of accessibility that applies to criminal trials applies to preliminary proceedings."[38]  For this reason, "[o]pen preliminary hearings . . . have been accorded the favorable judgment of experience."[39]

On a more specific level, there is both historically and currently a practice of open bail proceedings.  It has been documented that "[i]n 1554, Parliament required that the bail bond decision be made in open session, that both justices be present, and that the evidence that was weighed be recorded in writing."[40]  Commentary of the 1807 Aaron Burr treason trial also suggests that bail proceedings were open to the press and the public during the founding era.[41]  Therefore, while it may be true that bail hearings do not enjoy the "unbroken, uncontradicted history" that other criminal pretrial proceedings do, there is nevertheless evidence that they have enjoyed at least some level of openness.

To be sure, the modern day bail hearing does not have a historical twin.[42]  But the trend towards open bail hearings has only grown in the

---

[37] *Press-Enter. II*, 478 U.S. at 10, 106 S. Ct. 2735 (footnote omitted).

[38] *Id.* at 10 n.3 (citing *United States v. Danovaro*, 877 F.2d 583, 589 (7th Cir. 1989) (hearings on guilty pleas); *United States v. Brooklier*, 685 F.2d 1162, 1167–71 (9th Cir. 1982) (suppression hearings and jury voir dire); *United States v. Criden*, 675 F.2d 550, 557 (3d Cir. 1982) (suppression, due process, and entrapment hearings)).

[39] *Id.* at 11 (quoting *Globe Newspaper*, 457 U.S. at 605, 102 S. Ct. 2613) (internal quotations omitted).

[40] Timothy R. Schnacke, et al., *The History of Bail and Pretrial Release* 3, Pretrial Just. Inst. (2010), https://perma.cc/22VF-R6FY.

[41] *See* Kellen R. Funk & Sandra G. Mayson, *Bail at the Founding*, 137 Harv. L.R. 1816, 1881 (2024).

[42] *See Chagra*, 701 F.2d at 363 (discussing the evolution of bail proceedings).

No. 24-50135

modern era. Through the passage of the Bail Reform Act of 1966 and a proliferation of federal and state authority requiring open bail proceedings, bail has been recognized as a more central part of the criminal litigation process.[43] Today, "[b]ail hearings fit comfortably within the sphere of adversarial proceedings closely related to trial."[44] Taken together, this history satisfies the experience prong.

The logic factor likewise supports a finding of openness. There can be no question that public access to bail hearings plays a significant positive role in the functioning of bail hearings. In *Chagra*, we explained that "'the same societal interests that mandated a first amendment right of access to criminal trials in *Richmond Newspapers*, apply' to pretrial criminal proceedings," including bail reduction hearings.[45] These considerations apply with equal force to hearings at which bail is initially set.

---

[43] The First and Ninth Circuits have held that the First Amendment's right of access applies to bail hearings, and the D.C. Circuit has held that this right applies to pretrial detention hearings. *Seattle Times Co. v. U.S. Dist. Ct. for the W. Dist. of Wash.*, 845 F.2d 1513 (9th Cir. 1988); *In re Globe Newspaper Co.*, 729 F.2d 47 (1st Cir. 1984); and *United States v. Edwards*, 430 A.2d 1321 (D.C. Cir. 1981). There is also authority that state courts recognize a presumptive right to open bail proceedings. *See Kan. City Star Co. v. Fossey*, 230 Kan. 240 (Kan. 1981); *State ex rel. Post-Tribune Pub. Co. v. Porter Superior Ct.*, 274 Ind. 408, 414 (Ind. 1980) ("He was responding to the teaching of the law and our long tradition that proceedings in criminal cases are to be conducted in a courtroom open to the public."); *Ex parte Birmingham News Co.*, 624 So.2d 1117, 1132–33 n.15 (Ala. Crim. App. 1993) (citing ALA. R. CRIM. P. 9.3(b)); *see also Fair Trial & Pub. Discourse*, AM. BAR ASSOC. (2013) ("[I]n any criminal matter, the public presumptively should have access to all judicial proceedings, related documents and exhibits.").

[44] *United States v. Abuhamra*, 389 F.3d 309, 323 (2d Cir. 2004). More than one court has found that a proceeding's modern history is sufficient to meet the experience prong. *See Cal-Almond, Inc. v. U.S. Dep't of Agric.*, 960 F.2d 105, 109 (9th Cir. 1992) (relying on modern-day statutes to find a history of access); *see also Applications of Nat'l Broad. Co., Inc. v. Presser*, 828 F.2d 340, 344 (6th Cir. 1987) (finding right of access by reviewing case law from 1924–1984).

[45] 701 F.2d at 363–64 (quoting *Criden*, 675 F.2d at 557) (ellipses omitted).

No. 24-50135

Public access to bail hearings helps ensure, for example, that courts act fairly and justly in setting bail.[46]  When courts hold private proceedings, "[t]hey can . . . avoid criticism and proceed informally and less carefully."[47] Allowing public access encourages adequate preparation and, in turn, precision by the court.[48]  These assurances lead to "enhance[d] public confidence in the process and result" of the justice system.[49]

Having found that the experience and logic prongs both weigh in favor of open bail hearings, we therefore find that magistrations fall under the First Amendment's right of access protections.  This right is, of course, not absolute, and there may certainly be instances when the public's right to access magistrations must take a back seat to the rights of the arrestee or the government.[50]  Under what circumstances this may be appropriate is not a

---

[46] *Detroit Free Press v. Ashcroft*, 303 F.3d 681, 703–04 (6th Cir. 2002) (citing *Richmond Newspapers*, 448 U.S. at 569, 100 S. Ct. 2814).

[47] *Id.* (quoting *Soc'y of Prof'l Journalists*, 616 F. Supp. 569, 575–76 (D. Utah 1985)).

[48] *Seattle Times*, 845 F.2d at 1517 ("The decision to hold a person presumed innocent of any crime without bail is one of major importance to the administration of justice. Openness of the proceedings will help to ensure this important decision is properly reached . . . .") (citations omitted).

[49] *Id.* (citing *Press-Enter. Co. v. Superior Ct.*, 464 U.S. 501, 508, 104 S. Ct. 819 (1983) (*Press-Enter. I*)).  The County appears to argue that the importance of access to magistrations is undercut because bail at magistrations is set based on a formula as opposed to some individualized finding following the presentation of evidence and witnesses.  This argument falls flat.  At magistrations, the magistrate judge is charged with setting bail "if allowed by law." Tᴇx. Cᴏᴅᴇ ᴏғ Cʀɪᴍ. Pʀᴏᴄ. art. 15.17(a). Magistrations are properly characterized as bail hearings, and the advantages of open bail hearings therefore extend to magistrations.  And notably, "[d]uring the hearing on [the Organizations'] motion for preliminary injunction, [the County] admitted that 'it is a public concern' when a magistrate determines whether to release an arrestee on bond, and, if so, the amount of the bond and the conditions of the bond."

[50] *Globe Newspaper*, 457 U.S. at 606–07, 102 S. Ct. 2613 (citing *Richmond Newspapers*, 448 U.S. at 581 n.18, 100 S. Ct. 2814).

No. 24-50135

question currently before the court, however. Our holding today is limited to our finding that there is a presumptive First Amendment right of access to magistrations.

## IV.  Conclusion

We therefore **AFFIRM** the district court's ruling granting a preliminary injunction and temporarily enjoining the County's policy of categorically excluding the press and the public from accessing magistrations.